# EXHIBIT 3



# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | 1999 Avenue of the Stars | SAN FRANCISCO |
| BRUSSELS | Los Angeles, California 90067-6035 | SHANGHAI |
| HONG KONG | TELEPHONE (310) 553-6700 | SILICON VALLEY |
| LONDON | FACSIMILE (310) 246-6779 | SINGAPORE |
| LOS ANGELES | www.omm.com | TOKYO |
| NEWPORT BEACH | | WASHINGTON, D.C. |
| NEW YORK | | |

November 8, 2010

**Via E-Mail**
Herbert C. Ross
Olsham Grundman Frome Rosenzweig & Wolosky LLP
Park Avenue Tower
65 East 55th St.
New York, NY 10022

Re: <u>October 29, 2010 Meet & Confer</u>

Dear Herb:

This letter is to follow up on your October 18, 2010 letter regarding Hasbro's objections and responses to your first document request ("October 18 Letter"), to respond to your October 18, 2010 responses and objections to Hasbro's first document request ("Atari's Responses" or "Responses"), and to memorialize our October 29, 2010 call regarding both parties' initial document requests ("October 29 Call").

While the call was productive in crystallizing the areas of disagreement between the parties, we are troubled by Atari's refusal to produce any documents whatsoever to at least 39 Hasbro document requests. Atari's primary objections are over-breadth and burden. As we pointed out, however, the Hasbro requests to Atari that are purportedly "unduly burdensome" and overbroad go directly to the merits of the dispute. Moreover, in many cases, Hasbro's requests mirror the requests Atari served on Hasbro—to which Hasbro has agreed to produce *without exception*. Atari's primary argument is that the requests go beyond the Namco Bandai sublicensing dispute, and that Hasbro is not entitled to conduct discovery into other areas of Atari's performance under the contract. As we made clear on the call, Count V of the Amended Complaint alleges that "Atari has directly and materially breached the License by failing to use commercially reasonable efforts to promote the D&D Digital Games and undertake the licensed activities in a diligent manner." Therefore, all aspects of Atari's performance under the contract are properly discoverable under Rule 26.

In addition to the propriety of requests such as these under Rule 26, the requests are especially appropriate in light of Atari's own requests to Hasbro. For example, in Atari's

Request for Production Number 1 to Hasbro, Atari seeks *all* documents from any Hasbro manager or their upward or downward direct reports concerning: (1) "Atari," (2) "Atari's performance under the D&D License," (3) "Atari's relations with Namco Bandai," and (4) "the rights licensed to Atari pursuant to the D&D License whether such communications are internal to Hasbro or directed to non-party entities or individuals." Without any limitation on the subject matter of its own requests, Atari has tried to unjustifiably confine Hasbro's discovery requests. When we asked on the call how we could narrow our own requests to reduce the burden, Atari took the position that it would not suggest proper discovery requests for Hasbro.

In contrast to the inconsistency between Atari's position on its discovery entitlements and its discovery obligations, Hasbro has agreed to produce non-privileged documents in response to all of Hasbro's requests. We urge Atari to adopt Hasbro's transparent approach to discovery. It will save both parties from costly discovery battles and will expedite the resolution of this matter. Finally, as we mentioned in our Supplemental Rule 16(f) Statement, we intend to amend our complaint in ways that will have the additional effect of eliminating any basis to assert that Hasbro's discovery is outside of the scope of its claims against Atari.

Below, we discuss specific requests and objections. We also attempt to summarize the parties' positions.

<u>Documents subject to confidentiality agreements between Atari and non-parties</u>: For multiple requests, Atari committed to produce responsive documents in its possession "that are not subject to any applicable confidentiality agreement between Atari and any non-party to this litigation." (See, for example, Atari's Responses to Requests 29, 103-114) On the October 29 call, Hasbro sought to clarify the scope of this limitation. We asked if this meant that Atari would withhold altogether a responsive document subject to a confidentiality agreement with a third party, or if it meant that Atari would do whatever it had to in order to produce the document, including submitting the document subject to a protective order. Atari took the position that it would produce the document subject to a protective order, but you were going to confirm that position and get back to us. Of course, Atari cannot withhold documents that are otherwise the subjects of legitimate document requests solely on the basis of confidentiality agreements with third parties. Please confirm that Atari will, indeed, produce such documents.

<u>Request 1</u>: Hasbro requested "[a]ll DOCUMENTS that RELATE TO ATARI'S LICENSED ACTIVITIES, including but not limited to the creation, design, development, manufacturing, licensing, sublicensing, development, marketing, sale, distribution, wholesaling, customer support, or accounting of or for D&D GAMES." In its Responses, Atari stated that it would produce no documents in response to this request. On the October 29 call, Atari took the position that Hasbro's Request No. 1 is too broad, and that Atari would have to "spill out a warehouse" in response. However, Atari declined to propose a narrower construction of the request that it would consider appropriate. Hasbro will narrow this request to seek only these categories of documents from Atari (manager-level and above) as well as their direct reports (upward or downward) with material responsibilities concerning D&D GAMES. Please confirm whether Atari will withdraw its objections given the narrower request.

