OLSHAN

OLSHAN GRUNDMAN FROME ROSENZWEIG & WOLOSKY LLP

PARK AVENUE TOWER
65 EAST 55TH STREET
NEW YORK, NEW YORK 10022
TELEPHONE: 212.451.2300
FACSIMILE: 212.451.2222

WWW.OLSHANLAW.COM

DIRECT DIAL: 212.451.2255
EMAIL: HROSS@OLSHANLAW.COM

November 30, 2010

BY ELECTRONIC MAIL

James Bo Pearl, Esq.
O'Melveny & Myers LLP
1099 Avenue of the Stars
Los Angeles, CA 90067-6035

Re: *Hasbro, Inc. v. Infogrames Entertainment, S.A. (a/k/a Atari, SA)* - Your Letter Dated November 8, 2010 and November 16, 2010 Meet & Confer

Dear Bo:

This letter sets forth the compromises we propose on behalf of Atari, SA ("Atari") as to certain of the numbered requests in "Plaintiff and Counter-claim Defendant Hasbro, Inc.'s First Request for Production of Documents to Atari, S.A.," dated September 15, 2010 ("Hasbro's First Request"), to which Atari objected and responded that it would not produce any documents. This letter also addresses comments made in your November 8, 2010 letter to me.

## I. Proposed Compromises With Respect to Request Nos. 5-7, 26, 33, 34, 39-41, 43, 50-69, 70, 72, 74, 80, and 82 in Hasbro's First Request

We propose the following re-statements of the indicated document requests contained in Hasbro's First Request. Atari is willing to produce to Hasbro any non-privileged, responsive documents to these requests as restated below, if any, that are in Atari's possession, custody, or control, that Atari is able to locate after a reasonable and diligent search of relevant files.

Hasbro Request Number and Proposed Restated Request

5. All communications between Atari and Distribution Partners S.A.S. ("Distribution Partners") that explain or identify (a) the duties, if any, to furnish technical or customer support for D&D Games; and (b) what rights, if any, were granted by the Distribution Agreement dated as of February 18, 2009 by and among Atari Europe S.A.S. ("Atari Europe"), Distribution Partners, and others with respect to D&D Games.

NEW JERSEY OFFICE
744 BROAD STREET, 16TH FLOOR
NEWARK, NJ 07102
TELEPHONE: 973.331.7200
FACSIMILE: 973.331.7222

6. All communications sent or received on or after January 1, 2009 between Atari and Namco, relating to D&D.

7. All communications between Namco and Distribution Partners, relating to D&D.

26. All documents concerning any potential or actual impact on D&D Games or Licensed Activities in connection with those games by reason of Atari Europe's sale of its equity in Distribution Partners in or about July 2009.

33. All documents and communications relating to the Distribution Agreement that substantively concern (a) what, if any, customer service obligations for D&D Games were imposed on the "Distributor" (as defined in the Distribution Agreement) by the Distribution Agreement; and (b) whether the Distribution Agreement constitutes a sub-license of rights to D&D Games.

34. All drafts of the Distribution Agreement that were furnished to any person other than (i) any member of the Atari group of companies (as comprised on or before February 18, 2009); (ii) any attorney for any member thereof; or (iii) any agent of any of such member.

39. All documents relating to both (i) Atari Europe's decision to exercise its "put option" with respect to its equity in Distribution Partners to Namco Bandai Games Europe S.A.S. ("NB Europe"); and (ii) the License Agreement or the rights granted thereunder.

40. All documents relating to both (i) Atari Europe's exercise of its "put option" with respect to its equity in Distribution Partners to NB Europe; and (ii) the License Agreement or the rights granted thereunder.

41. All documents concerning the renaming of Distribution Partners as "Namco Bandai Distribution Partners S.A.S."

43. All documents relating to the handling of any "Confidential Information" of Hasbro (as that term is defined in the License Agreement) after July 1, 2009 by any "DP Subsidiary" (as defined in the Distribution Agreement) that possessed the "Confidential Information" of Hasbro (as so defined) on February 18, 2009, the date of the Distribution Agreement.

50. All documents summarizing or explaining the customer service obligations of Atari, SA under the License Agreement, but not including any documents relating to communications with customers or the customer service or support issue(s) of any individual customer.

51. All documents relating to any assignment or assumption of Atari, SA's customer service obligations under the License Agreement to or by someone else on or after February 18, 2009, the date of the Distribution Agreement.

52. All documents summarizing or explaining the customer service support provided for D&D Games in the "Exclusive Distribution Territory" (as defined in the Distribution Agreement) on and after February 18, 2009, the date of the Distribution Agreement.

53. All communications relating to the provision of customer service and technical support for the D&D Games on and after February 18, 2009, the date of the Distribution Agreement, in the "Exclusive Distribution Territory" (as defined in the Distribution Agreement), but not including communications with customers or the customer service or support issue(s) of any individual customer.

