UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| HASBRO, INC.,<br><br>                            Plaintiff,<br><br>          -against-<br><br>INFOGRAMES ENTERTAINMENT, S.A.,<br>a/k/a ATARI, S.A.,<br><br>                       Defendant. | C.A. No. 09 Civ. 610 (S) |

DEFENDANT ATARI, SA'S OBJECTION TO "HASBRO, INC.'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS" [DOCKET 57]

Defendant Atari, SA (f/k/a Infogrames Entertainment, SA) ("Atari") objects to the
motion of plaintiff Hasbro, Inc. ("Hasbro") to compel production of documents (Dkt. 57) in the
above-captioned action on the grounds that the requests as to which Hasbro seeks an order
compelling production are overbroad, seek to unduly burden Atari, and seek matter that is not
relevant to the claims or defenses in the action, and Atari cannot produce email located in Europe
by reason of a European Union directive and French law.   Atari also files herewith a
memorandum in support of its objection to Hasbro's motion.

Atari respectfully requests hearing on its objection and estimates that such hearing will
last 30 minutes.

Respectfully submitted,

Dated: Providence, Rhode Island
       January 18, 2011

PIERCE ATWOOD LLP

By:   /s/ Brooks R. Magratten
      Brooks R. Magratten, No. 3585
      Michael J. Daly, No. 6729
      10 Weybosset Street, Suite 400
      Providence, Rhode Island 02903
      (401) 588-5113
      bmagratten@pierceatwood.com
      mdaly@pierceatwood.com

      -and-

      Kyle C. Bisceglie
      Herbert C. Ross
      Peter M. Sartorius
      OLSHAN GRUNDMAN FROME
      ROSENZWEIG & WOLOSKY LLP
      Park Avenue Tower
      65 East 55th Street
      New York, New York 10022
      (212) 451-2300

      *Attorneys for Defendant Atari, S.A.*

## CERTIFICATE OF SERVICE

This document was electronically filed with the Clerk of the Court on January 18, 2011, and is available for viewing and downloading from the Court's ECF system. Service on all counsel of record has been effectuated by electronic means.

/s/ Michael J. Daly

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF RHODE ISLAND

HASBRO, INC.,

                                Plaintiff,          C.A. 09-610 (S)

         -against-

INFOGRAMES ENTERTAINMENT, S.A. a/k/a
ATARI, S.A.,

                           Defendant.

## DEFENDANT ATARI, SA'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO "HASBRO, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS" [DOCKET 57]

This memorandum of law is submitted on behalf of defendant and counterclaim-plaintiff Atari, SA ("Atari") in opposition to the motion of plaintiff and counterclaim-defendant Hasbro, Inc. ("Hasbro") (Dkt. 57) for an order compelling Atari to produce documents in response to certain of the individual requests in "Plaintiff and Counter-claim Defendant Hasbro, Inc.'s First Request for Production of Documents to Atari, S.A." ("First Request").

## Preliminary Statement

By this motion, Hasbro seeks to suffocate Atari in document discovery. Indeed, Hasbro's service of its First Request which seeks 132 numbered categories of documents is highly unusual and merits consideration by the codifiers of the Federal Rules of Civil Procedure as to whether to limit the number of categories that can be sought under Rule 34 just as they have limited the number of interrogatories that a party can propound.

Hasbro's motion is further meritless first because Hasbro rejected reasonable compromises as proposed by Atari, to wit, revised versions of many of the individual requests at issue. Atari proposed these compromises to Hasbro by letter dated November 30, 2010.

Secondly, the requests at issue ask for documents that are not relevant to the claims or defenses in this action as required by Rule 26(b)(1), Fed.R.Civ.P. Hasbro attempts to justify overreaching requests by citing a legal conclusion alleged in the Amended Complaint, *i.e.*, that Atari breached an obligation to exploit the license granted by Hasbro to Atari. Hasbro asserts that this legal conclusion grants it the right to have Atari produce documents about everything Atari has done to exploit the license since it was granted it in June 2005. This is nonsensical. The extant complaint in this action, the Amended Complaint, does not permit this unbounded and massive documentary discovery. That legal conclusion is based on more specific, factual allegations of what constitutes the alleged breach stated in the Amended Complaint, and Atari has not objected to producing discovery concerning those specific allegations.

Third, Hasbro also argues that new allegations and claims in its proposed Second Amended Complaint justify the requests in dispute. Hasbro has not received permission to file the Second Amended Complaint. Rule 26(b)(1) permits discovery of matter relevant to claims or defenses in the action, but not ones that might or might not be in the action in the future.

Fourth, many of the requests at issue seek documents that are sought in other requests to which Atari has agreed to search and produce non-privileged documents. The motion is therefore premature, moot and/or unnecessary.

Finally, that part of the motion that seeks an order compelling Atari to produce email located in Europe is premature because Atari has not had the opportunity to determine whether any of it is unique or instead all available in the United States. Atari should not be compelled to

produce email uniquely in Europe because production in the United States would violate a European Union directive on privacy as well as a French statute enacted pursuant to the directive, exposing Atari to potential criminal prosecution in France.

