# EXHIBIT 2

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| HASBRO, INC., <br><br> Plaintiff, <br><br> -against- <br><br> INFOGRAMES ENTERTAINMENT, S.A. a/k/a ATARI, S.A., <br><br> Defendant. | C.A. 09-610 (S) |

### ATARI, S.A.'S RESPONSES AND OBJECTIONS TO PLAINTIFF AND COUNTERCLAIM-DEFENDANT HASBRO'S, INC.'S FIRST SET OF REQUESTS FOR ADMISSIONS

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant and counterclaim-plaintiff Atari, SA ("Atari") hereby responds and objects to Plaintiff and Counterclaim-Defendant Hasbro, Inc.'s First Set of Requests for Admissions to Atari, SA, dated October 12, 2010 (the "Requests," each individual request contained therein, a "Request"), as follows:

### General Responses and Objections

The following general objections apply to the Requests in their entirety, and should be understood and read as applicable to each specifically-numbered Request therein:

A. Atari objects to the Requests to the extent they purport to impose upon Atari any obligation greater than, or inconsistent with, that required by the Federal Rules of Civil Procedure, any other applicable rules of this Court, or the common law.

B. Atari objects to the Requests to the extent they purport to impose an obligation on any person or entity other than "Atari" as defined hereinabove.

C. Atari objects to the Requests to the extent they are vague, ambiguous, overly

1115516-2

broad, unduly burdensome, or oppressive.

D. Atari objects to the Requests to the extent they purport to require the disclosure of information that is not within Atari's possession, custody, or control.

E. Atari objects to the Requests to the extent they seek information not relevant to any party's claims or defenses or otherwise not reasonably calculated to lead to the discovery of admissible evidence. Atari concedes neither the relevancy, materiality, competency, nor admissibility as evidence of the various information requested in the Requests or information disclosed in response to the Requests and, notwithstanding any response made pursuant thereto, reserves its right to object to the admissibility of any responses to the Requests.

F. Atari objects to the Requests to the extent they seek privileged information (including, without limitation, information that was developed for or in anticipation of litigation or which constitutes or reflects attorney work-product or confidential attorney-client communications) or information that is otherwise immune from compelled disclosure. Privileged information will not be disclosed. Furthermore, any inadvertent disclosure of any privileged information in response to the Requests is not intended to relinquish any such privilege and shall not be deemed to be a waiver of any applicable privilege.

G. Atari objects to the definition of "D&D" as set forth in Paragraph 4 of the Definitions, as the term "abilities" used therein is vague and ambiguous. Atari's use of the term "D&D" shall be interpreted so as to exclude the word "abilities" from its definition.

H. Atari objects to the definition of "Namco Bandai Distribution Agreement" as set forth in Paragraph 6 of the Definitions. In lieu of "Namco Bandai Distribution Agreement," Atari shall refer to the Distribution Agreement by and between Atari Europe, S.A.S., Distribution Partners, S.A.S., *et al.*, dated as of February 18, 2009, in its responses to the Requests as the

"Distribution Agreement."

I. Atari's responses to individual Requests are subject to and without waiver of the foregoing General Responses and Objections, which are incorporated into each response as though fully set forth therein. To the extent certain of the General Responses and Objections are restated in a specific response, they are restated because they are particularly applicable to the specific Request and their restatement shall not be construed as a waiver of any other of the General Responses and Objections applicable to the particular Requests.

J. In addition to the General Responses and Objections set forth above, Atari will also state specific objections to the Requests where appropriate. By setting forth such specific objections, Atari does not intend to limit or restrict the applicability of any of the General Responses and Objections. To the extent Atari responds to a specific Requests, stated objections are not waived by providing responses.

