# EXHIBIT 3



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HASBRO, INC.,

    Plaintiff,

-against-

INFOGRAMES ENTERTAINMENT, S.A. a/k/a ATARI, S.A.,

    Defendant.

C.A. No. 09 Civ. 610 (S) (LDA)

### PLAINTIFF AND COUNTERCLAIM-DEFENDANT HASBRO, INC.'S FIRST SET OF INTERROGATORIES TO ATARI, S.A.

PROPOUNDING PARTY:    Plaintiff and Counterclaim-Defendant HASBRO, INC.

RESPONDING PARTY:    Defendant and Counterclaim-Plaintiff ATARI, S.A.

SET NUMBER:    One

TO DEFENDANT AND COUNTERCLAIM-PLAINTIFF ATARI, S.A.:

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant and Counterclaim-Plaintiff Atari, S.A. ("Atari") is hereby requested to answer separately and fully in writing under oath the interrogatories stated below within thirty (30) days of the service of these interrogatories.

### Definitions

1. The following definitions and rules of construction shall apply to these interrogatories, and shall be interpreted to the broadest extent possible. Terms not defined below shall have their ordinary and common meanings.

2. "CONSIDERED FOR DEVELOPMENT," with respect to *D&D* GAMES, means the preparation or conveyance of an internal or external proposal, whether written or oral,

SERVED ON US BY MAIL
POSTMARKED 10/13/2010

1

PROOF OF SERVICE
DATED 10/13/2010

concerning the potential development of any particular *D&D* GAME or a concept or idea for any particular *D&D* GAME.

3. "*D&D*" means *Dungeons & Dragons*™, a fantasy universe created in 1974, and all intellectual property (including but not limited to storylines, settings, characters, games, books, and abilities) RELATING TO the *Dungeons & Dragons*™ universe.

4. "*D&D* GAME[S]" means *D&D* "Digital Game Products" as that term is defined in the LICENSE AGREEMENT, including re-issues, compilations, and versions for different platforms, territories, countries, and languages.

5. "HASBRO" means Hasbro, Inc., the plaintiff and counterclaim-defendant in this matter, as well as all present and former subsidiaries, parents, or other affiliates, predecessor or successor companies (including, but not limited to, Wizards of the Coast LLC), and any and all divisions thereof, and any and all present and former officers, directors, representatives, shareholders, agents, employees, attorneys, accountants, investigators, or any other person and/or affiliate acting on any of their behalf.

6. "IDENTIFY," with respect to any relationship between PERSONS or any relationship of PERSONS to *D&D* GAMES, means to provide the names, addresses, titles, roles, responsibilities and contact information of any PERSONS responsive to the interrogatory. When referring to *D&D* GAMES, "IDENTIFY" shall mean to provide the title and description of the *D&D* GAME including its storyline, setting, gameplay style, and important characters.

7. "LICENSE AGREEMENT" means the *Dungeons & Dragons* License Agreement by and between Hasbro, Inc. and Infogrames Entertainment S.A., dated as of June 3, 2005, including any amendments, addenda, appendices, attachments, excerpts, or drafts thereof.

8. "LICENSEE REVENUE" means "Licensee Revenue" as that term is defined in the LICENSE AGREEMENT.

9. "PERSON[S]" means any natural person, firm, association, organization, partnership, business trust, corporation, company, or entity.

10. "RELATE TO," "RELATES TO," "RELATED TO," and "RELATING TO" means to concern, refer to, summarize, reflect, constitute, comprise, state, contain, embody, pertain to, identify, to be involved with, mention, discuss, consist of, show, comment upon, evidence, support, respond to, deal with, describe, analyze, refute, contradict, or relate in any way to the subject in question, directly or indirectly, in whole or in part.

11. "YOU" or "YOUR" means Infogrames, S.A., Atari, S.A., and Atari, Inc., as well as all present and former subsidiaries, parents, or other affiliates, predecessor, or successor companies, and any and all divisions thereof, and any and all present and former officers, directors, representatives, shareholders, agents, employees, attorneys, accountants, investigators, or any other person and/or affiliate acting on any of their behalf.

12. The terms "and" and "or" will be construed both conjunctively and disjunctively, and each will include the other whenever such a dual construction would serve to bring within an interrogatory information that would not otherwise be within its scope.

13. The terms "all" or "any" mean "any, all, each, and every."

14. The singular form shall include the plural and vice versa whenever such dual construction will serve to bring within the scope of any interrogatory information that would otherwise not be brought within its scope.

