# EXHIBIT 7

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

HASBRO, INC.,

           Plaintiff,

    -against-

INFOGRAMES ENTERTAINMENT, S.A. a/k/a
ATARI, S.A.,

           Defendant.

C.A. No. 09 Civ. 610 (S) (LDA)

**PLAINTIFF AND COUNTERCLAIM-DEFENDANT HASBRO, INC.'S**
**OBJECTIONS AND RESPONSES TO DEFENDANT AND COUNTERCLAIM-**
**PLAINTIFF ATARI, S.A.'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff and

Counterclaim-Defendant Hasbro, Inc. ("Hasbro") hereby objects and responds to Defendant and

Counterclaim-Plaintiff Atari, S.A.'s ("Atari") First Set of Interrogatories (the "Interrogatories")

as follows:

**PRELIMINARY STATEMENT**

These responses are made solely for purposes of this action and are subject to all

objections as to competence, relevance, materiality, privilege, and admissibility, and any and all

objections and grounds that would require exclusion of any statement made herein if such

statement were made by a witness present and testifying in court, all of which objections and

grounds are reserved and may be interposed at the time of trial.

No incidental or implied admissions are intended by the responses herein. The fact that

Hasbro responds to or objects to any Interrogatory should not be construed as an admission that

Hasbro accepts or admits the existence of any facts assumed by such Interrogatory, or that such

response or objection constitutes admissible evidence as to any such assumed facts. The fact that

1

Hasbro responds to part or all of any Interrogatory is not intended to be and shall not be construed as a waiver by Hasbro of any part of any objection to any Interrogatory.

As of the date of these responses, Hasbro has not completed its investigation of the facts relating to the above-captioned controversy, has not completed discovery in this action, and has not completed its preparation for trial.  In addition, Hasbro has not had the benefit of any substantive discovery from Atari, which to date has produced no documents and incomplete and deficient written discovery responses.  As a result, Hasbro's ability to provide meaningful responses to these Interrogatories is limited.  Accordingly, the objections and responses set forth below are preliminary and non-binding, are based solely on such information and documentation as is presently available and specifically known to Hasbro after having made a diligent search and reasonable and good faith inquiry, and are made without prejudice to Hasbro's right to: (1) amend, alter, supplement, clarify or otherwise modify these objections and responses as this matter proceeds; (2) make use of, or introduce at any hearing or trial, any facts, evidence, and legal theories which are subsequently discovered or which are now known but whose relevance, significance, or applicability has not yet been ascertained; and (3) offer expert witness opinions on any relevant matter, which opinions may be at variance with these objections and responses.

Hasbro's discovery of and investigation into the matters raised by these Interrogatories are ongoing.  Hasbro expressly reserves the right to (1) amend, alter, supplement, clarify or otherwise modify its objections and responses herein if necessary at a later date; (2) use, or introduce at any hearing or trial, any facts, evidence, and legal theories which are subsequently discovered or which are now known but whose relevance, significance, or applicability has not yet been ascertained; and (3) offer expert witness opinions on any relevant matter, which opinions may be at variance with these objections and responses.

2

Furthermore, Hasbro's responses are made without in any way intending to waive, but on the contrary, intending to preserve:

1. The right to raise—as part of any subsequent proceeding in, or the trial of, this or any other action—all questions of authenticity, foundation, relevancy, materiality, privilege, and admissibility as evidence for any purpose of any documents identified in response to any portion of Atari's Interrogatories;

2. The right to object on any ground—as part of any subsequent proceeding in, or the trial of, this or any other action—to the use of any documents identified in response to Atari's Interrogatories;

3. The right to object to introduction into evidence of any of these responses; and

4. The right to object on any ground at any time to other discovery involving the subject thereof.

## GENERAL OBJECTIONS

Hasbro objects to each of the Interrogatories on the following grounds, which are hereby incorporated within each response set forth below:

1. Hasbro objects to each Definition, Instruction, and Interrogatory to the extent that it purports to impose burdens or obligations different from, or in excess of, those required by the Local Rules of the District of Rhode Island and the Federal Rules of Civil Procedure. Hasbro also objects to each Interrogatory to the extent that it in any way seeks documents or information beyond the scope of discovery permitted by the Local Rules of the District of Rhode Island or the Federal Rules of Civil Procedure. Hasbro's responses are made pursuant to, and as limited by, the Local Rules of the District of Rhode Island and the Federal Rules of Civil Procedure.

3

2.       Hasbro objects to each Interrogatory to the extent that it seeks documents or information protected by the attorney-client privilege, the attorney work product doctrine, or any other privilege, protection, or doctrine of similar effect. Hasbro hereby asserts all such applicable privileges and protections. Any inadvertent production of documents or information that are properly the subject of a privilege or protection shall not be deemed a waiver, in whole or in part, or any such privilege or protection. Any documents or information subject to a privilege or protection, if inadvertently produced or disclosed, shall be returned to Hasbro immediately and shall not be used by Atari in any manner whatsoever.

3.       Hasbro objects to each Interrogatory to the extent that it seeks proprietary or confidential business information, trade secrets, or other sensitive information, or documents that contain information that is non-responsive to the Interrogatory. To the extent that any non-privileged proprietary or confidential business information, trade secrets, or other sensitive information is responsive to the Interrogatory, Hasbro will produce such information only pursuant to the terms of the Court's May 27, 2010 protective order.

4.       Hasbro objects to each and every Interrogatory to the extent it seeks to elicit expert witness opinions, or the bases for them, on the grounds that such discovery is premature and interrogatories are an improper means of conducting expert witness discovery.

5.       Hasbro objects to each Interrogatory to the extent that it seeks documents or information that are already in Atari's possession, custody, or control, or documents or information that are already part of the public record or otherwise equally available to Atari, on the ground that such Interrogatories are unduly burdensome, harassing, and oppressive. Hasbro also objects to the extent that any Interrogatory seeks disclosure of documents or information that are unreasonably cumulative or duplicative, or are obtainable from sources that are more

convenient, less burdensome, or less expensive. Hasbro further objects to each Interrogatory to the extent that it seeks to require Hasbro to use more than reasonable diligence to locate and identify responsive documents or information based on an examination of those files that reasonably may be expected to yield responsive documents or information and an inquiry of those persons who reasonably may be expected to possess responsive documents or information.

