# EXHIBIT 8



# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING<br>BRUSSELS<br>HONG KONG<br>LONDON<br>LOS ANGELES<br>NEWPORT BEACH | 1999 Avenue of the Stars<br>Los Angeles, California 90067-6035<br><br>TELEPHONE (310) 553-6700<br>FACSIMILE (310) 246-6779<br>www.omm.com | NEW YORK<br>SAN FRANCISCO<br>SHANGHAI<br>SILICON VALLEY<br>TOKYO<br>WASHINGTON, D.C. |

OUR FILE NUMBER
393,260-8

January 10, 2011

WRITER'S DIRECT DIAL
(310) 246-8434

**VIA FIRST CLASS MAIL AND E-MAIL**

WRITER'S E-MAIL ADDRESS
jpearl@omm.com

Herbert C. Ross, Esq.
Olshan Grundman Frome Rosenzweig & Wolosky LLP
Park Avenue Tower
65 East 55th Street
New York, NY 10022

Re: *Hasbro, Inc. v. Infogrames Entertainment S.A. a/k/a Atari, S.A.*
(C.A. No. 09 Civ. 610 (S))

Dear Herb:

We write regarding Atari's November 15, 2010 Responses and Objections to Hasbro's First Set of Interrogatories, Second Request for the Production of Documents, and First Set of Requests for Admissions (collectively, the "Discovery Responses").

As an initial matter, we are troubled by Atari's continued refusal to comply with its discovery obligations and wholesale objections to what is perfectly appropriate discovery by Hasbro. During our prior "meet and confer" sessions, Atari has taken the position that Hasbro may conduct discovery only with respect to the Namco Bandai sublicensing dispute, and that inquiry into other areas of Atari's performance under the parties' License Agreement is not appropriate or warranted. It is clear from the Discovery Responses that Atari intends to continue to refuse to answer legitimate discovery requests on this basis. As we have previously explained, however, Hasbro's discovery is in fact directly relevant to the merits of the parties' dispute. For example, during our October 29, 2010 call, we explained that Count V of the Amended Complaint specifically alleges that "Atari has directly and materially breached the License Agreement by failing to use commercially reasonable efforts to promote the D&D Digital Games and undertake the licensed activities in a diligent manner." Given these broad allegations, it is clear that *all* aspects of Atari's performance under the contract are properly discoverable under Rule 26. If there were any doubt, Hasbro's proposed Second Amended Complaint makes even more clear that the claims and allegations in this case go well beyond the Namco Bandai sublicensing dispute.

Furthermore, as we have previously noted, Hasbro's discovery is particularly appropriate in light of Atari's own broad discovery requests to Hasbro seeking, for example, *all* documents from Hasbro concerning: (1) "Atari," (2) "Atari's performance under the D&D License," (3)

O'MELVENY & MYERS LLP

Herbert C. Ross, Esq., January 10, 2011 - Page 2

"Atari's relations with Namco Bandai," and (4) "the rights licensed to Atari pursuant to the D&D License whether such communications are internal to Hasbro or directed to non-party entities or individuals." Without exception, Hasbro has agreed to produce non-privileged documents in response to all of Atari's requests. We continue to urge Atari to adopt a similarly open and transparent approach with respect to its discovery obligations.

Below, we address specific deficiencies in Atari's Discovery Responses.

Atari's Responses to Hasbro's First Set of Interrogatories:

After lodging numerous boilerplate objections, Atari provided the following response to Hasbro Interrogatory Nos. 1-5 and 7-11:

> Subject to the forgoing, Atari will produce business records sufficient to enable you to derive or ascertain the answer to this Interrogatory, as permitted by Rule 33(d) of the Federal Rules of Civil Procedure, solely to the extent this Interrogatory seeks information concerning the development of D&D games relevant to the parties' claims or defenses in this action.

This response is deficient.

