# EXHIBIT 9



# O'MELVENY & MYERS LLP

| | 1999 Avenue of the Stars | |
|---|---|---|
| BEIJING | Los Angeles, California 90067-6035 | NEW YORK |
| BRUSSELS | | SAN FRANCISCO |
| HONG KONG | TELEPHONE (310) 553-6700 | SHANGHAI |
| LONDON | FACSIMILE (310) 246-6779 | SILICON VALLEY |
| LOS ANGELES | www.omm.com | TOKYO |
| NEWPORT BEACH | | WASHINGTON, D.C. |

OUR FILE NUMBER
393,260-8

January 14, 2011

WRITER'S DIRECT DIAL
(310) 246-8434

**VIA FIRST CLASS MAIL AND E-MAIL**

WRITER'S E-MAIL ADDRESS
jpearl@omm.com

Herbert C. Ross, Esq.
Olshan Grundman Frome Rosenzweig & Wolosky LLP
Park Avenue Tower
65 East 55th Street
New York, NY 10022

    Re: *Hasbro, Inc. v. Infogrames Entertainment S.A. a/k/a Atari, S.A.*
          (C.A. No. 09 Civ. 610 (S))

Dear Herb:

    We write to follow up regarding our January 13, 2011 meet and confer.

Search Terms and Document Production

    First, we note that the parties agreed to a January 14, 2011 exchange of proposed lists of search terms to be used for the production of documents. Pursuant to that agreement the list of search terms that Hasbro intends to apply to our databases are as follows (with syntax to be formatted as needed for searching within our tool):

| |
|---|
| Atari |
| Infogrames |
| Namco |
| Bandai |
| NBP |
| "Perfect World" and "D&D" |
| "Perfect World" and "Dungeons & Dragons" |
| "Perfect World" and Dragonlance |
| Turbine |
| Microsoft.com and "D&D" |
| Microsoft.com and "Dungeons & Dragons" |
| Neverwinter |
| Icewind Dale |
| Baldur's Gate |
| "D&D" and digital |

Herbert C. Ross, Esq., January 14, 2011 - Page 2

| |
|---|
| "Dungeons & Dragons" and digital |
| "D&D" and "video game" |
| "Dungeons & Dragons" and "video game" |
| "D&D" and electronic |
| "Dungeons & Dragons" and electronic |
| "Temple of Elemental Evil" |
| "Distribution Partners S.A.S. " |
| Eberron and Vault |
| DDO |
| Stormreach |
| Dragonlance and Vault |
| "Electronic Arts" and "D&D" |
| "Electronic Arts" and "Dungeons & Dragons" |
| "D&D" and "buy back" |
| "Dungeons & Dragons" and "buy back" |
| "D&D" and repurchase |
| "Dungeons & Dragons" and repurchase |
| "Dungeons & Dragons" and "customer service" |
| "D&D" and "customer service" |
| "Dungeons & Dragons" and "customer support" |
| "D&D" and "customer support" |
| "Jim Wilson" |

Hasbro is willing to entertain and negotiate reasonable suggestions of additional search terms, but believes in good faith that these search terms are extremely broad and cover all of Atari's RFP requests. In addition, certain requests ask for very specific documents (e.g. organizational charts) that are not well-suited to using search terms. Documents of that type will be identified and pulled separately in addition to the application of these search terms.

Second, on the January 13, 2011 call we indicated that Hasbro intends to produce additional documents on a rolling basis beginning January 21st. Our understanding is that Atari is in the process of collecting documents from custodians and databases in both the United States and overseas, but has not yet applied search terms to, or begun to review the documents. As we have requested several times, we need to know when Atari will begin the review and production of documents, especially in light of its current interrogatory responses which merely refer to unidentified, and as of yet unproduced, documents. Our first requests for production were served nearly four months ago, on September 15, 2010. The fact discovery cut-off is March 31, 2011.

Finally, Atari requested that we address the relevant dates applicable for the document production. Consistent with the first discovery propounded in this case by Atari, it is Hasbro's position that, unless otherwise specified by a discovery request, the time period covered by the discovery is June 3, 2005 through the present.

Herbert C. Ross, Esq., January 14, 2011 - Page 3

### Atari's Responses to Hasbro's First Set of Interrogatories:

While the parties had an extended discussion regarding the interrogatories, we are nevertheless at impasse on the first twelve interrogatories.

On Interrogatory No. 6, Atari noted that it inadvertently left off the last paragraph of its response, which was meant to be the same as the last paragraph of the other responses. Hasbro will therefore construe Atari's response to Interrogatory No. 6, as if it now concludes with: "Subject to the foregoing, Atari will produce business records sufficient to enable you to derive or ascertain the answer to this Interrogatory, as permitted by Rule 33(d) of the Federal Rules of Civil Procedure, solely to the extent this Interrogatory seeks information concerning the development of D&D games relevant to the parties' claims or defenses in this action."

