# EXHIBIT 12



## O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

1999 Avenue of the Stars
Los Angeles, California 90067-6035

TELEPHONE (310) 553-6700
FACSIMILE (310) 246-6779
www.omm.com

NEW YORK

SAN FRANCISCO

SHANGHAI

SILICON VALLEY

TOKYO

WASHINGTON, D.C.

OUR FILE NUMBER
393,260-8

WRITER'S DIRECT DIAL
(310) 246-8434

WRITER'S E-MAIL ADDRESS
jpearl@omm.com

January 28, 2011

**VIA FIRST CLASS MAIL AND E-MAIL**

Herbert C. Ross, Esq.
Olshan Grundman Frome Rosenzweig & Wolosky LLP
Park Avenue Tower
65 East 55th Street
New York, NY 10022

Re:  *Hasbro, Inc. v. Infogrames Entertainment S.A. a/k/a Atari, S.A.*
     **(C.A. No. 09 Civ. 610 (S))**

Dear Herb:

    We write regarding your January 26, 2011 letter concerning Atari's responses to Hasbro's First Set of Interrogatories. For the reasons explained below, the proposal set forth in your letter is deficient and does not sufficiently address Hasbro's concerns.

    First, your proposal to provide partial responses to Hasbro's interrogatories by February 17, 2011 is not acceptable. As we have repeatedly reminded Atari, the March 31, 2011 discovery cutoff is rapidly approaching. Given that this discovery was served in October 2010, any responses should have been provided long ago. Instead, Atari chose to lodge boilerplate objections and improperly rely on Federal Rule 33(d) as a substitute for substantive discovery responses. Atari should have begun gathering the information necessary to respond to Hasbro's interrogatories months ago, and any such information should be provided forthwith—not three weeks from now.

    Your suggestion that Atari respond to Interrogatory No. 1 by identifying "any potential, new Dungeons & Dragons game that was subject to substantial internal discussion at Atari at any time during the period January 1, 2009 to the date of filing of the Amended Complaint, May 3, 2010" is also not acceptable. As Hasbro has repeatedly explained, information regarding each and every D&D game Atari considered for development or actually developed over the course of the course of the License Agreement is directly relevant to Hasbro's claims. By limiting its response to "potential" games or games that were "subject to substantial internal discussion," Atari is unreasonably denying Hasbro discovery into matters squarely raised by the pleadings. Atari's proposed limitation also renders meaningless Hasbro's subsequent interrogatories, which seek, for example, information concerning the amount of money spent to develop or profits earned from games actually produced.

O'MELVENY & MYERS LLP

Herbert C. Ross, Esq., January 28, 2011 - Page 2

Similarly, Atari's proposal to limit its response to each of Hasbro's interrogatories to the period January 1, 2009 to May 3, 2010 is not reasonable. Presumably, this time frame was chosen because of Atari's continued insistence that nothing of relevance to this case transpired prior to 2009—when Atari sold its remaining stake in Distribution Partners to Namco Bandai. As noted in its pending motion to compel, however, Hasbro alleges contract performance failures pre-dating 2009, including Atari's failure to provide the requisite level of customer support and its failure to use commercially reasonable efforts to promote D&D and perform the licensed activities diligently. Thus, there is no basis for Atari to prevent Hasbro from conducting discovery into matters pre-dating 2009.

With respect to Interrogatory Nos. 2-5, you stated that Atari was willing to provide a response similar to that proposed for Interrogatory No. 1, but only as to D&D games "not otherwise submitted to Hasbro through the LAS system." As explained in my January 20, 2011 letter, however, the LAS system does not contain information responsive to many of the questions posed in Interrogatory Nos. 2-5. For example, the LAS system does not contain information responsive to Interrogatory No. 4, which asks Atari to explain why certain D&D games were not developed. Nor does the LAS system contain information responsive to Interrogatory No. 5, which asks Atari to identify the amount of money it spent to develop each D&D game. In short, there is no basis for Atari to exclude D&D games "otherwise submitted to Hasbro through the LAS system" from its proposed responses.

Finally, you claimed that Interrogatory Nos. 9 and 10 "do not pertain" because Atari "does not break down the amounts spent on customer service and designate persons assigned to customer service by game." But Interrogatory No. 1 asked Atari to broadly identify the universe of all D&D games developed or considered by Atari. Interrogatory Nos. 9 and 10 then asked Atari to identify the dollar amount spent for, and persons providing, technical support or customer service for the universe of D&D games as set forth in and defined by Atari's response to Interrogatory No. 1. In other words, Atari is required to identify the dollar amount spent for, and persons providing, technical support or customer service for the universe of D&D games, regardless of whether such data is kept on a "per game" basis. The fact that Atari is only now discovering and disclosing that it does not maintain this information on a "per game" basis further underscores the notion that Atari does not appear to be taking seriously its discovery obligations.

O'MELVENY & MYERS LLP

Herbert C. Ross, Esq., January 28, 2011 - Page 3

Given the foregoing, it is clear that the parties remain at impasse concerning Atari's responses to Hasbro's interrogatories. Accordingly, Hasbro intends to move the Court for appropriate relief.

Very truly yours,

James Bo Pearl
of O'MELVENY & MYERS LLP

cc: Brooks R. Magratten, Esq.