UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

HASBRO, INC.,

                Plaintiff,

    -against-

INFOGRAMES ENTERTAINMENT, S.A.
a/k/a ATARI, S.A.,

                Defendant.

C.A. No. 09 Civ. 610 (S) (LDA)

### HASBRO, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO AMEND THE STIPULATION AND PROTECTIVE ORDER [DOCKET NO. 67]

In its moving papers, Hasbro sought leave to modify the current Protective Order (Docket No. 35) to add an "Attorneys' Eyes Only" ("AEO") category imposing further restrictions on access to and use of two, narrowly-tailored categories of documents and testimony in this case.[1] Specifically, Hasbro proposed to modify the Protective Order solely to provide additional protection for documents and information concerning current and future Hasbro games and products—such as *Monopoly* and *Scrabble*—which are completely unrelated to the subject matter of this action. *See* Docket No. 67-2 (Hasbro's Proposed Amended Protective Order) at ¶ 2. Such documents and information have nothing to do with this lawsuit, which concerns Hasbro's license to Atari of the exclusive right to create, develop, manufacture, market and distribute digital versions of *Dungeons & Dragons* games. Even though such documents and information are wholly unrelated to this case, Hasbro's proposed amendment would not completely foreclose Atari from viewing AEO-designated material—the parties' respective

---

[1] A copy of Hasbro's proposed amendment to the Protective Order appears at Docket No. 67-2. A redlined version of the proposed amendment, tracking the changes from the current Protective Order, appears at Docket No. 67-3.

outside counsel and their experts, as well as one in-house counsel, would have access to such documents and information. Both Hasbro and Atari would be entitled to invoke the protections of the AEO designation where appropriate. And, as with material designated "Confidential" under the current Protective Order, Atari would be able to challenge the designation of any documents or information marked "AEO." *Id*. at ¶¶ 9, 13.

Atari does not dispute that its executives and employees have no need to access the documents Hasbro seeks to designate as AEO, or that disclosure of this material would cause Hasbro serious competitive injury.[2] Instead, Atari objects that Hasbro's motion should be denied because Hasbro should "have sought Atari's agreement to" an AEO designation back in May 2010, when the parties stipulated to the Protective Order. (Opp. at 6.) Because the AEO materials are, by-definition, unrelated to this case, however, there is no reason Hasbro should have foreseen that documents containing such information would be responsive to Atari's subsequent discovery requests. Moreover, Atari ignores that the parties specifically contemplated that subsequent revisions and modifications to the Protective Order—such as those proposed here by Hasbro—would be permitted. *See* Docket No. 35 (Protective Order) at ¶ 16 ("Nothing contained in this Order shall be deemed to preclude any party at any time" from "seeking and obtaining . . . a further protective order" or from applying "to the Court for revision or modification of the terms of this Order."). The law is clear that, under these circumstances, the Court should exercise its

---

[2] Atari misrepresents that Hasbro's proposed AEO category would "embrace[] games subject to the parties' License Agreement," and that Atari needs access to documents concerning "Hasbro's offering of any future *Dungeons & Dragons* game" to prosecute Atari's counterclaims. *See* Docket No. 78 (Atari's "Opposition" or "Opp.") at 6n.2. This is not true. Hasbro only sought to designate as AEO "future game plans and documents related to *games not covered by the license*"—in other words, documents concerning Hasbro games like *Monopoly* and *Scrabble*, or non-digital game versions of *Dungeons & Dragons*. Docket No. 68-1 at 13 (emphasis added); *see also* Docket No. 67-2 at ¶ 2. Hasbro has *never* sought AEO status for documents concerning future digital *Dungeons & Dragons* games.