<u>Request 2</u>: Hasbro requested "[a]ll DOCUMENTS that RELATE TO ATARI'S

strategies, approaches, plans, expectations, decisions, and choices in performing its obligations under the LICENSE AGREEMENT and in conducting LICENSED ACTIVITIES." In its Responses, Atari stated that it would produce no documents in response to this request. On the October 29 call, Atari's position was that Request No. 2 is not relevant because the complaint does not allege a general failure on Atari's part to perform under the contract, but rather is rooted in Atari's alleged sublicensing to Namco Bandai. Hasbro pointed out that Count V of the Amended Complaint alleges that "Atari has directly and materially breached the License by failing to use commercially reasonable efforts to promote the D&D Digital Games and undertake the licensed activities in a diligent manner." Atari's response was that the claim is not tied to factual allegations about general failures of performance, but rather Atari's failures in customer service. Atari took the stance that there cannot be any complaint of a longstanding failure to perform, as all the events discussed in the complaint date are connected to events in 2009. The count itself, of course, states that Atari failed to promote and undertake the licensed activities in a diligent manner "including *without limitation*, by ceasing to support D&D Digital Games through websites and customer support contacts that are disconnected or are not answered, and by allowing Namco Bandai to provide customer service support and operate localized marketing websites featuring D&D Digital Games" (emphasis added). Atari is standing on its objection to Request 2. The parties are at impasse on Request 2.

Request 3: Hasbro requested "[a]ll DOCUMENTS that RELATE TO decision-making responsibility for all matters that RELATE TO ATARI'S LICENSED ACTIVITIES or to D&D, including, but not limited to, organization charts and job descriptions." In its Responses, Atari stated that it would produce all non-privileged documents responsive to this request. On the October 29 call, Atari clarified its intention to produce organizational charts and job descriptions of people with "material responsibilities" for Licensed Activities—a commensurate obligation to that Hasbro will undertake in response to Atari's Request for Production Number 24.

Request 4: Hasbro requested "[a]ll DOCUMENTS that RELATE TO ATARI'S sublicensing of rights under the LICENSE AGREEMENT." In its Responses, Atari stated that it would produce no documents in response to this request. On the October 29 call, Atari took the position that this request was "overboard" (and overbroad), as the only relevant sublicensee to this lawsuit is Namco Bandai. Hasbro responded that this is a completely appropriate request—given Atari's breaches with respect to Namco Bandai, Hasbro is entitled to find out if there were other situations just like this. It is reasonably likely to lead to discoverable and relevant evidence. Despite Atari's contention that the request is overbroad and unduly burdensome, Atari declined to offer a narrower construction of the request that it would accept. Moreover, Atari did not have any information of how many document custodians would be affected by the request, and did not explain how Hasbro could help to alleviate any burden imposed by this request. The parties are at impasse on Request 4.

Request 5: Hasbro's fifth document request calls for "[a]ll COMMUNICATIONS between ATARI and DISTRIBUTION PARTNERS RELATING TO D&D." This is the core of what Atari argues is "really" at issue in this case, and yet Atari stated in its Responses that it would produce *no* documents in response to this request, and it still characterized this request as too broad in the October 29 call. Hasbro pointed out that Atari's requests to Hasbro are phrased even more broadly. Atari's Request Number 1, for example, asks for all documents reflecting

communications "concerning Atari, Atari's performance under the D&D License, Atari's relations with Namco Bandai, or the rights licensed to Atari pursuant to the D&D License, whether such communications are internal to Hasbro or directed to non-party entities or individuals." Hasbro has agreed to produce in response to this Request; it is therefore unclear how Atari can argue that its request for documents relating to "the rights licensed to Atari pursuant to the D&D License" can be sufficiently narrow, while communications between Atari and Distribution Partners "relating to D&D" is too broad. This is an untenable distinction. The parties are therefore at impasse on Request 5.

Requests 6 and 7: Hasbro asked for "[a]ll COMMUNICATIONS between ATARI and NAMCO RELATING TO D&D" and "[a]ll COMMUNICATIONS between DISTRIBUTION PARTNERS and NAMCO RELATING TO D&D." In Atari's Responses, it said that it would produce no documents in response to either of these requests. On the October 29 call, Atari counsel committed to "advocate" that Atari produce non-privileged documents in response to these two requests. Please confirm that Atari will produce all non-privileged documents called for by Requests 6 and 7.