54. All agreements to provide customer service and technical support for the D&D Games on and after February 18, 2009, the date of the Distribution Agreement, in the "Exclusive Distribution Territory" (as defined in the Distribution Agreement).

55. All documents discussing the quality, accuracy, completeness, and timeliness of customer service and technical support for the D&D Games on and after February 18, 2009, the date of the Distribution Agreement, in the "Exclusive Distribution Territory" (as defined by the Distribution Agreement).

56. All documents relating to the construction, maintenance, and updating of websites for D&D Games on and after February 18, 2009, the date of the Distribution Agreement.

57. All documents relating to the provision of customer service and technical support for D&D Games on and after February 18, 2009, the date of the Distribution Agreement, in the "Exclusive Distribution Territory" (as defined by the Distribution Agreement), but not including documents relating to communications with customers or the issue(s) of any individual customer.

58-69. All documents relating to the provision of customer service or technical support for the D&D Games in Germany (Request No. 58), Italy (Request No. 59), France (Request No. 60), Spain (Request No. 61), Belgium (Request No. 62), the United Kingdom (Request No. 63), Asia and Australia (Request No. 64) , Brazil (Request No. 65), China (Request No. 66), the Netherlands (Request No. 67), Sweden (Request No. 68), and Portugal (Request No. 69) by any Atari or Namco entity on and after February 18, 2009, the date of the Distribution Agreement, but not including any documents relating to communications with customers or the issue(s) of any individual customer.

72. All documents and communications concerning industry studies and primary- and secondary-market research concerning (a) the D&D intellectual properties licensed to Atari, including the value of the D&D brand, customer attitudes towards the D&D brand, and brand management with respect to the D&D brand; and (b) competitors of Hasbro in the digital gaming industry with respect to the D&D intellectual properties, including the value and quality of competitors'

brands, competitors' products and their market share, projections and/or forecasts of future market share in the digital gaming industry for the parties to this litigation and other competitors.

74, 80. Summary-level documents sufficient to show the amount, type, and nature of expenditures by Atari since and including June 3, 2005 towards the minimum "property development costs" investment required by the License Agreement.

82. All summary-level documents or executive briefing documents that both (i) explain Atari's purposes, intentions strategies, plans, or expectations in acquiring Cryptic in December 2008; and (ii) refer to D&D or the D&D Games.

Please confirm your agreement to these restatements of the above-numbered requests contained in Hasbro's First Request. The agreement of Atari to produce documents responsive to the above re-stated requests is conditioned upon Hasbro's acceptance of these re-statements. Additionally, Atari's agreement to these restatements should not be construed as an admission or representation that any responsive documents are in Atari's possession, custody, or control. Furthermore, Atari does not waive and reserves the right to object, on any and all grounds, to the admissibility of any the documents produced in response to any of the above restated requests.

## II. Other Proposal

Hasbro will not demand production of documents by Atari in response to Request No. 16 of Hasbro's First Request, and Atari will not demand production of documents by Hasbro in response to Request No. 20 of "Atari, S.A.'s First Request for the Production of Documents to Hasbro, Inc." ("Atari's First Request"). I understand that this proposal is consistent with your view of how to proceed with Hasbro's Request No. 16 in your November 8, 2010 letter to me.

## III. Remaining Disagreements Regarding Hasbro's First Request

We maintain all of Atari's objections and its declination to produce any documents in response to the following numbered requests contained in Hasbro's First Request: Request Nos. 1 (all documents relating to Atari's Licensed Activities, etc.), 2 (all documents relating to Atari's strategies, plans, decisions, choices etc. in performing obligations under the License Agreement and conducting Licensed Activities), 4 (all documents relating to Atari's sublicensing of rights under the License Agreement), 13 (all documents relating to communications and meetings within Atari or between Atari and others, relating to the License Agreement, etc.), 17 (all documents relating to the calculation of royalties due under the License Agreement), 18 (all communications relating to the payment, non-payment, calculation, or delivery of royalty payments to Hasbro), 70 and 71 (all documents concerning the provision of customer service and/or technical support in the United States and any other country/region not identified in Request Nos. 58-69 in Hasbro's First Request), 75 (all plans of Atari at any time to develop any D&D Games), 118 (all documents relating to the settled lawsuit between Turbine and Atari), 120 (all documents relating to the decision to settle and settlement of the lawsuit between Turbine and Atari), and 121 - 132 (all documents concerning a Los Angeles Times newspaper article and statements attributed to individuals therein).

As we have stated previously, Request Nos. 1, 2, 4, 13, 17, and 18 are incredibly overbroad, seek to impose undue burdens, and request matter concerning topics which are far outside of the scope of allegations contained in the pleadings in this action. In fact, during our meet and confer conference on October 29, your side conceded that at least some of these requests consisted of "catch-alls." We view "catch-alls" and fishing expeditions as being equivalent in nature, and Hasbro is not entitled to engage in either. As we have stated, these "catch-all" requests seek the production of every scrap of paper and electronic document in Atari's possession, custody, or control concerning everything it has done or thought of doing in connection with D&D and the License Agreement and is therefore clearly unreasonable.