Procedural Background

Hasbro's Extant Complaint

Hasbro and Atari entered into a Dungeons & Dragons License Agreement dated as of June 3, 2005 (the "License Agreement") pursuant to which Hasbro licensed to Atari rights to exploit the Dungeons & Dragons ("D&D") fantasy world in the sale of video games. Hasbro's most recent complaint, its Amended Complaint filed May 3, 2010 (Dkt. No. 31), contains the following claims which Hasbro alleges arise out of or pertain to the License Agreement:

Count I alleges that Atari breached the License Agreement by filing an intent-to-use application for registration of the mark ICEWIND DALE in the United States, a mark as to which Hasbro claims ownership. (Dkt. 31, Am. C. ¶¶164-170)[1]

Count II alleges that Atari breached the License Agreement by supposedly (a) failing to protect and maintain Hasbro's Confidential Information by disseminating it to Namco Bandai, a "major competitor" of Hasbro, after July 1, 2009 and (b) failing to report earnings on certain sublicensees who had placed a D&D game on a magazine cover in the Summer of 2009. (*Id.* ¶¶171-174, *see also* ¶¶38-66) The part of this claim concerning Namco Bandai allegedly arises out of the sale by Atari of its majority equity interest in an entity, Distribution Partners S.A.S. ("Distribution Partners"), to an affiliate of Namco Bandai, Namco Bandai Games Europe, on July 1, 2009. By Distribution Agreement dated as of February 18, 2009 Atari S.A.S. granted rights to Distribution Partners and other, then subsidiaries of Atari, to distribute Atari video game products in Europe and certain other territories outside of North America.

---

[1] Citations herein to the Amended Complaint appear as "Am. C." followed by the paragraph number(s) therein.

Count III  alleges that Atari breached the License Agreement by (1) failing to (a) respond to customers' questions, (b) maintain telephone or email customer support locations, and (c) meet industry standard for customer support, all in late 2009, and (2) by sublicensing rights and obligations for providing customer support to Namco Bandai in July 2009 without Hasbro's approval.  (Dkt. 31, Am. C. ¶¶176-180, *see also* ¶¶67-120)

Count IV alleges that Atari breached the License Agreement by misusing D&D Intellectual Property by authorizing third parties, namely, Namco Bandai Distribution Partners, to engage in supposedly licensed activities, i.e., customer service for D&D games.  (*Id.* ¶¶181-83, *see also* ¶¶67-120)

Count V alleges that Atari breached the License Agreement by not using commercially reasonable efforts to promote D&D digital games and undertake licensed activities in a diligent manner.  Count V specifically cites as the bases for this claim that Atari ceased to support D&D digital games through websites, permitted customer support contacts to be disconnected or non-responsive, and allowed Namco Bandai to provide customer service support and operate localized marketing websites featuring D&D Digital Games, all starting in Fall 2009.  (*Id* .¶¶184-187, *see also* ¶¶67-120)

Count VI alleges that Atari breached the implied covenant of good faith and fair dealing by the purported failures and misdeeds set forth in Counts I through V.  (*Id.* ¶¶188-98)

Count VII alleges that Atari defrauded Hasbro by the following:  (a) an October 29, 2009 letter from James Wilson of Atari, Inc. supposedly falsely stated to Hasbro that Namco Bandai Distribution Partners was not granted any sublicense to rights in D&D games under the Distribution Agreement and Atari terminated the wholesaling relationship with Namco Bandai Distribution Partners at least by September 11, 2009; (b) on December 4, 2009, Kristen Keller of

[W2152564.1]4

Atari, Inc. falsely stated orally that Namco Bandai Distribution Partners had no relationship with Atari with respect to D&D property; (c) James Wilson's December 11, 2009 letter falsely stated that Atari was  managing customer service through local market websites; and that Hasbro justifiably relied on the foregoing allegedly false representations.  (Dkt. 31, Am. C. ¶¶199-209)

Count VIII alleges that Atari's made false representations in connection with Hasbro's requests in Fall 2009 for information and assurances concerning Atari's provision of customer service support in Europe "for local marketing websites."  (*Id.* ¶¶210-215)

Count IX asks for a declaration that Hasbro is entitled to terminate the License Agreement based on the purported failures and misdeeds alleged in the prior counts.  (*Id.* ¶¶216-218)

Based on those purported failures and misdeeds, Count X requests an injunction enjoining Atari from using non-approved sublicensees, distributors or wholesalers to promote and service or act as if Atari is the publisher of D&D products.  (*Id.* ¶¶219-221)

Count XI requests an accounting from Atari of (a) all sales of each D&D Game product from execution of the D&D License Agreement to the present in each territory where Namco Bandai or any other non-approved entity acted as sublicensee, and (b) funds received by Atari from Namco Bandai.  Count XI alleges no specific facts to support either of the elements of the requested accounting.  (*Id.* ¶¶222-223)

All of the factual allegations of misdeeds or contractual failures in the Amended Complaint concern matters that Hasbro alleges occurred after July 1, 2009.

On November 21, 2010, Hasbro forwarded a proposed Second Amended Complaint to Atari, seeking consent to its filing.  By motion filed December 7, 2010 (Dkt. 50), Hasbro moved for leave to file a Second Amended Complaint.  That motion is *sub judice*.  In its motion, Hasbro

stated that it seeks to file a Second Amended Complaint to broaden its pleading to support the requests in issue on this motion.  (Dkt. 50, at 1, 8, and 9 of 12)