K. In providing responses to the Requests, Atari does not in any way waive or intend to waive, but rather intends to preserve and is preserving, each of the following:

    (a)    All objections to the competency, relevancy, materiality and admissibility of the Requests, the responses herein, any information that Atari discloses in response to the Requests, and the subject matter(s) of any of the foregoing;

    (b)    All objections as to the vagueness, ambiguity, or other infirmity in the form of the Requests and any objections based on the undue burden imposed by the Requests;

    (c)    All rights to object on any ground to the use of the responses herein, any information that Atari discloses in response to the Requests, or the subject matter(s) of any of the foregoing, at any subsequent proceeding, including the trial of this matter, or in any other action;

    (d)    All rights to object on any ground to any further discovery request or any other discovery request involving or relating to the subject matter of the Requests;

 (e) The right at any time to revise, modify, clarify, and/or supplement any of the responses to the Requests prior to trial;

 (f) Any and all privileges and/or rights under the Federal Rules of Civil Procedure or other applicable rules of this Court or the common law, including, but not limited to, the attorney-client privilege, the work product doctrine, or any other applicable legal privilege against compelled disclosure; and

 (g) Any and all objections previously asserted.

L. Atari reserves the right at any time to revise, correct, modify, supplement, or clarify any of the responses herein, or to supply additional or different information contained in these responses, if and when other or more accurate information is obtained.

M. Subject to, and without waiver of the general objections, each of which is hereby incorporated in the responses to each individual Requests, Atari responds as follows:

### Specific Responses and Objections

**Admission No. 1:** Admit that the statement in WILSON's October 26, 2009 letter to BLECHER that it was attaching "an excerpt from Section 2.3 of the Distribution Agreement, which indicates that games for which there are contractual restrictions associated with the exploitation rights granted by the third party (such as Hasbro) are excluded from the Distribution Rights" was a representation that the NAMCO BANDAI DISTRIBUTION AGREEMENT, when initially signed by the parties, excluded D&D GAMES from the "Distribution Rights" purportedly being conveyed in that agreement.

Response: Denied.

**Admission No. 2:** Admit that WILSON attached to his October 26, 2009 letter to BLECHER an excerpt from the NAMCO BANDAI DISTRIBUTION AGREEMENT that stated:

 2.3. Exclusions

  The following Games are expressly excluded from the above Distribution Rights (collectively the "Exclusions"):

  (iii) To the only extent of their contractual restrictions, Games for which there are contractual restrictions associated with their exploitation rights granted by third parties to Publisher, which prevent the exploitation of said Games by Distributor, in whole or in part, under the Distribution Agreement, it being specified that such contractual restrictions

       must be imposed at the initiative of the third parties
       and not the Publisher's.

  Response:  Atari admits that Wilson's October 26, 2009 letter to Blecher attached an excerpt containing the above-quoted language, in addition to (a) a copy of a September 11, 2009 letter from Atari to Namco Bandai Partners, S.A.S. that stated, in part, as follows:

> As previously discussed, Atari hereby provides written notice that there are a number of Games that shall be excluded from the [Distribution] Agreement. Such Games include all Hasbro titles, including, but not limited to, Dungeons & Dragons, Neverwinter Nights, Dragonshard and Demonstone. . . .
>
> Accordingly, by the provision of this letter, we deem Appendix 1 to be updated to exclude all Hasbro titles. . . .

; and (b) a copy of an October 6, 2009 letter from Namco Bandai Partners, S.A.S. to Atari that stated, in part, as follows:

> Namco Bandai Distribution Partners S.A.S. ("Namco Bandai") hereby acknowledges that upon its acquisition of the Atari Europe S.A.S. ("Atari") distribution business, that Namco Bandai was not granted a sublicense nor did it have any rights assigned to it regarding Hasbro products. Instead, our role vis-à-vis the Hasbro titles in territories outside of the United States was limited to acting as Atari's wholesaler.
>
> We understand that as of September 11, 2009 you informed us that our wholesaling relationship had ended and that as of that date Namco Bandai would no longer receive new inventory for wholesaling purposes. As of that date, and at the request of Atari, Namco Bandai commenced an effort to return [] all Hasbro game information and assets to Atari, including, without limitation, all files (direct or otherwise). . . .