## Interrogatories

1. IDENTIFY each *D&D* GAME YOU CONSIDERED FOR DEVELOPMENT at any time from June 3, 2005 to the present.

2. For each *D&D* GAME identified in response to Interrogatory No. 1, state whether YOU submitted it to HASBRO for approval pursuant to the LICENSE AGREEMENT, including, if submitted, the date(s) of submission and the person at HASBRO to whom YOU submitted it.

3. For each *D&D* GAME identified in response to Interrogatory No. 1, state whether it was developed, including a description of the level of its development, if and when it was commercially released, and if it was sublicensed to a third-party or published by Atari.

4. For each *D&D* GAME identified in response to Interrogatory No. 3 that was not either developed or commercially released, state all reasons why it was either not developed or not commercially released.

5. For each *D&D* GAME identified in response to Interrogatory No. 1, state, by each territory, how much money YOU spent to develop the *D&D* GAME.

6. For each *D&D* GAME identified in response to Interrogatory No. 1 that has been commercially released, state, by territory, how much money YOU spent to advertise, promote, and market the *D&D* GAME.

7. State, by territory, the dollar amount of all profit, net income, or comparable financial metric, as well as all LICENSEE REVENUE projections or estimates YOU made for each *D&D* GAME identified in response to Interrogatory No. 1, including the date on which YOU made each such projection or estimate.

4

8. For each *D&D* GAME identified in response to Interrogatory No. 1 that has been commercially released, state, by territory, the dollar amount of all profit, net income, or comparable financial metric YOU actually received, as well as any LICENSEE REVENUE actually generated by each *D&D* GAME.

9. For each *D&D* GAME identified in response to Interrogatory No. 1 that has been commercially released, state, by territory, the dollar amount YOU spent providing technical support or customer service through the date hereof.

10. For each *D&D* GAME identified in response to Interrogatory No. 1 that has been commercially released, IDENTIFY, separately for each such *D&D* GAME and by territory, all PERSONS, including any third-parties, who provided technical support or customer service.

11. For each *D&D* GAME identified in response to Interrogatory No. 1 that has been commercially released, IDENTIFY, separately for each such *D&D* GAME and by territory, the technical support or customer service information (including, without limitation, the identity of the party providing such technical support or customer service and the complete contact information for such party) included in the game packaging, on websites, or in any other materials included or made available when the *D&D* GAME is purchased through any distribution method or channel.

12. IDENTIFY each PERSON to whom YOU granted any right to act as a sublicensee, distributor, and/or wholesaler of any *D&D* GAME (including YOUR subsidiaries and affiliated companies), including: (a) the date on which you granted such right(s), (b) the territory for which you granted such right(s), (c) a description of such right(s) as it pertains to the development, production, distribution, and/or sale of any *D&D* GAME and the specific *D&D* GAME titles, by language, included in such grant of rights, (d) any change to the grant of such

right(s) (e.g., from sublicensee to distributor) made after the date of the initial grant of such right(s), and (e) the date on which such change was made.

13. If YOUR response to any of the Requests for Admission served on you by Plaintiff and Counterclaim-Defendant Hasbro, Inc. was anything less than an unqualified admission, for each such Request for Admission state all facts on which you based any denial of any part thereof.

Dated: October 13, 2010

HASBRO, INC.
By its Attorneys,

*/s/ Todd D. White*

John A. Tarantino, Esq. (#2586)
jtarantino@apslaw.com
Todd White, Esq. (#5943)
twhite@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607

Robert M. Schwartz, Esq.
rschwartz@omm.com
Matthew T. Kline, Esq.
mkline@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Suite 700
Los Angeles, CA 90067
Tel: (310) 553-6700
Fax: (310) 246-6779

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of October, 2010, the within document was served upon the following counsel of record via electronic mail and United States First Class Mail:

Michael J. Daly, Esq.
mdaly@pierceatwood.com
Brooks R. Magratten, Esq.
bmagratten@pierceatwood.com
Pierce Atwood LLP
10 Weybosset Street, Suite 400
Providence, RI  02903

Herbert C. Ross, Esq.
Kyle C. Bisceglie, Esq.
Christine W. Wong, Esq.
Olshan Grundman Frome Rosenzweig & Wolosky LLP
Park Avenue Tower
65 East 55th Street
New York, NY  10022

_____
Todd D. White