6.     Hasbro's responses herein shall not in any way constitution an adoption of Atari's purported Definitions of words or phrases contained in the Interrogatory. Hasbro objects to the Definitions and the Interrogatories to the extent they: (i) are vague, ambiguous, compound, overly broad, unduly burdensome, and not reasonably tailored to avoid imposing undue burden and expense on Hasbro; (ii) are inconsistent with the ordinary and customary meaning of the words or phrases they purport to define; (iii) seek to impose obligations different from, or in excess of, those created by the Local Rules of the District of Rhode Island and the Federal Rules of Civil Procedure; (iv) include assertions of purported fact that are inaccurate or disputed by the parties to this action; and/or (v) incorporate other purported defined terms that suffer from such defects.

7.     These responses should not be construed as an indication that any responsive, non-privileged documents or information in fact exist, as a waiver of any rights or objection, or as an admission of relevancy, materiality, or admissibility of any documents or information.

8.     Hasbro objects to each Interrogatory to the extent that it assumes the admissibility, truth, accuracy, or relevance of any document or information, seeks an admission from Hasbro about such matters, or requires Hasbro to draw a legal conclusion. In responding to these Interrogatories, Hasbro makes no such admissions and does not intend to waive any of its rights, all of which are preserved. If Atari subsequently asserts an interpretation of any

Interrogatory that differs from Hasbro's interpretation, Hasbro reserves the right to supplement its objections and responses into each of the Specific Objections and Responses set forth below, and the following objections and responses are made without waiver of any of the General Objections.

9.      The fact that Hasbro may reassert particular objections in responding to an individual Interrogatory should not be construed in any way as limiting the generality or applicability of the foregoing objections.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

State and describe in detail all damages claimed by Hasbro "relating to the annual 'guarantee payment' required to be paid by Atari through 2017" under the D&D License, as set forth in Section C(1) of Hasbro's Initial Disclosures, including the amount and calculation of all such damages and the method used to calculate those damages.

### RESPONSE TO INTERROGATORY NO. 1:

Hasbro incorporates by reference each of the General Objections set forth above. In addition, Hasbro specifically objects to this Interrogatory on the grounds that it is premature as Hasbro has not yet completed its discovery and investigation of the facts pertaining to this action, its review of relevant documents, or its preparation for trial. The amount and calculation of Hasbro's damages and the method used to calculate its damages may be the subject of expert testimony and will be disclosed in accordance with the Federal Rules of Civil Procedure and the Local Rules of the District of Rhode Island. Accordingly, Hasbro reserves the right to supplement and/or amend its response to this Interrogatory.

Subject to and without waiving the foregoing general and specific objections, Hasbro responds as follows: If the Court grants Hasbro its requested relief by terminating the D&D License, then Hasbro would be entitled to damages for the amount of the annual "guarantee payment" required to be paid by Atari from the time of such termination through 2017. Such damages can be calculated by multiplying the number of years remaining in the D&D License by the amount of the annual guarantee payment.

**INTERROGATORY NO. 2:**

State and describe in detail all damages claimed by Hasbro "relating to Atari's failure to properly account for its exploitation of the D&D Properties," as set forth in Section C(2) of Hasbro's Initial Disclosures, including the amount and calculation of all such damages and the method used to calculate those damages.

**RESPONSE TO INTERROGATORY NO. 2:**

Hasbro incorporates by reference each of the General Objections set forth above. In addition, Hasbro specifically objects to this Interrogatory on the grounds that it is premature as Hasbro has not yet completed its discovery and investigation of the facts pertaining to this action, its review of relevant documents, or its preparation for trial. The amount and calculation of Hasbro's damages and the method used to calculate its damages may be the subject of expert testimony and will be disclosed in accordance with the Federal Rules of Civil Procedure and the Local Rules of the District of Rhode Island. Accordingly, Hasbro reserves the right to supplement and/or amend its response to this Interrogatory. Hasbro further specifically objects to this Interrogatory on the grounds that it seeks information within Atari's possession, custody or control and which Atari has not provided to Hasbro.

Subject to and without waiving the foregoing general and specific objections, Hasbro responds as follows: Hasbro has repeatedly attempted to audit and obtain a full and complete accounting of Atari's exploitation of the D&D Properties. To date, Atari has refused to provide Hasbro with a full and complete audit or documentation sufficient to allow it to determine, among other things, the extent to which Atari has failed to properly account for its exploitation of the D&D Properties. Atari has also refused to comply with Hasbro's informal requests, outside of the audit context, that Atari provide information concerning its exploitation of the D&D Properties including, for example, identification of all of Atari's sublicensees. As a result, Hasbro cannot respond more fully to this Interrogatory until it is provided the requested access to Atari's books and records and/or this information.

**INTERROGATORY NO. 3:**

State and describe in detail all damages claimed by Hasbro "resulting from Atari's unauthorized sublicensing of D&D products," as set forth in Section C(3) of Hasbro's Initial Disclosures, including the amount and calculation of all such damages and the method used to calculate those damages.

**RESPONSE TO INTERROGATORY NO. 3:**

Hasbro incorporates by reference each of the General Objections set forth above. In addition, Hasbro specifically objects to this Request on the grounds that it is premature as Hasbro has not yet completed its discovery and investigation of the facts pertaining to this action, its review of relevant documents, or its preparation for trial. The amount and calculation of Hasbro's damages and the method used to calculate its damages may be the subject of expert testimony and will be disclosed in accordance with the Federal Rules of Civil Procedure and the Local Rules of the District of Rhode Island. Accordingly, Hasbro

8

reserves the right to supplement and/or amend its response to this Interrogatory. Hasbro further specifically objects to this Interrogatory on the grounds that it seeks information within Atari's possession, custody or control and which Atari has not provided to Hasbro.

Subject to and without waiving the foregoing general and specific objections, Hasbro responds as follows: Hasbro has repeatedly attempted to audit and obtain a full and complete accounting of Atari's exploitation of the D&D Properties. To date, Atari has refused to provide Hasbro with a full and complete audit or documentation sufficient to allow it to determine, among other things, the extent to which Atari has engaged in unauthorized sublicensing of D&D products. Atari has also refused to comply with Hasbro's informal requests, outside of the audit context, that Atari provide information concerning its exploitation of the D&D Properties including, for example, identification of all of Atari's sublicensees. Moreover, Hasbro has propounded written discovery asking, among other things, that Atari provide a complete list of its sublicensees of D&D products and information regarding the profit, net income, and revenue generated by such sublicensees. Atari refused to divulge the requested information in its written discovery responses, however, instead promising to "produce business records sufficient to enable [Hasbro] to derive or ascertain the answer to this Interrogatory . . . ." As a result, Hasbro cannot respond more fully to this Interrogatory until it is provided the requested access to Atari's books and records and/or this information. Hasbro has attempted in good faith to identify suspected unauthorized sublicensees of D&D products in its response to Interrogatory No. 4.