First, Atari's promise to provide unspecified business records is grossly inadequate to invoke Federal Rule of Civil Procedure 33(d). Federal Rule of Civil Procedure 33(d) affords litigants the option to produce business records in lieu of fully and directly answering an interrogatory only where (1) it is actually possible to determine the answer to the interrogatory "by examining, auditing, compiling, abstracting, or summarizing a party's business records...."; (2) the burden of deriving or ascertaining the answer is "substantially the same for either party"; (3) the responding party specifies "the records that must be reviewed, *in sufficient detail to enable to interrogating party to locate and identify them as readily as the responding party could*"; and (4) the responding party gives the interrogating party "a reasonable opportunity to examine and audit the records." FED. R. CIV. P. 33(d) (emphasis added). The Advisory Committee Notes to the 1980 Amendments make clear that failure to fulfill these requirements constitutes an abuse of the rule: "[P]arties upon whom interrogatories are served have occasionally responded by directing the interrogating party to a mass of business records or by offering to make all of their records available, justifying the response by the option provided by this subdivision. Such practices are an abuse of the option."

Atari's reliance on Rule 33(d) in its responses to Interrogatory Nos. 1-5 and 7-11 plainly constitutes an abuse of the rule. Atari has simply referenced a mass of business records, none of which have been produced to date, without any attempt to specify in any detail which records are be reviewed or that comply with the other requirements of Rule 33(d). Courts have consistently rejected such responses, and imposed sanctions on the offending party. *See, e.g., In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 326 (N.D. Ill. 2005) (granting motion to compel because "referring to business records *en masse*, without specifying particular documents is 'an abuse of the option'" and defendant's plan to produce "a massive amount of documents and . . .

O'MELVENY & MYERS LLP

Herbert C. Ross, Esq., January 10, 2011 - Page 3

[leave] the plaintiffs to sift through them to find the answers" was inadequate); *Blake Assocs., Inc. v. Omni Spectra, Inc.*, 118 F.R.D. 283, 288-90 (D. Mass. 1988) (awarding sanctions against plaintiff for its "wholly improper invocation of [Rule 33(d)]" where "[a]n even cursory reading of Rule 33(d) would have alerted reasonably competent counsel to the fact that plaintiff's answers were wholly deficient" and did not comply with the rule's explicit specificity requirements).

Atari's responses to Interrogatory Nos. 1-5 and 7-11 are deficient for another reason. Collectively, these interrogatories ask various questions regarding each of the D&D games Atari considered for development at any time from June 3, 2005 to the present. In response, Atari objected that "the broad topic of 'each D&D game [Atari] considered for development at any time from June 3, 2005 to the present' is not reasonably tailored to the issues in dispute in this action and is so broad in scope as to be difficult to respond to completely and accurately without undue burden." Subject to these and other objections, Atari then committed only to produce business records "to the extent this Interrogatory seeks information concerning the development of D&D games *relevant to the parties' claims or defenses in this action*." (emphasis added). Atari has no basis to limit its responses to some undefined universe of D&D games that it unilaterally deems to be "relevant to the parties' claims or defenses in this action," however. As noted above, the broad allegations of Hasbro's complaint make clear that *all* D&D games considered or developed by Atari are relevant and go directly to the core of Hasbro's claims in this case, including Hasbro's damages. Hasbro is entitled to this discovery concerning the D&D games Atari considered for development, as well as discovery concerning the D&D games Atari actually developed.

Atari's responses to Interrogatory Nos. 6 and 12 are likewise deficient. In Interrogatory No. 6, Hasbro sought information concerning Atari's advertising, promotional and marketing expenditures (by territory) for each D&D game it has commercially released. In Interrogatory No. 12, Hasbro sought to discover the identity of Atari's sublicensees, distributors, or wholesalers of D&D games and related information. Atari refused to respond to either interrogatory, and instead objected that this discovery imposed an undue burden and addressed topics "not reasonably tailored to the issues in dispute in this action." Atari's position is completely without merit. Hasbro seriously questions that it would cause an undue burden for Atari to provide information—or at least produce specific documents referencing this information pursuant to Rule 33(d)—concerning its advertising, promotional and marketing territories for the D&D games it commercially released, and the sublicensees, distributors and wholesalers it engaged to distribute these games. Moreover, there is no doubt that these issues are relevant. Count V of the Amended Complaint squarely alleges that Atari "failed to use commercially reasonable efforts to promote the D&D Digital Games." Thus, the amount of money Atari spent to advertise, promote and market those games is directly within the scope of the issues in the dispute and clearly discoverable under Rule 26. Similarly, the identity of Atari's sublicensees, distributors, or wholesalers is clearly relevant as demonstrated by the fact that Atari has previously propounded written discovery to Hasbro on this identical subject matter. *See* Atari's First Set of Interrogatories at Nos. 3-4 (asking Hasbro to state and describe in detail all damages claimed "resulting from Atari's unauthorized sublicensing of D&D products" and to