As a procedural matter, Hasbro reiterated that Atari's promise to provide unspecified business records in response to Interrogatories Nos. 1-12 is inadequate to invoke Federal Rule of Civil Procedure 33(d). While it is appropriate in certain cases for Atari to indicate that it will supplement its responses once it has completed its document review, Atari nevertheless has an obligation to work with the client and obtain the answers to Hasbro's interrogatories. It is apparent that Atari has done nothing in this regard. In contrast, while Hasbro has not yet concluded its own document efforts, Hasbro spent many hours obtaining and providing substantive responses to Atari's interrogatories, as is required under the Federal Rules. Atari is obligated to do the same under the Federal Rules.

On the call, you agreed to go back to Atari to obtain answers on interrogatories where Atari can answer without any document discovery. For example, Atari should not need to review all of its documents in order to identify the D&D games it considered for development from June 3, 2005 to the present (Interrogatory No. 1). You promised to have a response to us on whether Atari will be providing substantive answers to the various interrogatories by Tuesday, January 18th at the latest.

Substantively, as with our prior meet and confer sessions, Atari continues to take the position that Hasbro may conduct discovery only with respect to the Namco Bandai sublicensing dispute, and that inquiry into other areas of Atari's performance under the parties' License Agreement is not appropriate or warranted. Specifically, Atari's counsel continues to maintain that "each D&D game [Atari] considered for development at any time from June 3, 2005 to the present" exceeds the scope of the first amended complaint. Atari has only agreed to respond to Hasbro's interrogatories "to the extent [they] seek information concerning the development of D&D games relevant to the parties' claims or defenses in this action," presumably as defined by Atari. This position is meritless.

All aspects of Atari's performance under the contract are properly discoverable under Rule 26, either under Count V of the Amended Complaint that specifically alleges that "Atari has directly and materially breached the License Agreement by failing to use commercially reasonable efforts to promote the D&D Digital Games and undertake the licensed activities in a diligent manner," or under Hasbro's proposed Second Amended Complaint. Atari insists on

Herbert C. Ross, Esq., January 14, 2011 - Page 4

simply ignoring this provision of the Amended Complaint as well as entirely disregarding the proposed Second Amended Complaint. The parties are at impasse on this objection.

The parties' are also at impasse with regard to Interrogatory No. 12. On our call, Atari again refused to answer Interrogatory No. 12 regarding the identity of Atari's sublicensees, distributors, or wholesalers of D&D games and related information on the ground that this discovery imposed an undue burden and addressed topics "not reasonably tailored to the issues in dispute in this action." This is consistent with the position Atari has taken in other discovery, and is the subject of existing motions to compel before the court.

There is no doubt that the identity of Atari's sublicensees, distributors and wholesalers are relevant as Atari has sought this identical information from Hasbro. *See* Atari's First Set of Interrogatories at Nos. 3-4 (asking Hasbro to state and describe in detail all damages claimed "resulting from Atari's unauthorized sublicensing of D&D products" and to "[i]dentify each person to whom or to which Atari granted an unauthorized sublicense concerning rights granted under the D&D License, including the date(s) of such sublicense, the rights sublicensed, and the product(s) as to which rights were sublicensed."). The parties are at impasse on this objection.

### Atari's Responses to Hasbro's Second Request for the Production of Documents:

On the call, Atari maintained its objection to Hasbro's Second Request for the Production of Documents on relevance grounds. Atari will produce "documents responsive to this Request, *solely to the extent they concern the development of D&D games relevant to the parties' claims or defenses in this action*, if any, in its possession, custody, or control, that Atari is able to locate after a reasonable and diligent search of relevant files." Atari's relevance limitation on this request is unreasonable and unacceptable. The parties are at impasse.

### Atari's Responses to Hasbro's First Set of Requests for Admissions:

Finally, on the call, Atari maintained its objection that Hasbro's Request for Admission Nos. 6-11 concerning various statements made by Atari executives in a *Los Angeles Times* article are irrelevant and therefore entirely refused to respond to these requests. Atari's ability to perform under the License Agreement and their fiscal solvency are relevant, and the parties are therefore at impasse on RFAs 6-11.

### Conclusion

Atari's approach to discovery continues to impose substantial costs and burdens on Hasbro and the Court. Accordingly, Hasbro reserves its rights to seek fees and costs for having to continually file motions on meritless objections.

Herbert C. Ross, Esq., January 14, 2011 - Page 5

All other rights are similarly reserved.

Very truly yours,

James Bo Pearl
of O'MELVENY & MYERS LLP