broad discretion to modify the Protective Order. *See Public Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 790 (1st Cir. 1988) ("Control of pretrial discovery, including the entry or modification of a protective order, is a matter falling peculiarly within the discretion of the district court."). Atari also claims that Hasbro has not shown "particular good cause" for Hasbro's proposed amendment to the Protective Order. First, Atari misstates the legal standard applicable here. Hasbro need only demonstrate "good cause" for modifying the Protective Order. *See In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d 908, 914 (E.D. Tenn. 2009) ("A protective order is always subject to modification or termination for good cause, even where the parties have consented to its entry.") (internal citations omitted). In any event, there is no question that modification of the Protective Order is warranted. Hasbro has explained in detail that the two parties are competitors, and how the documents Hasbro seeks to designate as AEO are not adequately protected by the current Protective Order. This potential for competitive injury to Hasbro is itself sufficient good cause to modify the Protective Order. *See, e.g.*, *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 246 (D. Kan. 2010) ("Courts allowing these two-tier protective orders have generally allowed their entry to protect against business harm that would result from disclosure of sensitive documents to a competitor.").

Hasbro's request to modify the Protective Order is not novel, as courts routinely rule in favor of including AEO provisions in Rule 26(c) protective orders under similar circumstances. *See, e.g.*, *Nuratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007) ("Courts commonly issue protective orders limiting access to sensitive information to counsel and their experts."); *Quotron Sys., Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 40 (S.D.N.Y. 1992) ("Protective orders that limit access to certain documents to counsel and experts only are commonly entered in litigation involving trade secrets and other confidential research,

development, or commercial information."). Atari fails to address or distinguish any of the cases cited by Hasbro in which the courts overrule objections and order inclusion of AEO provisions in protective orders. Nor does Atari cite to a single case where a court denies a request for AEO protection. Given that Atari will not be prejudiced by the addition of an AEO category to the Protective Order, there is no compelling rationale for denial of Hasbro's motion.

## I. ARGUMENT

### A. The Parties Agreed They Could Seek Modifications to the Protective Order.

Atari first contends that Hasbro's motion should be denied because Hasbro "knowingly and willingly signed the Stipulated Protective Order prior to submitting it to the Court for its imprimatur," and "[n]othing has changed in the intervening ten months . . .that would necessitate modification of" the Protective Order. (Opp. at 5.) Of course, Hasbro does not claim it was "duped" into signing the Protective Order, or that it did not understand the document's contents when it stipulated to the Protective Order. *Id*. When the Protective Order was filed with the Court on May 24, 2010, however, no formal written discovery had been served and no documents had been produced.[3] As a result, the parties did not yet have a clear or complete picture of what types of specific documents would come out during discovery.

What has "changed" since May 2010 is that discovery has commenced, and Hasbro has begun gathering and producing to Atari massive quantities of documents in response to Atari's written discovery requests. As previously explained, during this process Hasbro has discovered various

---

[3] Atari claims that the "parties have produced documents and operated under the Stipulated Protective Order for the last ten months." (Opp. at 5.) This is false. To date, Atari has not produced a single document to Hasbro in response to formal discovery in this case. *See* Docket No. 68 (Pearl Declaration) at ¶ 2. Atari did provide Hasbro with approximately 1,500 pages of documents in connection with the parties' June 1, 2010 mediation. Although those documents were produced informally under the auspices of the Protective Order, they were never expressly marked as "Confidential."

"mixed" documents which address a variety of different topics—and contain information relevant to this case, as well as confidential and/or proprietary information concerning games or products which are completely unrelated to this action. *See* Docket No. 67-1 at 4. For example, Hasbro has located power-point presentations addressing the company's plans for an entire year. These presentations include slides regarding Hasbro's annual plans with Atari and *Dungeons & Dragons*, but also discuss Hasbro's plans for other, unrelated games. Rather than produce heavily redacted versions of these "mixed" documents—to which Atari would have inevitably objected—Hasbro suggested that the parties modify the Protective Order and thereby avoid the need to partially redact any such "mixed" documents, but Atari refused this reasonable proposal. *See* Docket No. 68 at ¶¶ 3-6. Hasbro could not have reasonably predicted in May 2010 that such documents would be the subject of later discovery by Atari.