Request 8: Hasbro requested "[a]ll COMMUNICATIONS that RELATE TO HASBRO, D&D, DISTRIBUTION PARTNERS, or NAMCO, including but not limited to COMMUNICATIONS between ATARI and any sublicensee or potential sublicensee under the LICENSE AGREEMENT (including but not limited to TURBINE, MICROSOFT, EA, PERFECT WORLD, and CRYPTIC)." In its responses, Atari again took the position that it would produce no documents in response to this request. On the October 29 call, Atari took the position that there were too many broad subject matters in this request, and that it was not limited as to who the communications in question are between. Atari requested something narrower, but did not specify what it would consider acceptable. Hasbro is willing to narrow this request to, "All COMMUNICATIONS that RELATE TO HASBRO, D&D, OR NAMCO, including but not limited to COMMUNICATIONS between ATARI and any sublicensee or potential sublicensee under the LICENSE AGREEMENT (including but not limited to TURBINE, MICROSOFT, EA, PERFECT WORLD, and CRYPTIC)." Please confirm whether Atari will withdraw its objections given the narrower request.

Request 13: Hasbro requested "[a]ll DOCUMENTS, including but not limited to meeting notes and minutes, that RELATE TO meetings, conversations, or communicative exchanges of any kind of any committee, group, or individuals (including but not limited to meetings of the board of directors) within ATARI or between ATARI and a non-ATARI entity or individual that RELATE TO D&D, the LICENSE AGREEMENT, LICENSED ACTIVITIES, D&D GAMES, DISTRIBUTION PARTNERS, or NAMCO." In its responses, Atari again took the position that it would produce no documents in response to this request. On the October 29 Call, Atari took the position that Request 13 is too broad. Hasbro will narrow this request to read, "All DOCUMENTS, including but not limited to meeting notes and minutes, that RELATE TO meetings, conversations, or communicative exchanges of any kind of any committee, group, or individuals (including but not limited to meetings of the board of directors) within ATARI or between ATARI and a non-ATARI entity or individual that RELATE TO D&D, the LICENSE AGREEMENT, LICENSED ACTIVITIES, D&D GAMES, or NAMCO." Please confirm whether Atari will withdraw its objections given the narrower request.

First Requests for Production - October 29, 2010 Meet & Confer, November 8, 2010, page 5

Request 16: Request 16 seeks "All DOCUMENTS that contain or RELATE TO any admissions by a party opponent." It is the mirror image of Atari's Request Number 20. In its Responses, Atari stated that it would produce no documents in response to this request. On the October 29 call both parties agreed that these requests call for legal conclusions and are overbroad. Hasbro agreed to withdraw these requests and Atari tentatively agreed to the withdrawal of its request to Hasbro. Please confirm that withdrawal.

Requests 17 and 18: Request 17 seeks "[a]ll DOCUMENTS that RELATE TO the calculation of royalty payments due to HASBRO under the LICENSE AGREEMENT." Request 18 seeks "[a]ll COMMUNICATIONS that RELATE TO the payment, nonpayment, calculation, or delivery of royalty payments to HASBRO pursuant to the LICENSE AGREEMENT." Atari stated in its Responses that it would produce no documents in response to either Request. On the October 29 call, Atari took the position that these requests are too broad, and would essentially require Atari to re-calculate all royalty calculations from the beginning of 2005. The parties are at impasse on these requests.

Request 24: Request 24 seeks "[a]ll DOCUMENTS that RELATE TO the disclosure to any PERSON of any CONFIDENTIAL INFORMATION." In Atari's Responses, it seeks to limit production in response to this request to those documents that "relate to any disclosure by Atari to NBP [Namco Bandai Partners] of any Confidential Information." On the October 29 Call, Atari described this question as seeking to find out whether Atari had ever breached the Confidential Information provisions with anyone *in addition* to Namco, thus rendering the question a "fishing expedition." Hasbro expressed its position that, in reality, this request should describe a very narrow universe of information, and offered to narrow the request to limit it to: "All DOCUMENTS that RELATE TO the disclosure to any PERSON of any CONFIDENTIAL INFORMATION, if HASBRO did not specifically and expressly authorize that disclosure, excluding any express or implied limitation claimed under the LICENSE AGREEMENT." Please confirm whether Atari will produce documents in accordance with Hasbro's narrower request.

Request 26: Request 26 seeks "[a]ll DOCUMENTS that RELATE TO the sale of any of ATARI'S business interests or operations in Europe." Atari stated in its Responses that it would produce no documents in response. On the October 29 Call, Atari took the position that this request, too, was too broad, and asked Hasbro to be more specific. Hasbro is willing to limit its request to: "All DOCUMENTS that RELATE TO the sale of any of ATARI'S business interests or operations in Europe and any potential or actual impact on the LICENSED ACTIVITIES or D&D GAMES." Please confirm whether Atari will withdraw its objections given the narrower request.