I note also that a number of requests to which Atari has agreed to produce documents cover parts of these overbroad requests. I further note that Hasbro has propounded a massive one hundred and thirty-six (136) numbered requests in its First Request, and, assuming Hasbro accepts the restated requests set forth in part I of this letter, Atari has stated that it will not produce anything in response to only twenty three (23) of those 136 requests.

Your argument that one of Atari's requests is seemingly just as broad in scope as some of Hasbro's requests is likewise misplaced. Please note that there is a vast difference between the amount of documents that a licensee, such as Atari, would have regarding its exploitation of a license as compared to the far fewer documents that the typical licensor, such as Hasbro, would have concerning the licensee's exploitation of the license.

Your complaint that we have not offered to rewrite these requests is puzzling. It is for the party seeking discovery to ask only for documents that are relevant or reasonably calculated to lead to the discovery of admissible evidence and otherwise frame requests accordingly. We should not have the burden of propounding your discovery requests upon our clients.

The Amended Complaint makes no claim that Atari has underpaid or failed to pay royalties aside from asserting that a de minimis amount is due with respect to a cover-mount on a magazine published in the Summer of 2009. That allegation hardly justifies a dragnet of all documents relating to royalty calculations from June 2005 through the present, as Hasbro's Request Nos. 17 and 18 seek.

The provision of customer support for the D&D Games in the United States, the broad subject of Hasbro's Request No. 70, and in other nations that were not serviced by Atari's former European subsidiaries, the subject of Request No. 71, are nowhere in issue in the Amended Complaint or other pleadings.

Hasbro's Request No. 75 also seeks irrelevancies. Hasbro nowhere alleges in its Amended Complaint that Atari failed to conduct development work on D&D games or that any such failure constitutes a material breach of the License Agreement.

Your rationale for asking for all documents concerning the lawsuit between Turbine and Atari is also meritless (Hasbro's Request Nos. 118 and 120). What Turbine alleged in its pleadings in that lawsuit is meaningless. Furthermore, that litigation never progressed beyond the service of pleadings and pre-answer motions addressed to them before it was settled through

confidential mediation. Hasbro's pursuit of these documents and voluminous other irrelevant documents through discovery requests only fortifies the conclusion that Hasbro is doing so only to concoct new and additional baseless theories for asserting in this action that it is entitled to a declaration that Atari has breached the License Agreement and Hasbro is entitled to terminate the agreement.

The multitude of requests that Hasbro aims at the August 3, 2010 Los Angeles Times article concerning Atari (Request Nos. 121-32) is also far off the mark. The article has a number of ambiguous statements therein attributed to persons connected to Atari. However, none of these ambiguous statements relate to Hasbro's claims in its Amended Complaint, *i.e.*, that Atari allegedly sub-licensed customer service and technical support to Namco Bandai and furnished it with confidential Hasbro information, Atari failed to furnish customer service itself, and Atari failed to pay a minuscule royalty allegedly due for a cover-mount on a magazine, all allegedly in breach of the License Agreement, and all alleged to have occurred in and after July 2009.

During our recent meet-and-confer, you threatened to make all of these outlandish demands somehow relevant by concocting new claims in a draft Second Amended Complaint that you indicated you will furnish to us for our review. We received that proposed Second Amended Complaint from you last week. It is a curious and inappropriate strategy to serve incredibly burdensome, overbroad, and irrelevant discovery requests and then seek to further amend an already-amended Complaint to support the improper requests.

Your Letter's Requests for Us to Answer Numerous Questions

You posed numerous questions at the end of your November 8 letter regarding the identities of those individuals whose files will be searched in connection with Atari's production of documents in response to Hasbro's First Request and how and where those documents are currently maintained. As I stated during our conference call on November 16, it is our intention that, rather than Hasbro design and dictate the production process for Atari, Atari's production process will adhere to the Federal Rules of Civil Procedure. Accordingly, rather than answer and potentially engage in debate regarding the answers to your various inquiries and entertain a stream of supplemental questions, we do not intend to provide answers to your many questions except confirm, as I stated in during our November 16 conference call, that we are willing to exchange and discuss proposed search terms for electronic discovery and discuss the format for production of electronically stored information. As we also stated during our November 16, conference call, we have issued two written litigation holds to our client to date, including one at the outset of the action.

Hasbro's' Response to Atari's First Request

We confirm here your statement in our conference calls held November 16 and October 29, that Hasbro will not withhold any non-privileged documents based on any of Hasbro's stated objections to Atari's First Request.

Hasbro's Request to Revise Confidentiality Order

We do not agree to your proposal to revise the confidentiality order in this action to provide for an "attorneys' eyes only" category of documents. We will need to discuss all documents produced by Hasbro with our client.

Sincerely yours,

Herbert C. Ross

cc: Kyle C. Bisceglie, Esq.
Peter Sartorius, Esq.