<u>The First Request</u>

Hasbro's First Request, served September 15, 2010, contains a massive one hundred thirty-two (132) numbered requests for documents, many of them in extremely broad terms and covering long period of time (i.e., documents created since June 3, 2005 (Instruction No. 2)).[2]  In its written response served October 18, 2010, Atari agreed to produce documents in response to 87 of the numbered requests, including some of those in dispute on this motion but subject to a reasonable time period rather than the five and one-half year time period demanded by Hasbro.[3]  After two meet and confer sessions between counsel for Hasbro, by letter dated November 30, 2010 from Atari's counsel to counsel for Hasbro, Atari proposed compromises in the form of revised versions of twenty-two (22) of the requests to which Atari had objected to producing anything or limited its agreement to produce, *i.e.*, Request Nos. 5-7, 26, 33, 34, 39-41, 43, 50-69, 70, 72, 74, 80, and 82, a copy of which is annexed as Exhibit 4 to the Pearl Declaration in support of the instant motion ("Pearl Dec.").  Three weeks later, by letter dated December 20, 2010, a copy of which is annexed as Exhibit 5 to that Pearl Declaration, Hasbro's counsel agreed only to six (those as to Request Nos. 7, 34, 41, 43, 72, and 82) out of the twenty-two (22) compromised, revised versions proposed by counsel for Atari.  Except for suggesting a shorter time period for some, Hasbro never proposed any compromise by way of revised versions of any of the 62 numbered requests which its motion addresses.  As to many of these requests, Atari offered to produce documents but for a shorter, reasonable time period rather than the

---

[2] A copy of Hasbro's First Request is annexed as Exhibit 1 to the Pearl Declaration in support of Hasbro's instant motion.

[3] A copy of Atari's response to the First Request is annexed as Exhibit 2 to the Pearl Declaration in support of the instant motion.

unreasonable and irrelevant five and one-half year period sought by Hasbro.  Without offering any compromises, Hasbro filed this motion on December 23, 2010.  On this motion, Hasbro has wisely abandoned its Request Nos. 1 and 2.

<u>Hasbro's False or Misleading Assertions</u>

To aid its motion, Hasbro makes the following false assertions:

1.      Hasbro falsely asserts that Atari has "essentially gerrymandered" each of Hasbro's numbered requests to produce and withhold only what Atari wants to produce and withhold.  This assertion is demonstrably false.  For example, if that were the case, Hasbro would move to compel as to each of the 132 numbered requests rather than 62 of them.  (Hasbro Mem. at 3)

2.      Hasbro falsely asserts that "Atari has refused to produce documents that relate to the core allegations."  (*Id.*)  Hasbro identifies them as follows:

(a)      "Atari's unauthorized sublicensing."  The Amended Complaint (Dkt. 31, Am. C. ¶¶38-40, 44, 48, 67-120) identifies that sublicensing as made to Namco Bandai in July 2009.  However, Atari has agreed to produce in response to other numbered requests concerning this allegation (Pearl Dec. Ex. 2, Responses to Request Nos. 30, 35, and 37).  Additionally, Hasbro rejected Atari's compromise, revised language for other requests, which if accepted, also addressed this allegation.

(b)      "Atari's failure to provide customer service."  The Amended Complaint alleges that this failure occurred in and after November 2009.  (Dkt. 31, Am. C. ¶¶67-68)  Atari has agreed to produce documents post-dating July 2009 in response to numbered requests concerning this allegation (Pearl Dec. Ex. 2, Responses to Request Nos. 51-53).  Additionally, Hasbro rejected Atari's compromise, revised language for other requests, which if accepted, also addressed this allegation.

(c)     "Atari's failure to adequately promote D&D."  The Amended Complaint bases this legal conclusion on the allegations that Atari ceased to support D&D Digital Games through websites, permitted customer support contacts to be disconnected or non-responsive, and allowed Namco Bandai Distribution Partners to provide customer service support and operate local marketing websites featuring D&D Digital Games, all in and after November 2009.  (Dkt. 31, Am. C. ¶¶67-120, 184-187)  Atari agreed to produce non-privileged, post-July 2009 documents in response to numbered requests concerning these allegations (Pearl Dec. Ex. 2, Responses to Request Nos. 51-53).  Additionally, Hasbro rejected Atari's compromise, revised language for other requests, which if accepted, also addressed this allegation.

(d)     "Atari's inability to perform because of its grim balance sheet."  This supposed allegation is not in the Amended Complaint.  Accordingly, Hasbro's assertion that it is a "core allegation" is false.  This allegation only appears in Hasbro's proposed Second Amended Complaint which was not shown to Atari until November 21, 2010, over two months after Hasbro served the First Request).  Most importantly, the proposed Second Amended Complaint is not an operative document in this action.

As the above identified assertions of Hasbro are false, the Court should disregard them.

Hasbro also misleadingly asserts that it has agreed to produce "every category sought by Atari without exception" (Hasbro Mem. at 3) but fails to advise the Court that Atari's First Request for Production of Documents contained only twenty six (26) numbered requests, over 100 less than the 132 numbered requests in Hasbro's First Request.

## Argument

## I

## HASBRO'S DISPUTED REQUESTS ARE BLATANTLY IMPROPER

### The Standards

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets the boundaries of discoverable matter ("Unless otherwise limited by court order, the scope of discovery is as follows"). Rule 26(b)(1) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense". Hasbro erroneously asserts that discovery may be had of matter that is only reasonably calculated to lead to the discovery of admissible evidence. (Hasbro Mem. at 3-4) Rule 26(b)(1) requires that the information "reasonably calculated to lead to the discovery of admissible evidence" must itself be "relevant information." *Walker v. A.T. Wall*, C.A. No. 10-178 S, 2010 WL 4137331 at *1 (D.R.I. Oct. 20, 2010) (Hagopian, Sr. U.S.M.J.) ("*Relevant information* does not need to be admissible at trial so long as it appears reasonably calculated to lead to the discovery of admissible evidence.") (italics added).