  **Admission No. 3:**  Admit that WILSON did not include in his October 26, 2009 letter to BLECHER the sentence from the NAMCO BANDAI DISTRIBUTION AGREEMENT that immediately follows the portion WILSON excerpted in his letter and that states, "Appendix 1 exhaustively lists the Games with contractual restrictions as provided for under this Section 2.3(iii) along with the corresponding contractual restrictions. This list shall be updated by Publisher as may be deemed necessary from time to time."

  Response:  Atari admits that: (1) the October 26, 2009 letter from Wilson to Blecher contained, as stated in the body of letter, only an excerpt of Section 2.3 of the Distribution

5

1115516-2

Agreement, which excerpt did not include the following language from Section 2.3: "Appendix 1 exhaustively lists the Games with contractual restrictions as provided for under this Section 2.3(iii) along with the corresponding contractual restrictions. This list shall be updated by Publisher as may be deemed necessary from time to time"; and (2) Wilson's October 26, 2009 letter to Blecher attached (a) a copy of a September 11, 2009 letter from Atari to Namco Bandai Partners, S.A.S. that stated, in part, as follows:

> As previously discussed, Atari hereby provides written notice that there are a number of Games that shall be excluded from the [Distribution] Agreement. Such Games include all Hasbro titles, including, but not limited to, Dungeons & Dragons, Neverwinter Nights, Dragonshard and Demonstone. . . .
>
> Accordingly, by the provision of this letter, we deem Appendix 1 to be updated to exclude all Hasbro titles. . . .

; and (b) a copy of an October 6, 2009 letter from Namco Bandai Partners, S.A.S. to Atari that stated, in part, as follows:

> Namco Bandai Distribution Partners S.A.S. ("Namco Bandai") hereby acknowledges that upon its acquisition of the Atari Europe S.A.S. ("Atari") distribution business, that Namco Bandai was not granted a sublicense nor did it have any rights assigned to it regarding Hasbro products. Instead, our role vis-à-vis the Hasbro titles in territories outside of the United States was limited to acting as Atari's wholesaler.
>
> We understand that as of September 11, 2009 you informed us that our wholesaling relationship had ended and that as of that date Namco Bandai would no longer receive new inventory for wholesaling purposes. As of that date, and at the request of Atari, Namco Bandai commenced an effort to return [] all Hasbro game information and assets to Atari, including, without limitation, all files (direct or otherwise). . . .

**Admission No. 4:**  Admit that Appendix 1 to the NAMCO BANDAI DISTRIBUTION AGREEMENT, when the parties initially signed it, stated that "no Game" was excluded under Section 2.3(iii) from the "Distribution Rights" purportedly being conveyed pursuant to that agreement.

Response:  Atari admits that: (1) as of February 18, 2009, Appendix 1 to the Distribution Agreement stated that "no Game" was excluded under Section 2.3(iii) from the

6

1115516-2

"Distribution Rights" (as defined in the Distribution Agreement) granted by the Distribution Agreement; and (2) by letter dated September 11, 2009, Atari provided notice to Namco Bandai Distribution Partners, S.A.S. that

> there are a number of Games that shall be excluded from the [Distribution] Agreement. Such Games include all Hasbro titles, including, but not limited to, Dungeons & Dragons, Neverwinter Nights, Dragonshard and Demonstone....
>
> Accordingly, by the provision of this letter, we deem Appendix 1 to be updated to exclude all Hasbro titles.

; and (3) by letter dated October 6, 2009, Namco Bandai Distribution Partners, S.A.S. confirmed receipt of Atari's September 11, 2009 notice that Appendix 1 to the Distribution Agreement had been amended by Atari so as to exclude all Hasbro titles from the "Distribution Rights" (as defined in the Distribution Agreement) granted by the Distribution Agreement.