**INTERROGATORY NO. 4:**

Identify each person to whom or to which Atari granted an unauthorized sublicense concerning rights granted under the D&D License, including the date(s) of such sublicense, the rights sublicensed, and the products(s) as to which rights were sublicensed.

## RESPONSE TO INTERROGATORY NO. 4:

Hasbro incorporates by reference each of the General Objections set forth above. In addition, Hasbro specifically objects to this Interrogatory on the grounds that it is premature as Hasbro has not yet completed its discovery and investigation of the facts pertaining to this action, its review of relevant documents, or its preparation for trial. Accordingly, Hasbro reserves the right to supplement and/or amend its response to this Interrogatory. Hasbro further specifically objects to this Interrogatory on the grounds that it seeks information within Atari's possession, custody or control and which Atari has not provided to Hasbro.

Subject to and without waiving the foregoing general and specific objections, Hasbro responds as follows: Hasbro has repeatedly attempted to audit and obtain a full and complete accounting of Atari's exploitation of the D&D Properties. To date, Atari has refused to provide Hasbro with a full and complete audit or documentation sufficient to allow it to determine, among other things, the extent to which Atari has engaged in unauthorized sublicensing of D&D products. Atari has also refused to comply with Hasbro's informal requests, outside of the audit context, that Atari provide information concerning its exploitation of the D&D Properties including, for example, identification of all of Atari's sublicensees. Moreover, Hasbro has propounded written discovery asking, among other things, that Atari provide a complete list of its sublicensees of D&D products and information regarding the dates of such sublicenses, rights sublicensed, and D&D products as to which rights were sublicensed. Atari refused to divulge the requested information in its written discovery responses, however, and objected that the requested information was "not reasonably tailored to the issues in dispute in this action . . . ." As a result, Hasbro cannot respond more fully to this Interrogatory until it is provided the requested access to Atari's books and records and/or this information.

Notwithstanding the foregoing, Hasbro provides below a list of suspected unauthorized sublicensees, including the suspected rights sublicensed and the products as to which it believes rights may have been sublicensed. As this list was compiled based upon a combination of happenstance identification of unauthorized products being sold throughout the world, sublicensees where Atari requested approval and never received it, and suspected unauthorized extensions of expired approved deals, the list may be both over and under inclusive. Accordingly, Hasbro reserves the right to amend and/or modify this list as additional information is disclosed during discovery.

- 3A Entertainment
    - Rights to manufacture, market and sell *Icewind Dale II* and *Baldur's Gate* in Russian-speaking countries.
    - Rights to manufacture, market and sell *Dungeons & Dragons: Dragonshard* in Russian-speaking countries.
- Aspyr
    - Rights to box product sales of Mac *Neverwinter Nights 2* product in Singapore.
- Atari.com
    - Rights to digital distribution of three *Neverwinter Nights* bundled titles on Atari.com.
- Axel Springer
    - Rights to manufacture and distribute *Baldur's Gate* and *Icewind Dale II* as covermount with magazine in Germany for 3 months in 2008.

- o Rights to manufacture and distribute *Neverwinter Nights Gold Edition* as covermount with magazine in Germany for three months in 2008.
- CD Projekt
  - o Rights to Polish localization, manufacturing, marketing and distribution of *Planescape Torment* for 36 months.
  - o Rights to Hungarian localization, manufacturing, marketing and distribution of *Baldur's Gate II: Throne of Bhaal* as covermount with magazine for December 2009.
  - o Rights to Czech/Slovakian localization, manufacturing, marketing and distribution of *Neverwinter Nights* and *Dungeons & Dragons: Dragonshard* as covermount for magazine.
  - o Rights to Polish localization, manufacturing, marketing and distribution of *Neverwinter Nights 2: Mysteries of Westgate* and *Neverwinter Nights 2: Storm of Zehir*.
  - o Rights to Polish localization, manufacturing, marketing and distribution of *Neverwinter Nights Diamond Edition*.
  - o Rights to Polish localization, manufacturing, marketing and distribution of *Neverwinter Nights Diamond Edition* as covermount for magazine.

- C-House Intl
  - ○ Rights to manufacture, market and sell *Neverwinter Nights 2* in 80% Europe, 20% Asia.
  - ○ Rights to manufacture, market and sell *Neverwinter Nights 2*.
  - ○ Rights to manufacture, market and sell *Neverwinter Nights 2: Mask of the Betrayer* in 80% Europe, 20% Asia.
- Compupress
  - ○ Rights to manufacture and distribute *Baldur's Gate Compilation* and *Icewind Dale Compilation* as covermount with magazine in Greece.
- Digital River
  - ○ Rights to distribute digital downloads on the Atari.com site in North America.
- Easy Interactive
  - ○ Rights to manufacture, market and distribute *Forgotten Realms: Demon Stone* and *Dungeons & Dragons: Dragonshard*.
- Encore
  - ○ Rights to manufacture, market and sell *Neverwinter Nights, Neverwinter Nights Platinum Edition*, and *Neverwinter Nights 2* in North America in jewel case format.

- GamersGate
  - Rights to digital distribution of *Neverwinter Nights 2*, *Neverwinter Nights Gold Edition*, and *Neverwinter Nights 2: Mask of the Betrayer* in North America after the June 30, 2008 expiration of the authorized sublicense.
  - Rights to digital distribution of *Neverwinter Nights 2*, *Neverwinter Nights 2: Mask of the Betrayer*, and *Neverwinter Nights 2: Storm of Zehir* through gamersgate sites in Europe.
- Games Universe
  - Rights to digital distribution of *Dungeons and Dragons*, *Neverwinter Nights 2*, and *Neverwinter Nights 2: Storm of Zehir* in Europe.
- Gamespy
  - Rights to digital distribution in United States of three-title *Neverwinter Nights* bundle pack on direct2drive.com.
- GD Games
  - Rights to manufacture, market and distribute *Neverwinter Nights: Shadows of Undrentide* and *Forgotten Realms: Demon Stone*.
- Hype Magazine
  - Rights to manufacture and distribute *The Temple of Elemental Evil*, *Forgotten Realms: Demon Stone*, and *Dungeons &*

*Dragons: Dragonshard* as covermount with magazines in Portugal for three months in 2008.