O'MELVENY & MYERS LLP

Herbert C. Ross, Esq., January 10, 2011 - Page 4

"[i]dentify each person to whom or to which Atari granted an unauthorized sublicense concerning rights granted under the D&D License, including the date(s) of such sublicense, the rights sublicensed, and the product(s) as to which rights were sublicensed.").

### Atari's Responses to Hasbro's Second Request for the Production of Documents:

In Request No. 1 of Hasbro's Second Request for the Production of Documents, Hasbro sought production of all documents supporting or referring to the estimates stated in Atari's written response to Interrogatory No. 7. In Request No. 2, Hasbro sought all documents reflecting any of the technical support or customer service information stated in Atari's written response to Interrogatory No. 11. In response to both of these requests, Atari objected on relevance grounds and, subject to its objections, committed to produce "all non-privileged documents responsive to this Request, *solely to the extent they concern the development of D&D games relevant to the parties' claims or defenses in this action*, if any, in its possession, custody, or control, that Atari is able to locate after a reasonable and diligent search of relevant files." These responses raise the same issue previously discussed—namely, that Atari is not entitled to limit its production to a group of unidentified D&D games it unilaterally determines to be relevant to this litigation, while withholding discovery concerning other D&D games or D&D game proposals it determines not to be relevant.[1]

### Atari's Responses to Hasbro's First Set of Requests for Admissions:

Hasbro's Request for Admission Nos. 6-8 asked Atari to admit that various statements made in a *Los Angeles Times* article concerning Atari were true. Atari refused to respond to these requests, and objected that it was "unclear whether the[se] Request[s] seek an admission that the quoted language was stated, or whether the quoted language is true." Hasbro disagrees that these requests are ambiguous or susceptible to the multiple interpretations claimed by Atari. In any event, and as confirmed above, these Requests in fact seek an admission that the quoted language is true. Given this clarification, Hasbro expects Atari to provide a response to these requests.

Hasbro Request for Admission Nos. 9-11 also asked Atari to admit that various current or former Atari executives made certain statements concerning Atari's financial and operational status, as quoted in the same *Los Angeles Times* article. Once again, Atari refused to respond to these requests and objected on relevancy grounds. As you know, however, Hasbro's proposed Second Amended Complaint contains claims and allegations directly related to these matters and to Hasbro's claim that it is entitled to terminate the License Agreement because of Atari's

---

[1] In response to Request No. 2, Atari objected that "the broad topic of 'projections or estimates [Atari] made for each' 'D&D Game [Atari] considered for development at any time from June 4, 2005 to the present' includes matters that are not in dispute in this action." This objection makes no sense given that it references language which does not appear in Request No. 2, and should be withdrawn.

O'MELVENY & MYERS LLP

Herbert C. Ross, Esq., January 10, 2011 - Page 5

insolvency. Accordingly, Atari has no basis to refuse to respond to these requests and should provide full and complete responses thereto.

Please confirm that Atari will amend its Discovery Responses to address the deficiencies described above. Otherwise, we will move the Court to compel appropriate responses to the foregoing. Of course, nothing herein is intended to be nor shall be construed as a waiver of any of Hasbro's legal or equitable rights or remedies concerning the foregoing, all of which are hereby expressly and impliedly reserved.

        Very truly yours,

        James Bo Pearl
        of O'MELVENY & MYERS LLP

cc: Brooks R. Magratten, Esq.
CC1:842416.1