Nor has Hasbro somehow waived the right to seek modification of the Protective Order because it did not propose an AEO category in May 2010, as Atari suggests. (Opp. at 5-6.) This Court has broad discretion to modify or vacate the Protective Order under circumstances like these. *See Public Citizen*, 858 F.2d at 790 (entry or modification of a protective order "is a matter falling peculiarly within the discretion of the district court"). And the parties expressly agreed to preserve the right to modify the Protective Order:

> Nothing contained in this Order shall be deemed to preclude any party at any time [from] seeking and obtaining . . . a further protective order [or from applying] to the Court for revision or modification of the terms of this Order.

*See* Docket No. 35 at ¶ 16; *see also id*. at ¶ 11(e) (parties' agreement to Protective Order shall not "prejudice in any way the rights of a designating party or person to apply to the Court for a further protective order").

*Bryant v. Mattel, Inc.*, Nos. C 04-09049 SGL (RNBx), CV 04-09059, CV 05-2727, 2007 WL 5430888 (C.D. Cal. May 18, 2007), is on point. In that case, the court granted plaintiff's motion

5

to modify a stipulated protective order to provide further protection for a narrow category of materials—namely, "drawings and designs for unreleased products." *Id*. at *5. Like here, plaintiffs contended the existing protective order did not provide sufficient protection for the unreleased product designs because the parties were "direct competitors" and given the commercial value of the designs. *Id*. The court applied a "good cause" standard, and granted plaintiffs' motion. Significantly, the court specifically noted that the existing protective order contained a provision "that a party may, at any time, apply to the court for a modification of its terms." *Id*. at *3n.2, *5. The court also rejected the notion that plaintiffs had waited too long to seek modification of the protective order: "[t]he current protective order was negotiated by the parties at the inception of the case, well before all of the claims and defenses were established. *At the time, the parties did not fully understand or foresee what documents and trade secrets would be relevant and discoverable under Rule 26*." *Id.* at *5 (emphasis added). Based on the foregoing, this Court should overrule Atari's objection that Hasbro's request to modify the Protective Order comes "too late."

### B. Hasbro Need Only Demonstrate That "Good Cause" Exists For Modification of the Protective Order.

Next, Atari claims that Hasbro must demonstrate "particular good cause" to justify modification to the Protective Order. (Opp. at 7-8.) Federal Rule of Civil Procedure 26(c) specifically provides that protective orders may be issued upon a showing of good cause, however, not "particular good cause." *See* Fed. R. Civ. P. 26(c)(1) ("The court may, for *good cause*, issue an order to protect a party or person" by, for example, "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.") (emphasis added). Many courts, including in the First Circuit, have refused to adopt a standard other than "good cause" when evaluating requests to modify a

6

protective order. *See, e.g.*, *Public Citizen*, 858 F.2d at 790-91 (holding that "where the party seeking modification has pointed to some relevant change in the circumstances under which the protective order was entered, we think that a standard less restrictive than 'extraordinary circumstances' is appropriate"); *In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d at 914 ("A protective order is always subject to modification or termination for good cause, even where the parties have consented to its entry.") (internal citations omitted); *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009) ("[D]istrict courts have inherent authority to grant a motion to modify a protective order where 'good cause' is shown."); *Bryant*, 2007 WL 5430888, at *3 (applying good cause standard). Atari fails to cite to a single District of Rhode Island or First Circuit case applying the heightened standard of "particular good cause" to evaluate a request to modify a protective order.