Requests 27 and 28: Request 27 calls for "[a]ll DOCUMENTS that RELATE TO Deborah Uluer of HASBRO'S July 14, 2009 COMMUNICATION requesting more information about the sale of ATARI'S business interests or operations in Europe, including DOCUMENTS that RELATE TO ATARI'S response to that request." Request 28 calls for "[a]ll DOCUMENTS that RELATE TO BLECHER'S August 7, 2009 COMMUNICATION to WILSON requesting more information about the sale of ATARI'S business interests or operations in Europe and the relationship between ATARI and NAMCO, including

First Requests for Production - October 29, 2010 Meet & Confer, November 8, 2010, page 6.

DOCUMENTS that RELATE TO ATARI'S response to that request." In its Responses, Atari seeks to limit its response to documents that "pertain to the sale, transfer, or conveyance of Atari's interest in Distribution Partners, and solely as they relate to Atari's response" to each of these communications. On the October 29 Call, Hasbro sought to clarify, as an example, that an internal Atari document expressing surprise that the concerns raised by Uluer or Blecher were correct and legitimate concerns would fall within this request, as construed by Atari. Atari confirmed that such documents would fall within this request.

Request 32: Request 32 seeks "[a]ll DOCUMENTS that RELATE TO any business transaction or relationship between any combination of ATARI, DISTRIBUTION PARTNERS, and NAMCO." Atari stated in its Responses that it would produce no documents in response. Atari took the position on the October 29 Call that this request is "too broad," as there may be relationships and business transactions in which Namco sells Atari products that do not have anything to do with Hasbro or D&D. Hasbro agreed to narrow this request. Hasbro will narrow this request to: "All DOCUMENTS that RELATE TO any business transaction or relationship between any combination of ATARI, DISTRIBUTION PARTNERS, and NAMCO that RELATES TO D&D or the performance of LICENSED ACTIVITIES." Please confirm whether Atari will withdraw its objections given the narrower request.

Requests 33 and 34: Request 33 seeks "[a]ll DOCUMENTS and COMMUNICATIONS that RELATE TO the DISTRIBUTION AGREEMENT." Request 34 seeks "[a]ll drafts of the DISTRIBUTION AGREEMENT." Atari stated in its Responses that it would produce no documents in response to either request. The Distribution Agreement is at the heart of this litigation, so Atari's refusal on this Request is curious. Atari's position on the October 29 Call was that it did not believe anyone found the Distribution Agreement to be a problem. That is not the case. Hasbro urged Atari to reconsider its refusal to produce documents in response to these two Requests, and Atari committed to consider this. Please confirm that Atari will produce documents in response to these requests.

Requests 39-41: Request 39 seeks "[a]ll DOCUMENTS that RELATE TO ATARI'S decision to exercise its 'put option' to divest its remaining stake in DISTRIBUTION PARTNERS." Request 40 asks for "[a]ll DOCUMENTS that RELATE TO the exercise of the 'put option' and NAMCO'S purchase of ATARI'S remaining interest in DISTRIBUTION PARTNERS in July 2009." Request 41 seeks "[a]ll DOCUMENTS that RELATE TO the renaming of DISTRIBUTION PARTNERS to 'Namco Bandai Partners S.A.S.'" Atari stated in its Responses that it would not produce documents in response to these requests. With respect to the put option, Atari's position on the October 29 Call was that Hasbro could limit its requests to the extent to which they relate to the D&D license and the rights conveyed thereunder. Hasbro committed to consider this and propose a refinement. With respect to the renaming of Distribution Partners, Atari said that it would be unlikely to have such documents anyway. Hasbro is willing to limit all three of these requests to responsive documents that "RELATE TO the D&D license and the rights conveyed thereunder." Please confirm whether Atari will withdraw its objections given the narrower request.

Request 43: Request 43 seeks "[a]ll DOCUMENTS that RELATE TO the handling of any CONFIDENTIAL INFORMATION already in the possession of any ATARI entity

following the execution of the DISTRIBUTION AGREEMENT." Atari stated in its Responses that it would produce no documents in response to this request. This information and related documents are central to Hasbro's claims in this litigation. On the October 29 Call, Atari expressed concern that characterizing information as "Confidential Information" calls for a legal conclusion. Hasbro pointed out that "Confidential Information" is a defined term in the License Agreement:

> "Confidential Information" means (i) the material terms and conditions contained in this Agreement, each Underlying License Agreement and/or in any other agreement between Licensor and Licensee or their affiliates related to the Products or the Licensed Intellectual Property and (ii) any and all information that may be exchanged between the parties hereto (or their Affiliates) regarding one party's (or one of its Affiliate's) business and operations, works in progress, product designs and concepts and other artistic creations.

License Agreement Section 21.

Atari took the position that producing documents responsive to this request would require Atari employees to examine the definition and make determinations. Hasbro responded that this determination should be second nature at this point, since it is one that has to be made in the course of their business. Atari asked if the request dealt only with the provision of Confidential Information to the affiliates that later became Namco Bandai affiliates. Hasbro answered that we would consider limiting the request to those entities. Hasbro is willing to limit the Request to read, "All DOCUMENTS that RELATE TO the handling by any ATARI entity that later became a NAMCO affiliate of any CONFIDENTIAL INFORMATION already in the possession of any ATARI entity upon the execution of the DISTRIBUTION AGREEMENT, including, but not limited to, the disposal, return, or retention of that CONFIDENTIAL INFORMATION." Please confirm whether Atari will withdraw its objections given the narrower request.