Rule 26(b)(1) limits the matter sought in discovery to that which is "relevant to any party's claim or defense." Rule 401 of the Federal Rules of Evidence defines "'Relevant evidence' [as] evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

"The party seeking information in discovery over an adversary's objection has the burden of showing its relevance." *Daniels v. American Power Conversion Corp.*, C.A. No. 05-459ML, 2007 WL 539643 at *1 (D.R.I. Feb. 15 2007).

Based on these governing standards, as set forth below, Hasbro fails to carry and cannot carry its burden. Hasbro asserts that the disputed numbered requests seek only documents

relevant to Hasbro's claims in this action.  Hasbro does not assert that any of the requests in issue are relevant to the defenses or counterclaims in the action.  The requests in issue principally seek vast quantities of documents that are not relevant to Hasbro's claims.   In fact, in order to advocate that they seek only relevant documents, Hasbro improperly cites no less than 16 times allegations and paragraphs in the proposed Second Amended Complaint (abbreviated as SAC in Hasbro's citations to it).  (Hasbro Mem. at 4-13)  But the proposed Second Amended Complaint is not an effective pleading in this action.  The claims or defenses to which Rule 26(b)(1) refers are not potential claims or defenses, they are actual claims or defenses in the action.

In 2000, Rule 26(b)(1) was amended to permit discovery relevant to the claims or defenses rather than, as previously, discovery relevant to the subject of the action.  This "rule change is meant to alert the federal courts that they 'have the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses' that are outside the scope of those already pleaded."  *Padilla v. Bristol Myers Squibb Holding Ltd. Liability Co.*, Civil No. 04-1003 (PG/GAG). 2005 WL 783076 at *1 (D.P.R. April 4, 2005), *quoting*, *Advisory Committee Notes* (2000 Amendments) (Emphasis added).[4]  Thus, Rule 26(b)(1) does not permit Hasbro any "entitlement to discovery to develop new claims or defenses [such as those in its proposed Second Amended Complaint] that are outside the scope of those already pleaded."  *Id*.

Hasbro confusingly addresses the individual numbered requests in dispute not in chronological order by the numbers that Hasbro assigned to them in its First Request but rather by Hasbro's characterization of the type of objection raised by Atari.  Hasbro then compounds its

---

[4] Now a party must secure leave to seek discovery that is only relevant to the subject matter of the action.  Rule 26(b)(1), Fed.R.Civ.P. ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.")  While Hasbro refers to this provision, Hasbro provides no argument for grant of any such leave.

1177828-2

confusion by annexing various appendices. To assist the Court, this memorandum addresses the disputed individual requests generally in chronological order according to the numbers Hasbro assigned to them, and then, addresses the issue of email in Europe.

<u>Request No. 4</u>

This Request seeks all documents relating to Atari's sublicensing of rights under the License Agreement. However, the only sublicensing in issue in the Amended Complaint is the purported sublicensing by Atari to Namco Bandai Games Europe in July 2009. But this request does not limit itself to that but rather sweeps in Atari's sublicense to Turbine that commenced in January 2003 and remains in effect. There are thousands of documents relating to the Turbine sublicense, and demanded by this Request. None of them are relevant to the claims or defenses in this action.

<u>Request No. 5</u>

This Request seeks all communications between Atari and Distribution Partners, relating to D&D games. This request seeks a mass of irrelevancies, *e.g.*, sales numbers, forecasts, minor business issues etc. Under the Amended Complaint, the only relevance of Distribution Partners to this action is in Hasbro's following theory: by Atari selling its majority interest in Distribution Parties to Namco Bandai Games Europe in July 2009, Atari sublicensed rights to Namco Bandai Distribution Partners, including customer service for D&D games, without Hasbro's approval, as by that sale (a) Namco then owned all of the entity that was granted rights as to D&D games under the Distribution Agreement, and (b) such sale permitted Namco access to confidential information of Hasbro.

Thus, the only relevant communications between Atari and Distribution Partners are those which concern whether or not the Distribution Agreement constituted a sublicense of rights to D& D games. To that end, Atari offered a compromise on this request by which Atari would

produce those communications between Atari and Distribution Partners that explain "what rights, if any, were granted by Distribution Agreement dated as of February 18, 2009", which would shed light on whether and, if so, to what extent it constituted a sublicense. (Pearl Dec. Ex. 4) Hasbro refused this reasonable offer. (Pearl Dec. Ex. 5)

Request Nos. 6

This Request seeks all communications between Atari and Namco Bandai relating to D&D games. Under the Amended Complaint, Namco's only relevance to this action are by way of Hasbro's allegations that, as set forth above, by Atari selling its majority interest in Distribution Parties to Namco Bandai in July 2009, Atari sublicensed rights to Namco, including customer serve for D&D games, without Hasbro's approval, (b) Namco Bandai therefore wrongfully furnished customer support and marketed those games, and (c) the sale of Atari's interest in Distribution Partners permitted Namco Bandai access to confidential information of Hasbro. (This theory is summarized at Hasbro Mem. at 4 n. 2). According to Hasbro's' extant pleading, all of these events occurred as of July 2009. Atari offered as a compromise to produce "[a]ll communications sent or received on or after January 1, 2009 between Atari and Namco [Bandai], relating to D&D" which more than amply covers the allegations as to Namco Bandai. (Pearl Dec. Ex. 4) But Hasbro refused this offer. (Pearl Dec. Ex. 5) Hasbro's speculation that maybe something in 2008 is relevant to events it alleges commenced on July 1, 2009 does not furnish any basis for pre-2009 discovery

Request No. 13

This Request seeks all documents relating to communications and meetings within Atari or between it and others, relating to D&D, the License Agreement, Distribution Partners, Namco Bandai, and other broad topics since June 2005. This is a classically improper, overbroad, non-specific type of request that would likely sweep up massive amounts of irrelevant matter, and

Atari objected on that basis.  The time period of this request compounds its impropriety, as the Amended Complaint complains of events it alleges occurred after July 1, 2009 (*e.g.*, Dkt. 31, Am. C. ¶38)  In sum, this is a request as to which one would have thought Hasbro would have offered a greatly more focused compromise but never did.