**Admission No. 5:** Admit that no D&D GAME was excluded from the "Distribution Rights" purportedly being conveyed pursuant to the NAMCO BANDAI DISTRIBUTION AGREEMENT when the parties initially signed that agreement.

Response: Atari admits that as of February 18, 2009, no Dungeons & Dragons game was excluded from the "Distribution Rights" (as defined in the Distribution Agreement) granted by the Distribution Agreement, but that (a) by letter dated September 11, 2009, Atari provided notice to Namco Bandai Distribution Partners, S.A.S. that

> there are a number of Games that shall be excluded from the [Distribution] Agreement. Such Games include all Hasbro titles, including, but not limited to, Dungeons & Dragons, Neverwinter Nights, Dragonshard and Demonstone....
>
> Accordingly, by the provision of this letter, we deem Appendix 1 to be updated to exclude all Hasbro titles.

; and (b) by letter dated October 6, 2009, Namco Bandai Distribution Partners, S.A.S. confirmed receipt of Atari's September 11, 2009 notice that Appendix 1 to the Distribution Agreement had

been amended so as to exclude all Hasbro titles from the "Distribution Rights" (as defined in the Distribution Agreement) granted by the Distribution Agreement.

**Admission No. 6:** Admit that the statement in the LOS ANGELES TIMES ARTICLE, to the effect that, in the last five years, ATARI "has had four chief executives," is true.

Response: Atari objects to this Request on the grounds that whether Atari "has had four chief executives" over the last five years is not relevant to any party's claims or defenses asserted in this action. Atari further objects to this Request on the additional grounds that it is vague and ambiguous and is capable of multiple interpretations as to the nature of the requested admission in that it is unclear whether the Request seeks an admission that the quoted language was stated, or whether the quoted language is true.

**Admission No. 7:** Admit that the statement in the LOS ANGELES TIMES ARTICLE, to the effect that, in the last five years, ATARI has "lost more than $700 million," is true.

Response: Atari objects to this Request on the grounds that whether Atari has "lost more than $700 million" over the last five years is not relevant to any party's claims or defenses asserted in this action. Atari further objects to this Request on the additional grounds that it is vague and ambiguous and is capable of multiple interpretations as to the nature of the requested admission in that it is unclear whether the Request seeks an admission that the quoted language was stated, or whether the quoted language is true.

**Admission No. 8:** Admit that the statement in the LOS ANGELES TIMES ARTICLE, to the effect that ATARI'S current management "has spent the last year cleaning up Atari's ample financial messes," is true.

Response: Atari objects to this Request on the grounds that whether Atari's current management "has spent the last year cleaning up Atari's ample financial messes" is not relevant to any party's claims or defenses asserted in this action. Atari further objects to this Request on the additional grounds that it is vague and ambiguous, as the terms "cleaning up" and "financial

messes" are not defined and their meanings cannot be fairly understood from the quoted language. Atari further objects to this Request on the additional grounds that it is vague and ambiguous and is capable of multiple interpretations as to the nature of the requested admission in that it is unclear whether the Request seeks an admission that the quoted language was stated, or whether the quoted language is true.

**Admission No. 9:** Admit that Jeff Lapin stated (as quoted in the LOS ANGELES TIMES ARTICLE), directly or in words with the same meaning, that ATARI "was like an old onion that smells really bad and every time you peel away one problem, you find another."

Response: Atari objects to this Request on the grounds that whether Jeff Lapin stated that Atari "was like an old onion that smells really bad and every time you peel away one problem, you find another" is not relevant to any party's claims or defenses asserted in this action.

**Admission No. 10:** Admit that Nolan Bushnell stated (as quoted in the LOS ANGELES TIMES ARTICLE), directly or in words with the same meaning, that ATARI "wasn't just being mismanaged, it was being abused."

Response: Atari objects to this Request on the grounds that whether Nolan Bushnell stated that Atari "wasn't just being mismanaged, it was being abused" during some undefined period is not relevant to any party's claims or defenses asserted in this action.