- JSC Football Factory
  - o Rights to manufacture and distribute *Planescape: Torment* to retail outlets throughout Eastern Europe.
- Mastertronic
  - o Rights to manufacture, market and distribute *Dungeons & Dragons: Dragonshard, Forgotten Realms: Demon Stone*, and *Neverwinter Nights Deluxe Edition* for two years in the United Kingdom.
- Metaboli
  - o Rights to digital distribution of five *Neverwinter Nights* titles through Metaboli websites.
- Mindscape
  - o Rights to manufacture, market and sell *Baldur's Gate II: Throne of Bhaal* in France.
- Nexway
  - o Rights to digital distribution of five *Neverwinter Nights* titles through Toomai.fr and other Nexway partner sites.
- On Broadband
  - o Rights to digital distribution of four *Neverwinter Nights* titles in the United States.

- Sprea Media Covermount
  - Rights to package five titles with a magazine.
  - Rights to package *Baldur's Gate Compilation* as covermount with a magazine.
  - Rights to manufacture and distribute *Neverwinter Nights 2* as covermount with magazine in Italy for one month (12/09).
  - Rights to manufacture and distribute *Neverwinter Nights 2: Mask of the Betrayer* as covermount with magazine in Italy for one month.
- Tagmae
  - Rights to manufacture and distribute *Baldur's Gate Compilation*, *Icewind Dale Compilation*, and *Planescape: Torment* to retail outlets in Nordic countries and on Zushigames.com.
- T-Online
  - Rights to digital distribution of *Neverwinter Nights 2* and various *Neverwinter Nights 2 Expansions* in German through t-online website.
  - Rights to digital distribution of *Neverwinter Nights 2* and various *Neverwinter Nights 2 Expansions* in German through t-online website for one-year term.

16

- Wendros

  - o Rights to manufacture, market and sell *Neverwinter Nights* in Finland, Sweden, Denmark, and Norway.

- Yummy Interactive

  - o Rights to digital distribution of seven titles in North America.

Hasbro also considers to be unauthorized any sublicenses of rights (or continuations of sublicenses of rights) to D&D products to any of the 19 Atari subsidiaries after they became Distribution Partners and/or Namco Bandai entities.

## INTERROGATORY NO. 5:

State and describe in detail all damages claimed by Hasbro resulting from Atari's alleged failure to provide adequate customer service support for D&D Digital Games (as defined in the Amended Complaint in this Action), as alleged in paragraphs 176 through 180 of the Amended Complaint in this Action, including the amount and calculation of all such damages and the method used to calculate those damages.

## RESPONSE TO INTERROGATORY NO. 5:

Hasbro incorporates by reference each of the General Objections set forth above. In addition, Hasbro specifically objects to this Interrogatory on the grounds that it is premature as Hasbro has not yet completed its discovery and investigation of the facts pertaining to this action, its review of relevant documents, or its preparation for trial. The amount and calculation of Hasbro's damages and the method used to calculate its damages may be the subject of expert testimony and will be disclosed in accordance with the Federal Rules of Civil Procedure and the Local Rules of the District of Rhode Island. Accordingly, Hasbro reserves the right to supplement and/or amend its response to this Interrogatory. Hasbro

further specifically objects to this Interrogatory on the grounds that it seeks information within Atari's possession, custody or control and which Atari has not provided to Hasbro.

Subject to and without waiving the foregoing general and specific objections, Hasbro responds as follows: Hasbro has repeatedly attempted to audit and obtain a full and complete accounting of Atari's exploitation of the D&D Properties. To date, Atari has refused to provide Hasbro with a full and complete audit or documentation sufficient to allow it to determine, among other things, the extent to which Atari has failed to provide adequate customer service support for D&D Digital Games. Atari has also refused to comply with Hasbro's informal requests, outside of the audit context, that Atari provide information concerning its exploitation of the D&D Properties including, for example, identification of those persons or entities providing customer service support for D&D Digital Games. Moreover, Hasbro has propounded written discovery asking, among other things, that Atari provide information regarding the identity of those persons who provided technical support or customer service and the dollar amount spent by Atari providing such technical support or customer service. Atari refused to divulge the requested information in its written discovery responses, however, instead promising to "produce business records sufficient to enable [Hasbro] to derive or ascertain the answer to this Interrogatory . . . ." As a result, Hasbro cannot respond more fully to this Interrogatory until it is provided the requested access to Atari's books and records and/or this information. Notwithstanding the foregoing, Hasbro contends that Atari's failure to provide adequate customer service support for D&D Digital Games has resulted in damage to the *Dungeons & Dragons* brand. Hasbro expects to retain an expert at the time specified by the Court for expert discovery who will opine on, among other things, the harm and damage to the *Dungeons &*

*Dragons* brand caused by Atari's failure to provide adequate customer service support for D&D Digital Games.

**INTERROGATORY NO. 6:**

State and describe in detail all damages claimed by Hasbro resulting from Atari's alleged "failure to promote and sell D&D products," as set forth in Section C(4) of Hasbro's Initial Disclosures, including the amount and calculation of all such damages and the method used to calculate those damages.

**RESPONSE TO INTERROGATORY NO. 6:**

Hasbro incorporates by reference each of the General Objections set forth above. In addition, Hasbro specifically objects to this Interrogatory on the grounds that it is premature as Hasbro has not yet completed its discovery and investigation of the facts pertaining to this action, its review of relevant documents, or its preparation for trial. The amount and calculation of Hasbro's damages and the method used to calculate its damages may be the subject of expert testimony and will be disclosed in accordance with the Federal Rules of Civil Procedure and the Local Rules of the District of Rhode Island. Accordingly, Hasbro reserves the right to supplement and/or amend its response to this Interrogatory. Hasbro further specifically objects to this Interrogatory on the grounds that it seeks information within Atari's possession, custody or control and which Atari has not provided to Hasbro.

Subject to and without waiving the foregoing general and specific objections, Hasbro responds as follows: Hasbro has repeatedly attempted to audit and obtain a full and complete accounting of Atari's exploitation of the D&D Properties. To date, Atari has refused to provide Hasbro with a full and complete audit or documentation sufficient to allow it to determine, among other things, the extent to which Atari has failed to promote and sell D&D products.