Moreover, the authorities upon which Atari relies are easily distinguishable. For example, Atari contends *Jochims v. Isuzu Motors, Ltd.,* 145 F.R.D. 499, 501 (S.D. Iowa 1992), supports that "particular good cause" is required where "a party to a *stipulated* protective order seeks to modify that protective order." (Opp. at 7) (emphasis in original.) Unlike here, however, in *Jochims* the parties never expressly agreed that subsequent modifications to the Protective Order could be made. *See Jochims*, 145 F.R.D. at 502 n.8 (distinguishing from case granting motion to modify protective order, which contained a "specific provision that it was 'without prejudice to the right of any party to seek modification of it from the Court'") (*quoting Kraszewski v. State Farm Gen. Ins. Co.*, 139 F.R.D. 156, 159 (N.D. Cal. 1991)). Other courts have also found the fact that the parties stipulated to the Protective Order to be a meaningless distinction. *See In re Se. Milk Antitrust Litig.*, 666 F. Supp. 2d at 914 ("A protective order is always subject to modification or termination for good cause, *even where the parties have consented to its entry*.")

7

(emphasis added); *Smith & Nephew, Inc. v. New Hampshire Ins. Co.*, No. 2:04-cv-03027-STA-cgc, 2010 WL 5387480, at *4 n.2 (W.D. Tenn. Dec. 22, 2010) ("[A]ny party to a Protective Order, *even a stipulated protective order*, may propose modifications to the Protective Order upon motion to the Court," and the Court "is authorized to determine whether good cause exists under Rule 26 to modify the Protective Order.") (emphasis added).

Additionally, in *Jochims* the party seeking to modify the protective order asked the court to *vacate* the protections afforded by the order. 145 F.R.D. at 500; *see also Martindell v. Int'l Telephone & Telegraph Corp.*, 594 F.2d 291 (2d Cir. 1979) (party sought to reduce the protections afforded by the protective order); *Kyles v. J.K. Guardian Sec. Servs.*, No. 97 C 8311, 2006 WL 2349238 (N.D. Ill. Aug. 15, 2006) (same). That is the exact opposite of what Hasbro seeks here. Hasbro does not wish to diminish or eliminate the protections provided by the Protective Order. Rather, Hasbro's proposed amendment leaves the original Protective Order completely intact, save for adding an additional level of protection for materials concerning current or future games and products that are unrelated to the digital gaming rights licensed to Atari pursuant to the parties' License Agreement. *See*, *e.g.*, Docket No. 67-2 (Hasbro's Proposed Amended Protective Order) at ¶ 2.[4]

This distinction is critical. As *Jochims* explains, the "rationale for this [heightened] standard is that a party which in good faith negotiates a stipulated protective order and then proceeds to produce documents pursuant to that protective order is entitled to the benefit of its bargain; namely, to rely upon the terms of the stipulated protective order." *Jochims*, 145 F.R.D. at 501-

---

[4] Atari mischaracterizes Hasbro's motion as seeking to "vacate" the "stipulation under which the parties have been operating." (Opp. at 5.) Although Hasbro's motion is styled as a proposed "amendment" to the Protective Order, all Hasbro seeks here is a further protective order identical to the one currently in effect—save for the additional provisions governing AEO materials. *See* Docket No. 67-3 (Redlined version of Hasbro's proposed Amended Protective Order).

8

02. *See also Martindell,* 594 F.2d at 296 ("In the present case the deponents testified *in reliance upon* the Rule 26(c) protective order, absent which they may have refused to testify.") (emphasis added); *Kyles*, 2006 WL 2349238, at *8 (rejecting defendant's request to vacate a protective order eight years after issued, and five years after the litigation concluded, because defendant had not shown good cause and plaintiff had relied on the order). Granting Hasbro's motion will not deprive Atari of the "benefit of its bargain" because the current terms of the Protective Order will remain intact—along with the AEO-related additions—in the amended Protective Order. In other words, Hasbro is not abrogating the existing protections of the Protective Order, but rather is seeking to enlarge them.