Request 50: This request calls for "[a]ll DOCUMENTS that RELATE TO ATARI'S obligations to provide customer service support and marketing under the LICENSE AGREEMENT." In its Responses, Atari stated that it would produce no documents in response to this Request. On the October 29 Call, Atari's position was that this request was too broad, and might call for details as minor as call logs and customer service emails. Hasbro agreed to narrow this request. Hasbro is willing to limit the Request to read, "All DOCUMENTS that RELATE TO ATARI'S obligations to provide customer service support and marketing under the LICENSE AGREEMENT, excluding actual communications to and from customers and excluding communications regarding individual customer service issues." Please confirm whether Atari will withdraw its objections given the narrower request.

Requests 51-69: Requests 51 through 69 seek documents relating to Hasbro's allegation that Atari has breached the customer support provision of the License Agreement. Request 51 asks for "[a]ll DOCUMENTS that RELATE TO the delegation, assignment, or assumption of ATARI'S customer service obligations to or by any other PERSON." Request 52 seeks "[a]ll

First Requests for Production - October 29, 2010 Meet & Confer, November 8, 2010, page 8

DOCUMENTS that RELATE TO the provision of customer support or technical support for D&D GAMES, including phone service and the creation, updating, and maintenance of game-related websites, by any PERSON, including all DOCUMENTS in the possession of ATARI'S former European subsidiaries." Request 53 seeks "all COMMUNICATIONS that RELATE TO the provision of customer support or technical support for D&D GAMES." Request 54 asks for "[a]ny agreements between ATARI and any other PERSON for the provision of customer support for D&D GAMES." Request 55 seeks "[a]ll COMMUNICATIONS and DOCUMENTS that RELATE TO the quality, accuracy, completeness, and/or timeliness of customer support for D&D." Request 56 seeks "[a]ll DOCUMENTS that RELATE TO the construction, maintenance, or updating of any website RELATING TO any D&D GAME." Request 57 seeks "[a]ll DOCUMENTS that RELATE TO the provision of customer support or technical support for D&D GAMES before, during, and after ATARI'S transaction involving DISTRIBUTION PARTNERS and NAMCO." Requests 58 through 69 ask for "[a]ll DOCUMENTS relating to the provision of customer service and/or technical support for D&D GAMES" in Italy, France, Spain, Belgium, the U.K., Asia, Australia, Brazil, China, the Netherlands, Sweden, and Portugal.

First, please confirm that ATARI will construe use of the phrase "relating to" instead of "RELATING TO" in requests 58 through 69 to mean the defined term "RELATING TO." Failure to use the all-caps designation of a defined term in these requests was inadvertent.

In its Responses to Requests 51-69, Atari said that it would produce responsive documents, but "solely to the extent they relate to customer service obligations arising under the License Agreement, and solely to the extent they relate to the time period after July 2009." On the October 29 Call, Atari took the position that July 2009 was the time when Atari's ownership interest in Distribution Partners was sold to Namco Bandai, so only documents after this point would really be relevant. We pointed out that the context leading up to the full sale was important to understanding what actually happened. We therefore propose that Atari produce documents responsive to this request as they relate to the time period from September 1, 2008 to the present. Please confirm whether Atari will withdraw its objections given the narrower request.

Requests 70-71: Request 70 asked for "[a]ll DOCUMENTS relating to the provision of customer service and/or technical support for D&D GAMES in the United States." Request 71 asked for "[a]ll DOCUMENTS relating to the provision of customer service and/or technical support for D&D GAMES in any country, territory, region, nation, or area, not listed above, by ATARI, NAMCO, or any other entity." In its responses, Atari stated that it would produce no documents in response to these requests. On the October 29 Call, Atari took the position that there is no operative allegation that Atari has breached its customer service obligations in the United States or any other country that was not part of the Distribution Partners transaction, so these requests would call for irrelevant documents. The parties are at impasse on these requests.

Request 72: Hasbro's Request 72 seeks "[a]ll DOCUMENTS that RELATE TO any market research or industry studies (including but not limited to outside studies and internal ATARI documents) that RELATE TO D&D, LICENSED ACTIVITIES, or competitors to HASBRO or D&D." Atari stated in its Responses that it would produce no documents in response to Request 72. On the October 29 Call, Atari's position was that this request was too

broad, but that Atari counsel would "advocate" that Atari produce the analogue to what Atari called for in its own requests. Please confirm that this is the case.