Request Nos. 26, 39, and 40

Request No. 26 seeks all documents relating to "the sale of ATARI's business interests or operations in Europe."  Request Nos. 39 and 40 cover much of the same vast ground as No. 26.  Request Nos. 39 and 40 seek all documents relating "ATARI'S decision to exercise its 'put option' to divest its remaining stake in DISTRIBUTION PARTNERS" and the exercise of that option.  The exercise of that option was Atari's sale of its majority interest in Distribution Partners to Namco Bandai Games Europe on July 1, 2009.  Distribution Partners had sold products marketed by Atari, including D&D games, in Europe, and the sale of Atari's interest in Distribution Partners was part of Atari's sale of certain business operations in Europe in July 2009, the subject of Request No. 26.

These three requests relate to Hasbro's theory that the sale to Namco Bandai Games Europe harmed Atari's customer service support for D&D games in Europe after July 1, 2009.  But these requests ask for a mass of material having nothing to do with that theory.  They seek anything that has to do with Atari's sale of its distribution business in Europe no matter how unrelated to the above issues.

These requests ask for closing binders, every extant non-privileged draft of each and every closing document, and email traffic on negotiations, drafting, closing, and procedural matters without any relevance boundaries.  Thereby, these requests not only demand a great amount of irrelevant material but also needlessly intrude in the confidentiality of irrelevant documents relating to the sale.  Hasbro unreasonably rejected Atari's compromise proposals in

connection with these three requests, which focused on the pertinent issues as set forth above. Hasbro never proposed any compromise. (Pearl Dec. Exs. 4, 5)

Request No. 29

This Request seeks all documents that relate to the formation, sale or purchase of Distribution Partners. Atari agreed to produce those non-privileged documents that are not subject to a confidentiality agreement with a third-party. Hasbro's argument that the confidentiality order in this case removes any such objection is not true. To the extent Atari has a confidentiality obligation to a third-party, it cannot abrogate it and provide a document subject to that obligation to Hasbro because there is an order providing that Hasbro, a party to whom Atari is not authorized to disclose the document, can use it only for this action. Atari is willing to provide relevant documents but cannot provide relevant documents that should not be disclosed. At a minimum, Atari seeks the opportunity to collect, review and identify any documents and consider its legal obligation to third parties before agreeing to categorically produce such documents. Hasbro should have permitted Atari that opportunity before filing this motion.

Request No. 33

This Request seeks all documents that relate to the Distribution Agreement. This request seeks an unduly burdensome mass of irrelevancies, *e.g.*, sales forecasts, minor business issues, invoices, cover letters etc. Additionally, the Distribution Agreement concerned many games sold by Atari that have nothing to do with D&D games.

Hasbro unreasonably rejected Atari's proposed compromise on this request that focused on the issues in this case that relate to the Distribution Agreement: all documents and communications relating to the Distribution Agreement that substantively concern (a) what, if any, customer service obligations for D&D Games were imposed on the "Distributor" (as

defined in the Distribution Agreement) by the Distribution Agreement; and (b) whether the Distribution Agreement constitutes a sub-license of rights to D&D Games.  (Pearl Dec. Exs. 4, 5)  These are the only subjects relevant to the claims in this action.

Request No. 50

This Request seeks all documents relating to "ATARI'S obligations to provide customer service support and marketing under the LICENSE AGREEMENT" from June 2, 2005 to present.  As written, the request is vague.  It is unclear whether it embraces not only documents explaining any such obligations but also documents incidental to the execution of such and performance thereunder, which could pose a large discovery burden, particularly given the over broad period starting at June 2005.  Indeed, the Amended Complaint only complains about customer service in and since Fall 2009 and certainly no earlier than July 2009.

Hasbro unreasonably rejected Atari's proposed compromise on this request which clarified it and focused it on the allegations in the Amended Complaint:  all documents summarizing or explaining the customer service obligations of Atari under the License Agreement, but not including any documents relating to communications with customers or the customer service or support issue(s) of any individual customer.  (Pearl Dec. Exs. 4, 5)

Request No. 51

This Request seeks all documents relating to "the delegation, assignment or assumption of ATARI'S customer service to or by any PERSON."  The only allegation in the Amended Complaint that Atari delegated any such obligation is the alleged delegation to Namco Bandai after July 1, 2009.  Hasbro rejected Atari's more than reasonable proposed compromise on this request:  all documents relating to any assignment or assumption of Atari, SA's customer service obligations under the License Agreement to or by someone else on or after February 18, 2009, the date of the Distribution Agreement.  (Pearl Dec. Exs. 4, 5)

<u>Request Nos. 52, 53, and 57</u>

Request No. 52 seeks all documents relating to "the provision of customer support or technical support for D&D GAMES [including phone service and websites] by any PERSON …"  Request Nos. 53 and 57 also ask for the same documents, namely, all documents relating to "the provision of customer support or technical support for D&D GAMES."  Again, the only allegation as to customer service are those concerning alleged failures to provide support starting in Fall 2009 and delegation to Namco Bandai of support  after July 1, 2009.  But Hasbro's request concerns customer and technical support as far back as June 2005, and seeks a remarkable amount of detail about customer support since then, none of which could be relevant to the allegations as to failings in the second half of 2009.