**Admission No. 11:** Admit that Nolan Bushnell stated (as quoted in the LOS ANGELES TIMES ARTICLE), directly or in words with the same meaning, that, by the time he rejoined ATARI'S board of directors in 2010, ATARI had "ended up a shell."

Response: Atari objects to this Request on the grounds that whether Nolan Bushnell stated that Atari had "ended up a shell" at some undefined time prior to Mr. Bushnell's rejoining Atari's board of directors in 2010 is not relevant to any party's claims or defenses asserted in this action.

**Admission No. 12:** Admit that the statement attributed to Jeff Lapin in the LOS ANGELES TIMES ARTICLE that ATARI "was like an old onion that smells really bad and every time you peel away one problem, you find another," was true when it was said.

Response: Atari objects to this Request on the grounds that whether Atari "was like an old onion that smells really bad and every time you peel away one problem, you find another" is not relevant to any party's claims or defenses asserted in this action. Atari further objects to this Request on the additional grounds that it is vague and ambiguous, as the phrase "like an old onion that smells really bad" (1) is not a statement of fact but, rather, is a statement reflecting opinion and hyperbole that is not fairly susceptible to admission or denial, and (2) includes terms that are not defined and their meanings cannot be fairly understood from the quoted language.

**Admission No. 13:** Admit that statement attributed to Nolan Bushnell in the LOS ANGELES TIMES ARTICLE that ATARI "wasn't just being mismanaged, it was being abused," was true when it was said.

Response: Atari objects to this Request on the grounds that whether Atari "wasn't just being mismanaged, it was being abused" during some undefined period is not relevant to any party's claims or defenses asserted in this action. Atari further objects to this Request on the additional grounds that it is vague and ambiguous, as the terms "mismanaged" and "abused" are not defined nor can their meanings be fairly understood from the quoted language, and the quoted language is not a statement of fact but, rather, is a statement reflecting opinion and hyperbole that is not fairly susceptible to admission or denial.

**Admission No. 14:** Admit that the statement attributed to Nolan Bushnell in the LOS ANGELES TIMES ARTICLE that, by the time he rejoined ATARI'S board of directors in 2010, ATARI had "ended up a shell," is true.

Response: Atari objects to this Request on the grounds that whether Atari "ended up a shell" by the time Nolan Bushnell rejoined Atari's board of directors in 2010 is not relevant to any party's claims or defenses asserted in this action. Atari further objects to this Request on the additional grounds that it is vague and ambiguous, as the phrase "ended up a shell" (1) is not a

10

statement of fact but, rather, is a statement reflecting opinion and hyperbole that is not fairly susceptible to admission or denial; and (2) includes terms that are not defined and their meanings cannot be fairly understood from the quoted language.

Dated: Providence, Rhode Island
November 15, 2010

PIERCE ATWOOD LLP

By: */s/ Brooks R. Magratten*
Brooks R. Magratten, No. 3585
Michael J. Daly, No. 6729
10 Weybosset Street, Suite 400
Providence, Rhode Island 02903
(t) (401) 588-5113
(f) (401) 588-5166
bmagratten@pierceatwood.com
mdaly@pierceatwood.com

- and -

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
Kyle C. Bisceglie, *admitted pro hac vice*
Herbert C. Ross, *admitted pro hac vice*
Peter M. Sartorius
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(t) (212) 451-2300
(f) (212) 451-2222
kbisceglie@olshanlaw.com
hross@olshanlaw.com
psartorius@olshanlaw.com

*Attorneys for Defendant
and Counterclaim-Plaintiff Atari, S.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of November, 2010, the within document was served by electronic mail and United States First Class Mail on the following counsel of record for plaintiff Hasbro, Inc. in the above-captioned action:

Todd White, Esq.
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903
twhite@apslaw.com

Robert M. Schwartz, Esq.
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067
rschwartz@omm.com

/s/ Peter M. Sartorius
PETER M. SARTORIUS