19

Atari has also refused to comply with Hasbro's informal requests, outside of the audit context, that Atari provide information concerning its exploitation of the D&D Properties. Moreover, Hasbro has propounded written discovery asking, among other things, that Atari identify and provide details concerning all D&D products it considered for development from June 3, 2005 to the present, including how much money it spent advertising, promoting and marketing such D&D products. Atari refused to divulge the requested information in its written discovery responses, however, instead promising to "produce business records sufficient to enable [Hasbro] to derive or ascertain the answer to this Interrogatory . . . ." As a result, Hasbro cannot respond more fully to this Interrogatory until it is provided the requested access to Atari's books and records and/or this information. Notwithstanding the foregoing, Hasbro contends that Atari's failure to promote and sell D&D products resulted in damage to the *Dungeons & Dragons* brand and lost revenue to Hasbro. Hasbro expects to retain an expert at the time specified by the Court for expert discovery who will opine on, among other things, the harm and damage to the *Dungeons & Dragons* brand and the lost revenue to Hasbro caused by Atari's failure to promote and sell D&D products. Such damages include, but are not limited to, the damages from Atari's failure to promote and sell the D&D products listed in Hasbro's response to Interrogatory No. 7.

**INTERROGATORY NO. 7:**

Identify each of the D&D products which Hasbro contends that Atari has failed to promote as a result of which Hasbro has incurred damages, as set forth in Section C(4) of Hasbro's Initial Disclosures.

## RESPONSE TO INTERROGATORY NO. 7:

Hasbro incorporates by reference each of the General Objections set forth above. In addition, Hasbro specifically objects to this Interrogatory on the grounds that it is premature as Hasbro has not yet completed its discovery and investigation of the facts pertaining to this action, its review of relevant documents, or its preparation for trial. Accordingly, Hasbro reserves the right to supplement and/or amend its response to this Interrogatory. Hasbro further specifically objects to this Interrogatory on the grounds that it seeks information within Atari's possession, custody or control and which Atari has not provided to Hasbro.

Subject to and without waiving the foregoing general and specific objections, Hasbro responds as follows: Hasbro has repeatedly attempted to audit and obtain a full and complete accounting of Atari's exploitation of the D&D Properties. To date, Atari has refused to provide Hasbro with a full and complete audit or documentation sufficient to allow it to determine, among other things, the extent to which Atari has failed to promote and sell D&D products. Atari has also refused to comply with Hasbro's informal requests, outside of the audit context, that Atari provide information concerning its exploitation of the D&D Properties. Moreover, Hasbro has propounded written discovery asking, among other things, that Atari identify and provide details concerning all D&D products it considered for development from June 3, 2005 to the present, including how much money it spent advertising, promoting and marketing such D&D products. Atari refused to divulge the requested information in its written discovery responses, however, instead promising to "produce business records sufficient to enable [Hasbro] to derive or ascertain the answer to this Interrogatory . . . ." As a result, Hasbro cannot respond more fully to this Interrogatory until it is provided the requested access to Atari's books and records and/or this information.

Notwithstanding the foregoing, Hasbro contends that, based on its current understanding of the facts, Atari has failed to promote each and every D&D product at various points of time. For example, Hasbro understands that in 2009 and 2010, and possibly other years, Atari failed to present Hasbro with any marketing plan. The following is a list of those suspected products that Atari did not adequately promote. This list may be both over and under inclusive. Accordingly, Hasbro reserves the right to amend and/or modify this list as additional information is disclosed during discovery:

- *Baldur's Gate*
- *Baldur's Gate Compilation*
- *Baldur's Gate: Dark Alliance*
- *Baldur's Gate: Shadows of Amn*
- *Baldur's Gate: Tales of the Sword Coast*
- *Baldur's Gate II: Throne of Bhaal*
- *Dark Alliance 2*
- *Dungeons & Dragons: Dragonshard*
- *Dungeons & Dragons: Heroes*
- *Dungeons & Dragons Online: Stormreach*
- *Dungeons & Dragons Tactics*
- *Eye of the Beholder*
- *Forgotten Realms: Demon Stone*
- *Icewind Dale*
- *Icewind Dale Compilation*
- *Icewind Dale: Heart of Winter*

- *Icewind Dale II*

- *Neverwinter Nights*

- *Neverwinter Nights Deluxe Edition*

- *Neverwinter Nights Diamond Edition*

- *Neverwinter Nights Gold Edition*

- *Neverwinter Nights Platinum Edition*

- *Neverwinter Nights: Hordes of the Underdark*

- *Neverwinter Nights: Infinite Dungeons*

- *Neverwinter Nights: Kingmaker*

- *Neverwinter Nights: Mobile*

- *Neverwinter Nights: Pirates of the Sword Coast*

- *Neverwinter Nights: Shadows of Undrentide*

- *Neverwinter Nights: Wyvern Crown of Cormyr*

- *Neverwinter Nights 2*

- *Neverwinter Nights 2 Expansions*

- *Neverwinter Nights 2: Mask of the Betrayer*

- *Neverwinter Nights 2: Mysteries of Westgate*

- *Neverwinter Nights 2: Storm of Zehir*

- *Planescape: Torment*

- *Pool of Radiance: Ruin of Myth Drannor*

- *The Temple of Elemental Evil*

INTERROGATORY NO. 8:

State and describe in detail all "Lost opportunity damages" claimed by Hasbro "resulting from a number of proposed plans from 2006-2009 that Atari failed to act or execute on," as set forth in Section C(5) of Hasbro's Initial Disclosures, including the amount and calculation of all such damages and the method used to calculate those damages.

RESPONSE TO INTERROGATORY NO. 8:

Hasbro incorporates by reference each of the General Objections set forth above. In addition, Hasbro specifically objects to this Interrogatory on the grounds that it is premature as Hasbro has not yet completed its discovery and investigation of the facts pertaining to this action, its review of relevant documents, or its preparation for trial. The amount and calculation of Hasbro's damages and the method used to calculate its damages may be the subject of expert testimony and will be disclosed in accordance with the Federal Rules of Civil Procedure and the Local Rules of the District of Rhode Island. Accordingly, Hasbro reserves the right to supplement and/or amend its response to this Interrogatory. Hasbro further specifically objects to this Interrogatory on the grounds that it seeks information within Atari's possession, custody or control and which Atari has not provided to Hasbro.

Subject to and without waiving the foregoing general and specific objections, Hasbro responds as follows: Hasbro has repeatedly attempted to audit and obtain a full and complete accounting of Atari's exploitation of the D&D Properties. To date, Atari has refused to provide Hasbro with a full and complete audit or documentation sufficient to allow it to determine, among other things, the various proposed plans that Atari failed to act or execute on. Atari has also refused to comply with Hasbro's informal requests, outside of the audit context, that Atari provide information concerning its exploitation of the D&D Properties. Moreover, Hasbro has

24

propounded written discovery asking, among other things, that Atari identify and provide details concerning all D&D products it considered for development from June 3, 2005 to the present, including how much money it spent advertising, promoting and marketing such D&D products. Atari refused to divulge the requested information in its written discovery responses, however, instead promising to "produce business records sufficient to enable [Hasbro] to derive or ascertain the answer to this Interrogatory . . . ." As a result, Hasbro cannot respond more fully to this Interrogatory until it is provided the requested access to Atari's books and records and/or this information.