Nor does Hasbro's proposed amendment pose a reliance problem. Atari has not "relied upon" the terms of the Protective Order because it has yet to produce a single document in formal discovery. *See supra* at n.3; Docket No. 68 (Pearl Declaration) at ¶ 2. Conversely, even if Atari had produced documents under the current Protective Order, this would not mandate application of a heightened "good cause" standard. Atari's reliance on the Protective Order would not be disturbed by Hasbro's request for an extra layer of protection for AEO-designated materials. Put simply, Atari cannot point to a single case where a heightened standard was used to evaluate a request to include additional protections to a protective order, much less a case applying a heightened good cause standard where the opposing party had not even relied on the existing protective order.

Atari's other authorities are equally unavailing. For instance:

- Atari cites *Fairchild Semiconductor Corp. v. Third Dimension Semiconductor, Inc.*, Civil No. 08-158-P-H, 2009 WL 1210638 (D. Me. Apr. 30, 2009), as endorsing that "particular good cause" is required to modify a stipulated

9

protective order. (Opp. at 7.) But the court in *Fairchild* in fact applied a "good cause" standard to the party's motion to modify a stipulated protective order, and explicitly refused to consider whether to adopt a "particular good cause" standard. 2009 WL 1210638, at *1n.5 ("[T]he party seeking to modify the protective order, bears the burden of showing good cause for the modification.").

- Atari relies on *Martindell v. Int'l Telephone & Telegraph Corp.*, 594 F.2d at 296, for the proposition that a protective order can only be modified if "extraordinary circumstances" or a "compelling need" exists. (Opp. at 8.) But the First Circuit rejected the *Martindell* "extraordinary circumstance or compelling need" standard, and limited that case to its precise facts. *See Public Citizen*, 858 F.2d at 790-91 (emphasizing that the government was the party seeking access to the protected materials and holding that "[o]utside the area of government intervention, courts have applied *much more lenient standards* for modification," including "good cause") (emphasis added).

- Atari claims that *Kyles v. J.K. Guardian Sec. Servs.*, 2006 WL 2349238, at *4, held that a "higher burden" is required to justify modification of a stipulated protective order. (Opp. at 8.) But *Kyles* makes clear elsewhere that its reference to a "higher burden" is the same thing as "good cause." *Id.* ("Just as good cause is required for issuance of a protective order under Rule 26(c), so too must good cause be shown before it can be vacated."); *id.* at *8 ("This is not to say that agreed protective orders can never be vacated or modified. They can, but only for good cause.").

### C. Hasbro Has Provided Sufficient Evidence Demonstrating That An "Attorneys' Eyes Only" Designation Is Necessary to Prevent Competitive Harm to Hasbro.

Regardless of the legal standard applied, Hasbro's request to modify the Protective Order should be granted because the undisputed record confirms that more than sufficient good cause exists for the protection Hasbro seeks here. Importantly, in challenging Hasbro's motion Atari does not deny that courts routinely grant the type of AEO protection sought here, and fails to address the many analogous cases—cited in Hasbro's moving papers—granting such protection. *See, e.g.*, *Layne Christensen Co.*, 271 F.R.D. at 246 (ordering inclusion of an AEO provision in a protective order as a practical and cost-effective way for a party to protect its most sensitive information from a competitor, while still complying with its discovery obligations); *Nuratech*, 242 F.R.D. at 555-56 (same). Nor does Atari deny that Atari and Hasbro are competitors, or that allowing circulation of confidential commercial information about their respective products could be harmful.

Instead, Atari attacks the sufficiency of Hasbro's specific, factual demonstration of potential harm, and complains that Hasbro has not provided a document-by-document rundown of the information it wishes to designate AEO. Specifically, Atari argues that Hasbro's motion should be denied because "Hasbro nowhere (i) identifies to what discovery requests of Atari such documents are responsive, and (ii) does not furnish any of them to the Court and Atari counsel for *in camera* inspection." (Opp. at 11.)[5] The parties were not required to undergo such a pointless exercise when crafting the "Confidential" provisions of the current Protective Order,

---

[5] Atari also claims that "none of Atari's discovery requests seek the production of any such 'unrelated' documents," but then acknowledges that "it is theoretically possible that documents responsive to some of Atari's discovery requests could, in addition to containing information relevant to rights granted under the License Agreement, also furnish information concerning Hasbro products unrelated to those rights." (Opp. at 10.) This is precisely the dilemma Hasbro faces, and explains why Hasbro sought to modify the Protective Order in the first place.