Request 74: Request 74 calls for "[a]ll DOCUMENTS that RELATE TO the allegation in the ANSWER that ATARI "has already exceeded its contractually-required minimum 'property development costs' investment of $25 million during the period from June 3, 2005 to May 31, 2010." Atari stated in its Responses that it would produce no documents in response to Request 74. On the October 29 Call, Atari took the position that it did not want to produce documents in response to this Request because it would require it to reconstruct years of expenses down to the level of expense vouchers. In order to alleviate this burden, we suggested we could limit the request to documents at a "summary" level. You said that Atari would be amenable to this request as modified. Please confirm that this is correct, and that Atari will produce summary documents sufficient to show the nature and type of expenditures Atari is crediting when it claims it has exceeded its contractually-required minimum of property development costs.

Request 75: Request 75 seeks "[a]ll DOCUMENTS that RELATE TO ATARI'S plans at any point to develop any D&D GAME." Atari objected on the October 29 Call that responding to this request would be a "huge undertaking" because of the development and business work that Atari has undertaken that would be responsive. Again, this request goes to the heart of Hasbro's allegation that Atari has failed to adequately promote and exploit D&D GAMES. It also is relevant to Atari's claims that Hasbro unreasonably withheld consent for proposed D&D projects. Hasbro expressed concern that Atari could end up having to redo its document production if it stands on objections that, if they apply at all, will not apply after Hasbro amends its complaint. In any event, this request is relevant to the existing claims and defenses under the operative complaint, answer, and counterclaims. The parties are at impasse on Request 75.

Request 80: Request 80 asks for "[a]ll DOCUMENTS that RELATE TO any expenditures towards the minimum 'property development costs' contemplated by the LICENSE AGREEMENT." In its Responses, Atari again stated that it would produce no documents in response. On the October 29 Call, Atari's position was that it did not want to produce documents in response to this Request because of the level of detail it would require. Hasbro again said that it might limit the request to documents at a "summary" level, and Atari indicated that it would be amenable to this request as modified. Please confirm that Atari will produce all documents responsive to this request at a "summary" level.

Request 82: Request 82 asks for "[a]ll DOCUMENTS that RELATE TO ATARI'S purposes, intentions, strategies, plans, or expectations in acquiring CRYPTIC in December 2008." In its Responses, Atari stated that it would produce no documents in response. On the October 29 Call, Hasbro pointed out that Request 82 is relevant to Atari's defenses in this action. Hasbro's understanding is that Atari is standing on this objection. The parties are at impasse on Request 82.

Requests 118 and 120: These Requests seeks documents relating to the Turbine lawsuit and Atari's decision to settle the lawsuit. Request 118 asks for "[a]ll DOCUMENTS, including all COMMUNICATIONS, that RELATE TO the TURBINE LAWSUIT," and Request 120 asks

for "All DOCUMENTS that RELATE TO the decision to settle, and settlement of, the TURBINE LAWSUIT." Atari's Responses stated that Atari would produce no documents in response to these Requests. On the October 29 Call, Atari's stance was that the Turbine lawsuit has nothing to do with this lawsuit. Hasbro pointed out that that lawsuit included allegations concerning Atari's misconduct (including fraud) in the performance of Licensed Activities. The parties are at impasse on these Requests.

Requests 121-132: These Requests relate to the August 3, 2010 *Los Angeles Times* article by Ben Fritz outlining the troubled state of Atari's finances and containing multiple admissions by Atari's executives that the company had been severely mismanaged. Request 121 asks for "[a]ll DOCUMENTS furnished to the Los Angeles Times, or to those working with or on behalf of it, in connection with the LOS ANGELES TIMES ARTICLE." Request 122 asks for "[a]ll COMMUNICATIONS to or from the Los Angeles Times, or to those working with or on behalf of it, in connection with the LOS ANGELES TIMES ARTICLE." Request 123 seeks "[a]ll DOCUMENTS that RELATE TO the LOS ANGELES TIMES ARTICLE," and Request 124 seeks "[a]ll DOCUMENTS that RELATE TO the statement by Jeff Lapin in the LOS ANGELES TIMES ARTICLE that ATARI'S financial state has been 'like an old onion that smells really bad and every time you peel away one problem, you find another.'" Request 125 seeks "[a]ll DOCUMENTS that RELATE TO the statement in the LOS ANGELES TIMES ARTICLE that ATARI 'is trying to rebuild itself after years of chaos, false starts and financial losses.'" Request 126 seeks "[a]ll DOCUMENTS that RELATE TO the statement in the LOS ANGELES TIMES ARTICLE that, '[i]n the last five years, as part of the public French company Infogrames, [ATARI] has had four chief executives and lost more than $700 million.'" Request 127 seeks "[a]ll DOCUMENTS that RELATE TO the statement in the LOS ANGELES TIMES ARTICLE, that ATARI'S executive team 'has spent the last year cleaning up Atari's ample financial messes.'" Request 128 asks for "[a]ll DOCUMENTS that RELATE TO the statement in the LOS ANGELES TIMES ARTICLE that ATARI'S financial resources are 'akin to those of many tech start-ups.'" Request 129 asks for "[a]ll DOCUMENTS that RELATE TO the statement in the LOS ANGELES TIMES ARTICLE that 'Atari doesn't have enough money at its disposal to make and market a major video game like Call of Duty.'" Request 130 seeks "[a]ll DOCUMENTS that RELATE TO the statement in the LOS ANGELES TIMES ARTICLE that, over the past decade, ATARI 'borrowed hundreds of millions of dollars to fund an acquisition spree, but was unable to effectively integrate its assets or maintain a healthy balance sheet.'" Request 131 seeks "[a]ll DOCUMENTS that RELATE TO the statement in the LOS ANGELES TIMES ARTICLE that, '[a]s losses mounted, [ATARI] ended up having to sell development studios, intellectual property and its European distribution business.'" Finally, Request 132 calls for "[a]ll DOCUMENTS that RELATE TO the statement by Nolan Bushnell in the LOS ANGELES TIMES ARTICLE that ATARI [']wasn't just being mismanaged, it was being abused,' and that 'it ended up a shell.'"