<u>Request No. 54</u>

This Request seeks any agreement between Atari and anyone else "for the provision of customer support for the D&D Games."  Again, the Amended Complaint complains only about customer service in and from November 2009 (Dkt. 31, Am. C. ¶¶67-120), and only about such support in the territory covered by the Distribution Agreement.  Hasbro rejected Atari's proposed more than reasonable compromise on this request:  all agreements to provide customer service and technical support for the D&D Games on and after February 18, 2009, the date of the Distribution Agreement, in the "Exclusive Distribution Territory" (as defined in the Distribution Agreement).  It wants documents created since June 2, 2005.

<u>Request No. 55</u>

This Request seeks all communications and documents relating to "the quality accuracy, completeness and/or timeliness of customer support for D&D."  Again, this covers the period from June 2005 to July 1, 2009, over five years.  But the Amended Complaint only alleges customer service failings commencing in November 2009, and this request seeks irrelevancies

and imposes undue burden.   Hasbro rejected Atari's proposed and more than reasonable compromise on this request:  all documents discussing the quality, accuracy, completeness, and timeliness of customer service and technical support for the D&D Games on and after February 18, 2009, the date of the Distribution Agreement, in the "Exclusive Distribution Territory" (as defined by the Distribution Agreement).  (Pearl Dec. Exs. 4, 5)

Request No. 56

This Request seeks all documents relating to "the construction, maintenance, and updating of any website RELATING TO any D&D GAME."  But Hasbro has objected in the Amended Complaint to websites it visited in and after November 2009.  (Dkt. 31, Am. C. ¶¶67-120)  Rather than limiting itself to those, the only ones in issue, Hasbro asks Atari to produce irrelevant documents concerning numerous details as to all websites, starting from June 2005. Hasbro unreasonably rejected Atari's proposed compromise on this request:  all documents relating to the construction, maintenance, and updating of websites for D&D Games on and after February 18, 2009, the date of the Distribution Agreement.  (Pearl Dec. Exs. 4, 5)

Request Nos. 58-69

These Requests seek all documents relating to "the provision of customer support and/or technical support for D&D GAMES" by Atari or Namco or any entity related to one of them in specifically identified countries, also identified in the Amended Complaint, since June 3, 2005. This demand is overbroad and seeks irrelevancies because the Amended Complaint objects only to customer service and technical support in and from November 2009.  Atari offered to produce all documents relating to the provision of customer service or technical support for the D&D Games in those countries on and after February 18, 2009, but not including any documents relating to communications with customers or the issue(s) of any individual customer.  Hasbro rejected this more than reasonable offer.  (Pearl Dec. Exs. 4, 5)

Request Nos. 70 and 71

These Requests seek all documents concerning the provision of customer service and/or technical support since June 2005 in the United States and any other country/region not identified in Request Nos. 58-69 in Hasbro's First Request. However, the Amended Complaint does not allege any customer service or technical support failures in the United States and these other countries, and nothing about any service support failures anywhere prior to November 2009. (Dkt. 31, Am. C. ¶¶67-120) Therefore these requests seek irrelevant matter. While the Amended Complaint alleges that Atari no longer provides telephone customer service support in the United States, Hasbro alleges that Atari provides online customer support in this nation. (Dkt. 31, Am. C. ¶121)

Request Nos. 74 and 80

Request No. 74 seeks all documents relating to Atari's allegations that it has exceeded "contractually required minimum 'properly development costs' investment of $25 million during the period June 3, 2005 to May 31, 2010," and Request No. 80 seeks all documents relating to any expenditures towards the minimum "property development costs." These requests demand a massive amount of unnecessary detail; *e.g*., any extant invoices for minor sundry disbursements, communications about minor expenses. Complying with these requests as written would be an incredibly burdensome job, and entail the production of massive amounts of extraneous, irrelevant material. Additionally, Hasbro chose to proceed under its contract and audit Atari. Hasbro's auditor has been at work since October 2010. There is simply no reason for reproducing every scrap of paper that ties into Atari's financial statements. Hasbro rejected Atari's proposed, reasonable compromise on these requests: summary-level documents sufficient to show the amount, type, and nature of expenditures by Atari since and including June 3, 2005 towards the minimum "property development costs" investment required by the License

1177828-2

Agreement. (Pearl Dec. Exs. 4,5) Hasbro is not entitled to an ocean-sweeping trawl through countless underlying documents.

Request No. 76 and 78

Request No. 76 seeks all documents relating to "ATARI'S plans at any point to sublicense the development, marketing, distribution, or sale of any D&D GAME." Request No. 78 seeks all "COMMUNICATIONS between ATARI and actual or potential sublicensees regarding any actual or proposed sublicensing of ATARI'S rights under the LICENSE AGREEMENT." But only plans for sublicensing and proposed sublicensing in 2009 and 2010 are at issue in the claims or defenses in this action. (Dkt. 33, Amended Answer and Counterclaims ¶¶65-75) Therefore, pre-2009 documents are irrelevant. In response to these requests, Atari agreed to produce all non-privileged documents responsive to these Requests, but solely to the extent they relate to Atari's plans to sublicense rights granted under the License Agreement that were developed, modified, or proposed in 2009 or 2010. (Pearl Dec. Ex. 2) Those are the only documents demanded by these Requests that are relevant to the claims or defenses in this action.