Notwithstanding the foregoing, Hasbro contends that from 2006-2009, as well as both before and after that time period, Atari proposed a number of new D&D products and new versions of existing D&D products. Some of those products were repeatedly delayed beyond the promised launch date. Other products were cancelled entirely. In its response to Interrogatory No. 9, Hasbro has provided a list of all such delayed and cancelled plans that were originally proposed between 2006 and 2009. The delay and/or cancellation of these plans resulted in damage to the *Dungeons & Dragons* brand and lost revenue to Hasbro in terms of royalty payments it would have received. Hasbro expects to retain an expert at the time specified by the Court who will opine on, among other things, the harm and damage to the *Dungeons & Dragons* brand and the loss to Hasbro caused by Atari's failure to act or execute on its proposed plans.

**INTERROGATORY NO. 9:**

Identify each of the "proposed plans from 2006-2009" that Hasbro contends Atari "failed to act or execute on" and for which Hasbro has incurred damages, as set forth in Section C(5) of Hasbro's Initial Disclosures, including, as to each of the plans, the date(s) on which the plan was

proposed to Hasbro, the method(s) by which the plan was proposed to Hasbro (*e.g.*, by letter, in-person meeting, etc.), and the officers or employees of Atari that played a significant role in proposing the plan to Hasbro.

**RESPONSE TO INTERROGATORY NO. 9:**

Hasbro incorporates by reference each of the General Objections set forth above. In addition, Hasbro specifically objects to this Interrogatory on the grounds that it is premature as Hasbro has not yet completed its discovery and investigation of the facts pertaining to this action, its review of relevant documents, or its preparation for trial. Accordingly, Hasbro reserves the right to supplement and/or amend its response to this Interrogatory. Hasbro further specifically objects to this Interrogatory on the grounds that it seeks information within Atari's possession, custody or control and which Atari has not provided to Hasbro.

Subject to and without waiving the foregoing general and specific objections, Hasbro responds as follows: Hasbro has repeatedly attempted to audit and obtain a full and complete accounting of Atari's exploitation of the D&D Properties. To date, Atari has refused to provide Hasbro with a full and complete audit or documentation sufficient to allow it to determine, among other things, the various proposed plans that Atari failed to act or execute on. Atari has also refused to comply with Hasbro's informal requests, outside of the audit context, that Atari provide information concerning its exploitation of the D&D Properties. Moreover, Hasbro has propounded written discovery asking, among other things, that Atari identify and provide details concerning all D&D products it considered for development from June 3, 2005 to the present, including how much money it spent advertising, promoting and marketing such D&D products. Atari refused to divulge the requested information in its written discovery responses, however, instead promising to "produce business records sufficient to enable [Hasbro] to derive or

ascertain the answer to this Interrogatory . . . ." As a result, Hasbro cannot respond more fully to this Interrogatory until it is provided the requested access to Atari's books and records and/or this information.

Notwithstanding the foregoing, Hasbro contends that from 2006-2009, as well as both before and after that time period, Atari proposed a number of new D&D products and new versions of existing D&D products. Some of those products were repeatedly delayed beyond the promised launch date. Other products were cancelled entirely. Based on Hasbro's current understanding of the facts, the following is a list of (i) occasions from 2006 to 2009 when Atari proposed products; (ii) the products proposed during each such occasion that Atari subsequently either delayed beyond the promised launch date or cancelled entirely; and (iii) the Atari officers and employees believed to have been involved in the proposal (where that information is available). This list may be both over and under inclusive. Accordingly, Hasbro reserves the right to amend and/or modify this list as additional information is disclosed during discovery:

- Atari proposed a number of D&D products to Hasbro in a PowerPoint deck dated February 16, 2006. Hasbro does not currently have the names of the officers or employees of Atari that played a significant role in this proposal, but will supplement its response when this information becomes available in the course of discovery. In the February 16, 2006 PowerPoint deck Atari proposed the following D&D products, all of which were subsequently either delayed or cancelled:

  o A February 2008 release for *Baldur's Gate 3 for* PlayStation 3.

  o An October 2008 release for *Neverwinter Nights Online*.

- o A September 2009 release for *Neverwinter Nights Online Expansion*.

- o A February 2009 release for *Baldur's Gate 4* for PlayStation 3.

- o A March 2007 release of *D&D Castle Simulator* for handheld consoles.

- o An October 2007 release for *Castle Sim 2*.

- o Releases in October 2007, January 2008, April 2008, July 2008, October 2008, January 2009, April 2009, July 2009, October 2009, and January 2010 for *D&D Battlefield Episodic*.

- o A February 2010 release for *Baldur's Gate 5* for PlayStation 3.

- Atari proposed a number of D&D products to Hasbro in a Product Plan presented on June 22, 2006. The officers or employees of Atari that attended this June 22, 2006 meeting include, but are not limited to: Rick Mehler, the Director of Marketing; Keehwan Her, the Associate Producer; and Grantley Day, the Director of Online Gaming Product Development. Atari proposed the following D&D products, all of which were subsequently either delayed or cancelled:

  - o A February 2008 release for *Baldur's Gate 3* for PlayStation 3.

  - o An October 2008 release for *Neverwinter Nights Online*.

  - o A Q4 2009 release for *Neverwinter Nights Online Expansion*.

  - o A February 2009 release for *Baldur's Gate 4* for PlayStation 3.

  - o A March 2007 release of *D&D Castle Simulator* for handheld consoles.

  - o An October 2007 release for *Castle Sim 2*.

  - o A probable first release of *D&D Battlefield Episodic* in Q3 2008, with releases every quarter through Q1 2010.

  - o A February 2010 release for *Baldur's Gate 5* for PlayStation 3.

- o A Q3 2007 release for *D&D Tactics 2*.

- o A Q4 2008 release for *D&D Tactics 3*.

- o A Q4 2009 release for *D&D Tactics 4*.

- o A Q1 2007 release for *Neverwinter Nights 2 Mod 1*.

- o A Q3 2007 release for *Neverwinter Nights 2 Exp 1*.

- o A Q1 2008 release for *Neverwinter Nights 2 Mod 2*.