11

however. Nor is this the type of specific factual showing required by the case law or the Federal Rules. *See, e.g.*, *Associationvoice, Inc. v. Athomenet, Inc.*, C.A. No. 10-cv-00109-CMA-MEH, 2010 WL 1258062, at *2 (D. Colo. Mar. 29, 2010) ("First, a party must make a threshold showing of good cause to believe that discovery will involve confidential or protected information, which may be done on a generalized as opposed to a document-by-document basis."). Indeed, Hasbro's moving papers provide precisely the type of factual information regularly relied on by courts in granting motions to modify protective orders to include AEO provisions.

First, Hasbro explained that "Hasbro and Atari both produce and license products in the same market category, and therefore are competitors." (Docket No. 67-1, at 5.) Again, Atari does not deny this fact. Next, Hasbro explained that, since entering into the Protective Order in May 2010—*before* the parties exchanged formal document requests—Hasbro has discovered that some documents contain both responsive material and non-responsive, sensitive information concerning Hasbro products unrelated to the License Agreement or the present litigation. *Id.* at 4. Once this issue arose, Hasbro broached with Atari the topic of modifying the Protective Order to add an additional AEO level of protection. *Id.*; see also Docket No. 68 (Pearl Declaration) at ¶¶ 3-4. In addition, Hasbro specifically identified the types of information it believes required AEO protection—namely, (1) materials that contain "[t]rade secrets, research and development, or other commercially-sensitive information concerning games or products … which are unrelated to the digital gaming rights licensed to Atari" pursuant to the parties' License Agreement; and (2) materials that contain "[t]rade secrets, research and development, or other commercially sensitive information concerning future or unreleased games or products … which

are unrelated to the digital gaming rights licensed to Atari pursuant to the License Agreement." (Docket No. 67-2, at ¶ 2.) This is more than sufficient, and the law requires no more.[6] Atari also advances the straw-man argument that Hasbro has failed to explain how the "the protections afforded by the Stipulated Protective Order are inadequate." (Opp. at 8.) But Hasbro has already explained at length why the existing Protective Order fails to adequately protect the materials it wishes to designate as AEO. *See* Docket No. 67-1 (Hasbro's Memorandum), at 4-6. To recap, as written the Protective Order currently allows even those materials designated "Confidential" to end up in the hands of any Atari officer, employee or agent, if Atari deems that access "reasonably necessary." (Docket No. 35, at ¶ 7.) Atari offers no compelling reason why its employees and executives should have access to Hasbro documents which discuss, for example, Hasbro's future plans for non-*Dungeons & Dragons* games. The mere fact that Atari and Hasbro are competitors itself constitutes sufficient good cause to protect the documents and information Hasbro seeks to designate as AEO, as disclosure of such material to a competitor presents real potential for abuse or commercial loss. *See, e.g.*, *Layne Christensen*, 271 F.R.D. at 246 ("Courts allowing these two-tier protective orders have generally allowed their entry to protect against business harm that would result from disclosure of sensitive documents to a competitor."); *Netquote, Inc. v. Byrd*, C.A. No. 07-cv-00630-DME-MEH, 2007 WL 2438947, at *3 (D. Colo. Aug. 23, 2007) (ordering inclusion of an AEO provision and noting that defendants'

---

[6] Atari similarly complains that Hasbro has not specifically identified the non-party subpoena recipients who have expressed confidentiality concerns or the particular subpoena requests triggering those concerns. *See* Opp. at 11. Again, Hasbro is not required to provide such minutiae to obtain the relief it seeks here. To allay Atari's concerns, however, the Declaration of Brendan Cooney (filed concurrently herewith) provides additional details on this subject.