Atari's Responses to these Requests state that Atari will not produce documents in response. On the October 29 Call, Atari's position was that these Requests are not relevant under the operative Amended Complaint. The parties are at impasse with respect to Requests 121-132.

**Location of Atari Documents and Custodians**

As we mentioned on the October 29 Call, Hasbro needs information on the location of Atari's responsive documents. First, Atari has repeatedly alluded to European privacy restrictions as a potential bar to discovery. We therefore need to know the identity of all of Atari's European employees (current or former) that may have documents responsive to Hasbro's requests. In addition, we need a description of how Atari's documents are generally kept. Is there a central server that houses emails from around the world? Are there servers in various countries? If so, where? Has Atari been preserving in each of these locations? When Atari sold its European operations to Namco, what happened to Atari documents in those locations? Did Atari retain a right to records involved in the transactions? If, as Atari has suggested, it intends to withhold documents on the basis of European privacy restrictions or similar international comity objections, we need to bring that issue to the court for immediate resolution.

During the course of the lawsuit, many Atari employees have left the company. We need to know the identity of these employees. Has Atari preserved documents for those employees who have left the company? If so, are those documents located in the United States or abroad?

More generally, we need to know much more about the employees from which Atari intends to search for responsive documents. *Which* employees' documents will be searched? *Where* are these employees and their documents located? *What categories* of documents does Atari intend to search? Is Atari using search terms to find documents? If so, what terms is it using? For each of these custodians, we also would like a description of their roles and responsibilities with respect to the D&D games and the License Agreement.

Finally, does Atari have any form of automatic deletion system on its email? Have those automatic deletion systems been suspended for the relevant custodians? We have many questions with respect to how Atari will produce documents in this case. Please let us know whether Atari is willing to answer these questions voluntarily within the next two weeks or whether Hasbro should instead just proceed with a 30(b)(6) deposition on these topics. We obviously need a comprehensive understanding of these issues before we agree to the scope of any production.

### Atari's RFPs to Hasbro

Atari requested that Hasbro withdraw various objections to Atari's Requests for Production. Hasbro will not withdraw those objections, but does not intend to withhold documents on the basis of those objections, except for documents that are privileged. While Hasbro would be well within its rights to withhold given the unreasonable stances Atari has taken, Hasbro hopes to avoid costly and unnecessary discovery fights.

"Reasonable Efforts" vs. "Diligence: In the October 18 Letter, Atari took issue with Hasbro's use of the terms "reasonable" and "reasonably" to describe its production efforts, and insisted that Hasbro exercise "due diligence" in searching for and producing documents. Hasbro does not discern a difference in its obligations between "reasonable efforts" and "diligence," and intends simply to comply with the Federal Rules of Civil Procedure and undertake a good faith search of the custodians most likely to have discoverable evidence.

Timing of Production: Atari "demand[ed]" in its October 18 Letter that Hasbro complete its production by November 15, 2010, and that Hasbro also produce the privilege log by November 15. Hasbro has committed to produce a large volume of data, which will take time to review and produce. Hasbro will do so on a rolling basis. Hasbro has already in fact produced some documents, and intends to continue production as quickly as possible. When we know the approximate date by when we will have substantially completed our document production, will provide that to you. We expect Atari to do the same.

Custodians: Atari also stated in the October 18 Letter that, "rather than a 'select list of Hasbro custodians,' Hasbro must search the files of anyone reasonably likely to have responsive documents, as well as corporate, departmental, and group files likely to contain any such documents." Hasbro will be selecting a group of custodians most likely to have discoverable evidence. We will also search corporate files if they are likely to have responsive documents.