Request Nos. 103 through 114

These requests seek all documents concerning negotiations between Atari and four identified potential sublicensees of rights in D&D and communications between them and Atari. The sublicensees are identified as: Perfect World, Microsoft, Bedlam, and Floodgate. Atari agreed to produce those non-privileged documents that are not subject to a confidentiality agreement with a third-party. Hasbro's argument that the confidentiality order in this case removes any such objection is not true. To the extent Atari has a confidentiality obligation to a third-party, it cannot abrogate it and provide a document subject to that obligation to Hasbro because there is an order providing that Hasbro, a party to whom Atari is not authorized to

disclose the document, can use it only for this action.  At a minimum, Atari seeks the opportunity to collect, review and identify any documents and consider its legal obligation to third parties before agreeing to categorically produce such documents.  Hasbro should have been willing to permit Atari that opportunity before filing this motion.

Request Nos. 118 and 120

These Requests seek all documents relating to the settled lawsuits between Turbine, a sublicensee with respect to D&D video games, and Atari (No. 118), and all documents relating to the decision to settle and settlement of the lawsuits (No. 120).  Turbine is a sublicensee of rights in respect to D&D games, approved by Hasbro.  Turbine brought an action against Atari in Summer 2009, and Atari filed a lawsuit against Turbine shortly thereafter.  The actions were settled through mediation in 2010, and Turbine remains a sublicensee.  The actions arose out of Atari's seeking and having been given only access for a partial audit of royalties it claimed due from Turbine.  Hasbro knew about the Turbine litigation when it commenced this action in December 2009, and when it sought leave to file its Amended Complaint in 2010, but never referred to it in either the Complaint or Amended Complaint in this action.  The Turbine action and why Atari settled it are not issues in any claim or defense in this action.  Hasbro asserts that documents concerning these actions are relevant to an allegation in the proposed Second Amended Complaint (Hasbro Mem. at 12) but that is not an effective pleading.  Finally, both of these Requests ask for a great amount of privileged and work product information to which Hasbro is not entitled.

Request Nos. 121 through 132

These Requests seek all documents concerning a *Los Angeles Times* newspaper article and statements attributed therein to either of two then directors of Atari, which Hasbro characterizes as describing Atari's financial condition.  But Atari's financial condition is

nowhere an issue in any of the claims in the Amended Complaint.  In any event, Atari's financial condition is set forth in any number of public filings in France, one of which Hasbro refers to in its proposed Second Amended Complaint.  Hasbro tries to make Atari's financial condition an issue through that proposed pleading, but it is a meaningless document as the motion for leave to file it is *sub judice*.

II

IT IS PREMATURE TO CONSIDER ORDERING<br>PRODUCTION OF DOCUMENTS LOCATED IN EUROPE

Hasbro's additional request for an order that Atari must produce all documents whether located within the United States or abroad is premature and overreaching.  At no point does Hasbro assert that Atari has refused to comply with its document requests because of a conflict with French or European law.  Instead, Hasbro requests the court preemptively order Atari to produce all documents located within the United States or abroad without first ascertaining if such an order is necessary.

Atari is still actively engaged in document collection and review and does not know if unique, relevant documents exist that only reside in Europe.  There is no conflict of laws or comity issue until Atari is able to determine this threshold matter.  To the extent unique, relevant documents exist in Europe, and if they are emails that contain personal data, disclosure of personal data contained in those emails would violate the laws of the European Union and France.  Atari raised this issue as part of its conference with opposing counsel and the Court in order to identify open issues for further considerations.  Atari believes that this issue and an order addressing this issue are premature.

The European Union's *Council Directive 95/46, on the Protection of Individuals with Regard to the Processing of Personal Data and the Free Movement of Such Data*, 1995 O.J. (L

281) 31 (hereinafter "Privacy Directive"), a copy of which is annexed hereto as Exhibit A, restricts the transfer and processing of "personal data," which is broadly defined as "any information relating to an identified or identifiable natural person." This has been held to include the names of the senders and recipients on emails. Privacy Directive Article 25 forbids the transfer of personal data to a third country unless the third country provides an adequate level of data protection. Furthermore, if a specific third country is found to lack adequate data protection, EU member states are required to take affirmative steps to prevent the transfer of personal data to that country. The EU'S position is that the United States lacks adequate data protection standards. *Working Party, Opinion 10/2006 on the Processing of Personal Data by the Society for Worldwide Interbank Financial Telecommunication*, at 21, 01935/06/EN, WP 128 (Nov. 22, 2006), a copy of which is annexed hereto as Exhibit B. Thus, if unique emails are found in Europe that contain personal data, there will be a conflict of laws or comity issue in this action.

Additionally, Atari is concerned that disclosure of personal data may violate French *Law No. 78-17 of 6 January 1978 concerning data processing, computer files and liberties*, amended by *Law No. 2004-801 of 6 August 2004 concerning the protection of individuals with regard to processing of personal data* (hereinafter "French Privacy Law"), a copy of which is annexed hereto as Exhibit C. The French Privacy Law forbids transferring "personal data to a State that is not a Member of the European Community if this State does not provide a sufficient level of the protection of individuals' privacy, liberties and fundamental rights with regard to the actual or possible processing of their personal data." Personal data means "any information relating to a natural person who is or can be identified, directly or indirectly, by reference to an identification number or to one or more factors specific to him." In France, criminal sanctions are provided for

failure to observe the French Privacy Laws which are significantly more serious than those provided for in the case of a failure to observe the Blocking Statute of 1968 on which Hasbro has focused its motion to compel.

Conflict with the Privacy Directive and other European privacy laws has been cited as a reason to deny a motion to compel production of documents containing personal data located in Europe. In *Salerno* v. *Lecia*, Inc., No. 97-CV-973S(H), 1999 WL 299306 (W.D.N.Y. March 23, 1999), the court denied a motion to compel the production of European nationals' personnel and severance documents on multiple grounds, including the terms of the Privacy Directive and a similar German privacy law. The court noted the "serious legal ramifications for those entities that disclose personal information in contravention of the [Privacy Directive]." *Id.* at \*3; see also *Trade Development Bank v. Continental Ins. Co.*, 469 F.2d 35 (2d Cir. 1972) (affirming the trial court's deferral to Swiss privacy laws that barred disclosure of the identity of bank customers); *Electro Design Mfg., Inc. v. Texas Instruments Inc.*, No. CV 89 1843 (JMM), 1990 WL 21105 at \*5 (E.D.N.Y. Feb. 26, 1990) (denying a request for the disclosure of an agreement because disclosure would have violated West German law); *Minpeco, S.A. v. Conticommodity Services, Inc.*, 116 F.R.D. 517 (S.D.N.Y.1987) (denying a request to compel production of documents based on Swiss law and there was a significant risk of prosecution under accompanying criminal statutes).

Additionally, the cases on which Hasbro relies are inapplicable and unpersuasive here. *Bodner v. Banque Paribas*, 202 F.R.D. 370 (E.D.N.Y. 2000) is inapposite because the discovery sought in *Bodner* was related to alleged wrongful taking from and failure to return money and other assets to Jews in France during World War II. The court allowed discovery there because the old French privacy law "was intended to prevent recurrence of past bigotry and anti-Semitic

and racist acts that are the very events that plaintiffs here seek to investigate." *Id*. at 376. Here, Hasbro is not seeking documents vindicating the reason the current French and European privacy laws were instituted. Atari wishes to avoid violating the Privacy Directive and a vastly modified French privacy law, which was strengthened in 2004 to comply with the Privacy Directive. As these laws were specifically intended to stop the disclosure of the types of personal data Hasbro seeks, Hasbro's requests lack the commonality of purpose the *Bodner* court cited as its reason for ordering disclosure.

*AccessData Corp. v. ALSTE Techs. BmbH*, 2010 U.S. Dist LEXIS 4566, Case No. 2:08cv569 (D. Utah Jan. 21, 2010) is also inapplicable and unpersuasive here. *AccessData Corp.* dealt with a party who claimed protection under a German privacy law but then failed to specify which particular portion of the privacy law prohibited disclosure and failed to demonstrate it had acted in good faith in attempting to secure consent from its customers for disclosure of their personal information. Here, Atari has not determined which, if any, unique emails might be located exclusively in France, and therefore not had the opportunity to seek consent from any individuals to disclose their names and other personal data by production of emails. Additionally, depending on whether it finds unique email in Europe in its possession, custody, or control, Atari has yet to actually claim it cannot produce documents because it would violate privacy laws. If, at some future point, it determines that there are unique emails in Europe in its possession, custody, or control, Atari will move for a protective order exempting them from disclosure. Until Atari actually determines that there are unique emails in Europe, and Atari fails to get a waiver from any party whose personal data will be disclosed, *AccessData Corp.* is inapposite. inapposite.

<u>Conclusion</u>

On the basis of the foregoing, Atari respectfully requests the Court deny Hasbro's motion for an order compelling Atari to produce (a) documents in response to Request Nos. 4-6, 13, 26, 29, 33, 39, 40, 50-71, 74-76, 78, 80, 103-114, 118, and 120-132 in Hasbro's First Request and (b) email located in Europe.

Dated: Providence, Rhode Island
       January 18, 2011

                    PIERCE ATWOOD LLP


                    By:   /s/ Brooks R. Magratten
                            Brooks R. Magratten, No. 3586
                            Michael J. Daly, No. 6729
                            10 Weybosset Street
                            Suite 400
                            Providence, Rhode Island 02903
                            (t) (401) 588-5113
                            (f) (401) 588-5166
                            bmagratten@pierceatwood.com
                            mdaly@pierceatwood.com

                                -and-

                    OLSHAN GRUNDMAN FROME
                    ROSENZWEIG & WOLOSKY LLP

                            Kyle C. Bisceglie, *admitted pro hac vice*
                            Herbert C. Ross, *admitted pro hac vice*
                            Peter M. Sartorius
                            Park Avenue Tower
                            65 East 55th Street
                            New York, New York 10022
                            (t) (212) 451-2300
                            (f) (212) 451-2222
                            kbisceglie@olshanlaw.com
                            hross@olshanlaw.com
                            psartorius@olshanlaw.com

                    *Attorneys for Defendant*
                    *and Counterclaim-Plaintiff Atari, S.A.*

## CERTIFICATE OF SERVICE

This document was electronically filed with the Clerk of the Court on January 18, 2011, and is available for viewing and downloading from the Court's ECF system. Service on all counsel of record has been effectuated by electronic means.

/s/ Michael J. Daly