- Atari proposed a number of D&D products in a Product Plan deck presented to Hasbro in New York in November 2007. Hasbro does not have the names of the officers or employees of Atari that played a significant role in the November 2007 Product Plan deck presentation, but will supplement its response when this information becomes available in the course of discovery. At the November 2007 presentation, Atari proposed the following D&D products, all of which were subsequently either delayed or cancelled:

  - o A Q4 2010 release for *Baldur's Gate 3*.

  - o A Q4 2011 release for *Neverwinter Nights Online*.

  - o A Q4 2010 release for *D&D Flash MMO* (for Girls & Boys 10+).

- Atari proposed a number of D&D products to Hasbro in a Quarterly Business Review deck dated June 21, 2008 and presented via video conference call. Hasbro does not currently have the names of the officers or employees of Atari that played a significant role in the June 21, 2008 video conference presentation, but is aware that one Atari representative presented from France. Hasbro will supplement its response when this information becomes available in the course of discovery. At the June 21, 2008 video conference call, Atari proposed the

following D&D products, all of which were subsequently either delayed or cancelled:

- o A Christmas 2010 release of *Baldur's Gate 3* for PlayStation 3, Xbox 360, Nintendo Wii, and PC.

- o A Christmas 2011 release of *Neverwinter Nights Online* for PC, Xbox 360, and PlayStation 3.

- o A Q4 2011 release of *Neverwinter Nights Online Expansion*.

- o A Q4 2010 release for *D&D Flash MMO* (for Girls & Boys 10+).

- Atari proposed a number of D&D products in a meeting with Wizards of the Coast and Hasbro on April 28, 2009. The officers or employees of Atari that attended this April 28, 2009 meeting include, but are not limited to: Jim Wilson, the President and CEO of Atari; Hudson Piehl, the VP of Production at Atari; Jack Emmert, the chief creative officer and chairman of Cryptic Studios; and John Needham, the CEO of Cryptic Studios. At the April 28, 2009 meeting, Atari proposed the following D&D products, all of which were subsequently either delayed or cancelled:

- o A 2010/2011 launch window for *Baldur's Gate 3*.

- o A Q4 2011 release for *Neverwinter Nights Online*.

- o A Q1 2012 release for *Neverwinter Nights Online Expansion*.

- o A September 2010 release for a Microsoft Xbox Live Arcade game.

- Atari proposed a number of D&D products in a December 9, 2009 meeting with Wizards of the Coast. Hasbro does not currently have the names of the officers or employees of Atari that played a significant role in the December 9, 2009

30

presentation. Hasbro will supplement its response when this information becomes available in the course of discovery. At the December 9, 2009 meeting, Atari proposed the following D&D products, all of which were subsequently either delayed or cancelled:

- o Atari claimed that 2 new developers were interested in *Baldur's Gate*, but did not provide a release date.

- o A Q4 2011 release for *Neverwinter Nights Online.*

- o A September 2010 release for Microsoft Xbox Live Arcade game.

- o A 2012 release for *Dragonlance Online* (Perfect World).

**INTERROGATORY NO. 10:**

Identify and describe in detail all costs and expenses, including attorneys' fees, incurred by Hasbro in connection with the Action and defending against Atari's counterclaims in this Action, as set forth in Section C(6) of Hasbro's Initial Disclosures.

**RESPONSE TO INTERROGATORY NO. 10:**

Hasbro incorporates by reference each of the General Objections set forth above. In addition, Hasbro specifically objects to this Interrogatory on the grounds that it is premature as the costs and expenses, including attorneys' fees, incurred by Hasbro in connection with the Action and defending against Atari's counterclaims in this Action are ongoing and continuously accumulating. The amount and calculation of costs and expenses, including attorneys' fees, and the reasonableness thereof may be the subject of expert testimony and will be disclosed in accordance with the Federal Rules of Civil Procedure and the Local Rules of the District of Rhode Island. Accordingly, Hasbro reserves the right to supplement and/or amend its response to this Interrogatory.

Subject to and without waiving the foregoing general and specific objections, Hasbro responds as follows: If the Court awards Hasbro its costs and expenses, including but not limited to attorneys' fees, Hasbro will provide the amount, calculation of, and any necessary documentation supporting those costs and expenses if ordered by the Court and within the time specified for the disclosure of this information by the Court.

## INTERROGATORY NO. 11:

As to each category of damages claimed by Hasbro, as set forth in Sections C(1) through C(6) of Hasbro's Initial Disclosures, or any other category of damages claims by Hasbro, state in detail Hasbro's efforts to mitigate those claimed damages.

## RESPONSE TO INTERROGATORY NO. 11:

Hasbro incorporates by reference each of the General Objections set forth above. In addition, Hasbro specifically objects to this Interrogatory on the grounds that it is premature as Hasbro has not yet completed its discovery and investigation of the facts pertaining to this action, its review of relevant documents, or its preparation for trial. The amount and calculation of Hasbro's damages and the method used to calculate its damages may be the subject of expert testimony and will be disclosed in accordance with the Federal Rules of Civil Procedure and the Local Rules of the District of Rhode Island. Accordingly, Hasbro reserves the right to supplement and/or amend its response to this Interrogatory. Hasbro further specifically objects to this Interrogatory on the grounds that it seeks information within Atari's possession, custody or control and which Atari has not provided to Hasbro.

Subject to and without waiving the foregoing general and specific objections, Hasbro responds as follows:

- With regard to the damages claimed by Hasbro relating to the annual "guarantee payment" required to be paid by Atari through 2017 under the D&D License (as set forth in Section C(1) of Hasbro's Initial Disclosures), Hasbro is unable to mitigate these damages unless and until the D&D License is terminated by the Court.

- With regard to the damages claimed by Hasbro relating to Atari's failure to properly account for its exploitation of the D&D Properties (as set forth in Section C(2) of Hasbro's Initial Disclosures), Hasbro is unable to mitigate these damages because they are backwards-looking and solely the fault and within the control of Atari.

- With regard to the damages claimed by Hasbro resulting from Atari's unauthorized sublicensing of D&D products (as set forth in Section C(3) of Hasbro's Initial Disclosures), Hasbro is unable to mitigate these damages because they are backwards-looking and solely the fault and within the control of Atari.

- With regard to the damages claimed by Hasbro resulting from Atari's failure to provide adequate customer service support for D&D Digital Games, as alleged in paragraphs 176 through 180 of the Amended Complaint in this Action, Hasbro is unable to mitigate these damages Hasbro is unable to mitigate these damages unless and until the D&D License is terminated by the Court.

- With regard to the damages claimed by Hasbro resulting from Atari's failure to promote and sell D&D products (as set forth in Section C(4) of Hasbro's Initial

33

Disclosures), Hasbro is unable to mitigate these damages unless and until the D&D License is terminated by the Court.

- With regard to the lost opportunity damages claimed by Hasbro resulting from a number of proposed plans from 2006-2009 that Atari failed to act or execute on (as set forth in Section C(5) of Hasbro's Initial Disclosures), Hasbro is unable to mitigate these damages because they are backwards-looking and are solely the fault and within the control of Atari.

- With regard to costs and expenses, including attorneys' fees, incurred by Hasbro in connection with the Action and defending against Atari's counterclaims in this Action (as set forth in Section C(6) of Hasbro's Initial Disclosures), Hasbro is under no legal obligation to mitigate these damages.

**INTERROGATORY NO. 12:**

Identify each individual who made "contact with customer service support of D&D Digital Games in various countries" as alleged in paragraph 68 of the Amended Complaint in this Action.

**RESPONSE TO INTERROGATORY NO. 12:**

Hasbro incorporates by reference each of the General Objections set forth above. In addition, Hasbro specifically objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other privilege, protection, or doctrine of similar effect as the contact with customer service support was done by counsel and at the request, instruction, and direction of Kate Ross, Vice-President-Legal of Wizards of the Coast, LLC.

Subject to and without waiving the foregoing general and specific objections, Hasbro responds as follows:

- Kate Ross

- Dale Aitken

- Lawyers and investigators retained by Hasbro, and who worked under the instruction and direction of Hasbro's counsel and counsel retained from the law firm of Baker & McKenzie.

**INTERROGATORY NO. 13:**

Identify all documents concerning each and every "contact with customer service support of D&D Digital Games in various countries" as alleged in paragraph 68 of the Amended Complaint in this Action.

**RESPONSE TO INTERROGATORY NO. 13:**

Hasbro incorporates by reference each of the General Objections set forth above. In addition, Hasbro specifically objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other privilege, protection, or doctrine of similar effect as the contact with customer service support was done by counsel and at the request, instruction, and direction of Kate Ross, Vice-President-Legal of Wizards of the Coast, LLC.

Subject to and without waiving the foregoing general and specific objections, Hasbro responds that the requested documents are all privileged and/or work product and will be identified on a privilege log to be produced by Hasbro at the appropriate time.

## INTERROGATORY NO. 14:

Identify each individual who participated in each investigation of Atari or any relationship between Namco Bandai and Atari that was conducted by or on behalf of Hasbro, including, but not limited to, the investigation that Kate Ross, Vice-President-Legal of Wizards of the Coast, LLC, commenced "in an attempt to enable Hasbro to itself answer some of the questions it had previously posed to Atari for which it had not received any response" as stated in Kate Ross' December 6, 2009 letter to Kristen Keller of Atari.

## RESPONSE TO INTERROGATORY NO. 14:

Hasbro incorporates by reference each of the General Objections set forth above. In addition, Hasbro specifically objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other privilege, protection, or doctrine of similar effect as the investigation of Atari and the relationship between Namco Bandai and Atari was done by counsel and at the request, instruction, and direction of Kate Ross, Vice-President-Legal of Wizards of the Coast, LLC.

Subject to and without waiving the foregoing general and specific objections, Hasbro responds as follows:

- Kate Ross

- Wojciech Kreft of Baker & McKenzie

- Dr. Rembert Niebel of Baker & McKenzie

## INTERROGATORY NO. 15:

Identify all documents concerning each investigation of Atari or any relationship between Namco Bandai and Atari that was conducted by or on behalf of Hasbro, including,

36

but not limited to, each document created in the investigation and each document concerning the results or findings of the investigation.

**RESPONSE TO INTERROGATORY NO. 15:**

Hasbro incorporates by reference each of the General Objections set forth above. In addition, Hasbro specifically objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or any other privilege, protection, or doctrine of similar effect as the investigation of Atari and the relationship between Namco Bandai and Atari was done by counsel and at the request, instruction, and direction of Kate Ross, Vice-President-Legal of Wizards of the Coast, LLC.

Subject to and without waiving the foregoing general and specific objections, Hasbro responds that many of the documents concerning the investigation of Atari or the relationship between Namco Bandai and Atari are privileged and/or work product and will be identified on a privilege log to be produced by Hasbro at the appropriate time. Other non-privileged and/or non-work product documents created in the investigation or concerning the results of findings of the investigation consist of printouts of publically available information including the following: (i) printouts of products listed as of December 13, 2009 on Namco Bandai websites for sale and promotional marketing materials that would normally be on Atari's website; (ii) a printout of Atari's international customer service page indicating phone numbers that, if called, would go to Namco Bandai customer service representatives around the world; (iii) printouts of public filings on Euronext; (iv) printouts of various Atari and Namco Bandai employees on LinkedIn; and (v) printouts of items for sale online at Games Universe and Games Spy that were not covered by the relevant contract or where the contract had expired. Many, if not all, of these non-privileged documents are already

in Atari's possession, custody or control as they were attached to emails or letters sent by Hasbro to Atari in connection with Hasbro's investigation of Atari and/or the relationship between Namco Bandai and Atari.

Dated:  November 18, 2010

HASBRO, INC.
By its Attorneys,

John A. Tarantino, Esq. (#2586)
jtarantino@apslaw.com
Todd White, Esq. (#5943)
twhite@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: (401) 274-7200
Fax: (401) 351-4607

Robert M. Schwartz, Esq. (*Pro hac vice*)
rschwartz@omm.com
Matthew T. Kline, Esq. (*Pro hac vice*)
mkline@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars, Suite700
Los Angeles, CA 90067
Tel: (310) 553-6700
Fax: (310) 246-6779

### CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of November 2010, the within document was served upon the following counsel of record via electronic mail and United States First Class Mail:

Brooks R. Magratten, Esq.
bmagratten@pierceatwood.com
Michael J. Daly, Esq.
mdaly@pierceatwood.com
Pierce Atwood LLP
10 Weybosset Street, Suite 400
Providence, RI 02903

Kyle C. Bisceglie, Esq.
Kbisceglie@olshanlaw.com
Herbert C. Ross, Esq.
hross@olshanlaw.com
Peter M. Sartorius
psartorius@olshanlaw.com
Olshan Grundman Frome Rosenzweig & Wolosky LLP
Park Avenue Tower
65 East 55th Street
New York, NY 10022

Drew E. Breuder