status as a competitor cut strongly in favor of its inclusion). This is true even when no reason exist to suspect that a party's adversary will improperly use or disclose such information.[7] The case for adding AEO protection is much stronger here. Atari's history of inappropriately disclosing Hasbro's confidential information—and the revolving door of Atari executives— make it even more likely that Hasbro's AEO materials will fall into the wrong hands if Atari executives and employees are allowed access to such materials. *See* Docket No. 67-1, at 2-3, 5. Atari objects that Hasbro cannot rely on Atari's prior transgressions "as grounds to deprive [Atari] of the opportunity to review evidence exchanged in discovery," because they have not yet been proven at trial.[8] (Opp. at 9.) If the Court were to wait until Hasbro has proven each of these allegations at trial before granting the requested protection, it would be too late, and Hasbro will have suffered irreparable harm. Nor will Atari's litigation team be denied the opportunity to review AEO evidence, as all of Atari's outside counsel and experts, and one in-house counsel, would still have full access to materials designated AEO. *See* Docket No. 67-2, at ¶ 9.

Based on the facts and circumstances described above, Hasbro has established that sufficient grounds exist for modifying the Protective Order in the manner proposed by Hasbro.

---

[7] *See Tinn v. EMM Labs, Inc.*, 556 F. Supp. 2d 1191, 1196 (D. Or. Apr. 30, 2008) (applying an AEO provision to documents that "*might* cause significant competitive harm" if disclosed to competitors, "regardless of the likelihood of an improper disclosure") (emphasis added); *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 21-22 (D. Del. 1988) (granting AEO protection because the potential for abuse and commercial loss was real, even assuming president of competitor was "a man of great moral fiber").

[8] Atari also calls this argument "merely a concoction," because Hasbro first alleged Atari's breaches of confidentiality in the original complaint filed in December 2009. (Opp. at 9.) The fact that Hasbro has known of these transgressions all along is irrelevant, however. As previously explained, Hasbro requested AEO provisions because it discovered—while recently reviewing documents for production—that certain responsive documents also contain irrelevant and sensitive information concerning Hasbro's other games and products.

14

### D. Atari Will Not Be Prejudiced By Hasbro's Proposed Amendment to the Protective Order.

Finally, Atari claims that it will be prejudiced by Hasbro's proposed amendment to the Protective Order because "Atari should not bear the initial burden and attendant costs of demonstrating why documents designated by Hasbro as 'Attorneys' Eyes Only' do *not* warrant such heightened protection." (Opp. at 9.) This argument is specious, however. The mechanism to challenge designations is not only favorable to the challenger—because the designating party bears the burden of justifying the designation—but it is *the identical mechanism agreed to by the parties* for challenging "Confidential" designations:

> In the event that a non-designating party seeks to challenge the appropriateness of protected treatment of any Materials under this Amended Protective Order, such party shall consult in good faith with the designating party or person in an effort to resolve the matter on an informal basis. In the event no agreement is reached with respect to any Materials designated as Confidential or Confidential—Attorneys' Eyes Only, the non-designating party may seek an order removing the … designation from the disputed Material. … The designating party or person shall bear the burden on any such application to the Court of demonstrating that the Materials are properly designated … and entitled to such protection.

Docket No. 67-2, at ¶ 13 (underscoring added). In other words, Hasbro has taken the same procedure previously agreed to by the parties for challenging material designated as "Confidential" under the current Protective Order, and expanded it to also apply to material designated "AEO." *Compare id.*, *with* Docket No. 35 (Protective Order), at ¶ 11. Nowhere does Atari explain why their challenges to material designated "Confidential" should be treated differently than challenges to material designated "AEO," or what that difference should be. Put simply, Atari "has not shown how this case is unique." *Nuratech*, 242 F.R.D. at 556 (rejecting prejudice objections to AEO protection because courts regularly grant such protection and objecting party failed to show why its case was any different); *see also Netquote*, 2007 WL 2438947, at *2 (rejecting objection that proposed protective order improperly shifted the burden

to the party opposing the confidential designation, and holding that this was a "common practice" that "places no undue burden on the opposing party").

Moreover, Hasbro has been vigilant in narrowly-defining AEO eligibility and including safeguards to protect both parties from abuse of the AEO designation. *See* Docket No. 67-1, at 6-8. Any foreseeable prejudice to Atari is at best minimal, given (1) the narrowly defined eligibility for AEO protection (Docket No. 67-2, at ¶ 2); (2) the fact that access to AEO materials is still afforded to those primarily active in the litigation; namely, outside counsel and experts, and one in-house counsel (*id.* at ¶ 9); (3) the requirement that AEO designations be made in good faith (*id.* at ¶ 2); (4) Atari's ability to challenge any AEO designation (*id.* at 13); and (5) Atari's ability to make AEO designations retroactively, assuming it *had* produced documents to Hasbro in discovery. (*Id.* at 5). Atari does not deny that these safeguards exist, or even address the cases cited by Hasbro ordering inclusion of AEO provisions with similar safeguards. *See* Docket No. 67-1, at 6-8; *see, e.g.*, *Associationvoice*, 2010 WL 1258062, at *3 (finding balance tipped "in favor of avoiding unfair business advantage" by granting AEO protection when those "primarily active in the litigation" could still access materials, designations had to be made in "good faith," and non-disclosing party could challenge designations); *Bryant*, 2007 WL 5430888, at *6 (ordering modification of protective order where the materials sought to be protected were "relevant to the litigation" but "aren't central to the claims and defenses and therefore . . . the need for protection outweighs any prejudice"). There is no question that all these factors tip the balance heavily in favor of granting Hasbro the relief it seeks here.

## II. CONCLUSION

For all the foregoing reasons, Hasbro respectfully requests that the Court grant its motion and enter an order amending the Protective Order in the form appearing at Docket No. 67-2.

Dated: February 10, 2011

HASBRO, INC.
By its Attorneys,

*/s/ Todd D. White* _____
Todd D. White

| | |
|---|---|
| Robert M. Schwartz (*pro hac vice*) | John A. Tarantino, Esq. (#2586) |
| rschwartz@omm.com | jtarantino@apslaw.com |
| Matthew T. Kline (*pro hac vice*) | Todd D. White, Esq. (#5943) |
| mkline@omm.com | twhite@apslaw.com |
| James Bo Pearl (*pro hac vice*) | ADLER POLLOCK & SHEEHAN P.C. |
| jpearl@omm.com | One Citizens Plaza, 8th Floor |
| Drew E. Breuder (*pro hac vice*) | Providence, RI 02903-1345 |
| dbreuder@omm.com | Tel: (401) 274-7200 |
| O'MELVENY & MYERS LLP | Fax: (401) 351-4607 |
| 1999 Avenue of the Stars, Seventh Floor | |
| Los Angeles, California 90067-6035 | |
| Tel: (310) 553-6700 | |
| Fax: (310) 246-6779 | |

## **CERTIFICATE OF SERVICE**

  I hereby certify that on the 10th day of February 2011 an electronic copy of the within document was served upon the following counsel of record via the PACER/ECF system:

  Brooks R. Magratten, Esq.
  bmagratten@pierceatwood.com
  Michael J. Daly, Esq.
  mdaly@pierceatwood.com
  Pierce Atwood LLP
  10 Weybosset Street, Suite 400
  Providence, RI 02903

  Kyle C. Bisceglie, Esq.
  Kbisceglie@olshanlaw.com
  Herbert C. Ross, Esq.
  hross@olshanlaw.com
  Peter M. Sartorius
  psartorius@olshanlaw.com
  Olshan Grundman Frome Rosenzweig & Wolosky LLP
  Park Avenue Tower
  65 East 55th Street
  New York, NY 10022

            */s/ Todd D. White*
            Todd D. White

*561904_1.doc*