Form & Mechanics of Production: On the October 29 Call, Atari suggested that its preferred form of production would be "tiff images with load files." This is acceptable to us. Specifically, our vendor asked for single page tiff files with LFP and OPT load files. For Excel/ppt files over 100 pgs, we will produce in native format. We propose the following metadata fields for unredacted documents:

BEGPROD
ENDPROD
PRODBEGATT
PRODENDATT
PAGEAMT (number of pages)
RECIP)
AUTHOR (this populated depending on doctype)
CC
BCC
SUBJECT
SENTDATE
SENTTIME
RECEIVEDDATE
RECEIVEDTIME
CREATEDATE
LASTMODDATE
CUSTODIAN
FILENAME
FILESIZE
HASHCODE
REDACTION
NATIVELINK
CONF_LEVEL
DOCTYPE
EXTRACTED TEXT/OCR

First Requests for Production - October 29, 2010 Meet & Confer, November 8, 2010, page 13

**FOR REDACTED EXPORTS**
BEGPROD
ENDPROD
PRODBEGATT
PRODENDATT
PAGEAMT
REDACTION
CONF_LEVEL

Additionally, we propose that the parties iron out a stipulation on these native issues that also addresses inadvertent productions.

Protective Order Issue: On the October 29 Call, the parties addressed the ongoing issue of adding an "attorneys-eyes only" ("AOE") distinction to the protective order. Previously, Atari had suggested that the AOE distinction was not necessary because Atari and Hasbro are not competitors. Hasbro's position notes that certain documents may include proprietary information that Hasbro and Wizards have that goes to the valuation of the business relationship between the parties. In addition, even if Hasbro and Atari are not competitors, they are in a business relationship requiring a valuation of what the rights are worth. And even though Atari and Hasbro might not be competitors now, they may be at some point down the line. Atari's response is that counsel for Atari has to be able to communicate effectively with Atari and give its client an opportunity to comment on these matters. Atari also raised the concern that, when a dual-layer confidentiality provision is in place, people tend to default to the most confidential designation, which can be difficult to handle logistically for large numbers of documents. Hasbro's stance is that this concern can be addressed in defining the AOE category very narrowly, and that very few documents would fit within this designation. Hasbro would define as "attorney's eyes only" documents concerning future game plans and documents related to games not covered by the license.

Request 14: Request 14 seeks

> All documents, including documents reflecting communications, concerning industry studies and primary- and secondary-market research, both qualitative and quantitative, proprietary and non-proprietary, that concern or refer to without limitation:
>
> (a) The Dungeons & Dragons intellectual properties licensed pursuant to the D&D License, including the value of the Dungeons & Dragons brand, customer attitudes toward the brand, and brand management; and
>
> (b) Competitors of Hasbro in the digital gaming industry with respect to the Dungeons & Dragons intellectual properties, including the value and quality of competitor brands, competitor products, competitor market share, and projections and/or forecasts

First Requests for Production - October 29, 2010 Meet & Confer, November 8, 2010, page 14

of future market share in the digital gaming industry for the parties to this litigation and other competitors.

On the October 29 Call, Hasbro expressed a lack of clarity as to what Part (b) is actually requesting. Atari responded that these market studies about competitors to D&D games in the market could be relevant to Atari's proof of damages. Given the lack of clarity, Atari proposed that the request be limited to *"studies that Hasbro conducted or had conducted for it or required concerning digital games that were competitive to D&D."* Hasbro will produce all non-privileged documents responsive to this request, as clarified, if any its possession, custody or control.

Request 20: This request calls for "[a]ll documents, including documents reflecting communications, that reflect any admissions by a party opponent." Hasbro pointed out on the October 29 Call that, technically construed, every document that Hasbro creates could be seen as a party admission (and the same with Atari). Hasbro made a similar document request and the parties tentatively agreed to withdraw these requests. Please confirm that Atari is withdrawing this request.

Request 24: Atari's request No. 24 calls for "[a]ll organizational charts of Hasbro that reflect personnel who have responsibilities for the Dungeons & Dragons intellectual properties licensed pursuant to the D&D License, or that otherwise concern Hasbro employees that interact with Atari with respect to the D&D License. The organizational chart should include all direct and indirect reporting from lowest organizational level to the highest." Hasbro wants to limit its response to organization charts for people with "substantial responsibilities" for the D&D rights. Atari wanted Hasbro to include people with *"any* responsibilities." Because hundreds of people have had *some* responsibility for D&D in one capacity or another, this request is overbroad, and Hasbro expressed this to you on the October 29 Call. Atari suggested Hasbro use the phrase "material responsibilities," and Hasbro agreed. Accordingly, Hasbro will produce all non-privileged documents responsive to this request, as clarified, if any its possession, custody or control.

**Conclusion and Next Steps:**

Given the large number of Hasbro document requests to Atari that are still at issue, we propose another meet & confer on November 11th or November 12th to sort out any remaining issues on the respective productions and whether any further compromise can be reached. Please let us know your availability for such a call.

Sincerely,

James Bo Pearl
of O'MELVENY & MYERS LLP

cc: