UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| HASBRO, INC.,<br><br>                            Plaintiff,<br><br>            -against-<br><br>INFOGRAMES ENTERTAINMENT, S.A.,<br>a/k/a ATARI, S.A.,<br><br>                            Defendant. | C.A. No. 09 Civ. 610 (S) |

**DEFENDANT ATARI, SA'S OBJECTION TO "PLAINTIFF HASBRO, INC.'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INTERROGATORY
RESPONSES AND TO DETERMINE THE SUFFICIENCY OF ATARI'S ANSWERS
AND OBJECTIONS TO REQUESTS FOR ADMISSION" [DOCKET 76]**

Defendant Atari, SA (f/k/a Infogrames Entertainment, SA) ("Atari") objects to the

motion of plaintiff Hasbro, Inc. ("Hasbro") to compel production of documents and answers to

interrogatories, and determine the sufficiency of Atari's objections to certain of Hasbro's

Requests for Admission (Dkt. 76) in the above-captioned action on the grounds that the

discovery requests in issue are overbroad, seek to unduly burden Atari, and seek matter that is

not relevant to the claims or defenses in the action, and certain of the requests for admission in

issue request admission of ambiguous matter.  Atari also files herewith a memorandum in

support of its objection to Hasbro's motion.

Atari respectfully requests hearing on its objection and estimates that such hearing will

last 30 minutes.

1208708-3

Respectfully submitted,

Dated: Providence, Rhode Island
February 17, 2011

PIERCE ATWOOD LLP

By: /s/ Brooks R. Magratten
Brooks R. Magratten
Michael J. Daly
10 Weybosset Street, Suite 400
Providence, Rhode Island 02903
(401) 588-5113

-and-

Kyle C. Bisceglie
Herbert C. Ross
Peter M. Sartorius
OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

*Attorneys for Defendant Atari, S.A.*

## CERTIFICATE OF SERVICE

This document was electronically filed with the Clerk of the Court on February 17, 2011, and is available for viewing and downloading from the Court's ECF system. Service on all counsel of record has been effectuated by electronic means.

/s/ Brooks R. Magratten
Brooks R. Magratten

1208708-3

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF RHODE ISLAND

HASBRO, INC.,

                                        Plaintiff,          C.A. 09-610 (S)

                   -against-


INFOGRAMES ENTERTAINMENT, S.A. a/k/a
ATARI, S.A.,

                                        Defendant.

**MEMORANDUM IN SUPPORT OF DEFENDANT ATARI, SA'S
OBJECTION TO "PLAINTIFF HASBRO, INC.'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES AND
TO DETERMINE THE SUFFICIENCY OF ATARI'S ANSWERS AND
OBJECTIONS TO REQUESTS FOR ADMISSION" [DOCKET 76]**

        This memorandum of law is submitted on behalf of defendant and counterclaim-plaintiff

Atari, SA ("Atari") in opposition to the motion of plaintiff and counterclaim-defendant Hasbro,

Inc. ("Hasbro") (Dkt. 76) for an order compelling Atari (i) produce documents in response to

"Plaintiff and Counter-claim Defendant Hasbro, Inc.'s Second Request for Production of

Documents to Atari, S.A."  ("Second Request"), and (ii) answer Interrogatory Nos. 1 through 12

in Hasbro's first set of interrogatories, and determining the sufficiency of Atari's objections to

Hasbro's Requests for Admission Nos. 6 through 11.

                                   Preliminary Statement

        This motion represents another chapter in Hasbro's efforts to suffocate Atari with

unreasonable and improper discovery demands.

        Hasbro's motion is further meritless first because Hasbro rejected reasonable

compromises as proposed by Atari, to wit, revised versions of eleven out of the twelve

interrogatories in issue.  Atari proposed these compromises to Hasbro by letter dated January 26, 2011.  (Dkt. 77-11, pp. 2-3 of 3)

Secondly, the interrogatories, requests for documents, and requests for admission in issue ask for matter that is not relevant to the claims or defenses in this action as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure.  Hasbro attempts to justify its overreaching demands by citing a legal conclusion alleged in the Amended Complaint, *i.e.*, that Atari breached an obligation under the license granted by Hasbro to Atari "to undertake the licensed activities in a diligent manner."  (Hasbro Mem. at 10)  Hasbro asserts that this legal conclusion grants it the right to have Atari produce information and documents about every game that Atari has merely "considered" since the license was granted it in June 2005.  This is nonsensical.  The extant complaint in this action, the Amended Complaint, does not permit this unbounded and massive discovery.  That legal conclusion is based on more specific, factual allegations of what constitutes the alleged breach stated in the Amended Complaint, and Atari has not objected to producing discovery concerning those specific allegations.  Most importantly, there is no factual allegation in Hasbro's extant complaint, the Amended Complaint, that Atari failed to develop any games under the license agreement.

Third, Hasbro also argues that new allegations and claims in its proposed Second Amended Complaint justify the requests in dispute.  Hasbro has not received permission to file the Second Amended Complaint.  Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery of matter relevant to claims or defenses in the action, but not ones that might or might not be in the action in the future.  Furthermore, even were Hasbro granted leave to file the Second Amended Complaint, its allegations do not justify the discovery requests in issue.

2

Procedural Background

Hasbro's Extant Complaint

Hasbro and Atari entered into a Dungeons & Dragons License Agreement dated as of

June 3, 2005 (the "License Agreement") pursuant to which Hasbro licensed to Atari rights to

exploit the Dungeons & Dragons ("D&D") fantasy world in the sale of video games.  The lack of

relevance of the matter Hasbro seeks in the disputed discovery requests is demonstrated by first

reviewing the claims in Hasbro's most recent complaint, its Amended Complaint filed May 3,

2010 (Dkt. No. 31).  It contains the following claims which Hasbro alleges arise out of or pertain

to the License Agreement:

- Count I alleges that Atari breached the License Agreement by filing an intent-to-use application for registration of the mark ICEWIND DALE in the United States, a mark as to which Hasbro claims ownership.  (Dkt. 31, Am. C. ¶¶ 164-170)[1]

- Count II alleges that Atari breached the License Agreement by supposedly (a) failing to protect and maintain Hasbro's Confidential Information by disseminating it to Namco Bandai, a "major competitor" of Hasbro, after July 1, 2009 and (b) failing to report earnings on certain sublicensees who had placed a D&D game on a magazine cover in the Summer of 2009.  (*Id.* ¶¶ 171-174, *see also* ¶¶ 38-66)  The part of this claim concerning Namco Bandai allegedly arises out of the sale by Atari of its majority equity interest in an entity, Distribution Partners S.A.S. ("Distribution Partners"), to an affiliate of Namco Bandai, Namco Bandai Games Europe, on July 1, 2009.  By Distribution Agreement dated as of February 18, 2009 Atari S.A.S. granted rights to Distribution Partners and other, then subsidiaries of Atari, to distribute Atari video game products in Europe and certain other territories outside of North America.

- Count III  alleges that Atari breached the License Agreement by (1) failing to (a) respond to customers' questions, (b) maintain telephone or email customer support locations, and (c) meet industry standard for customer support, all in late 2009, and (2) by sublicensing rights and obligations for providing customer support to Namco Bandai in July 2009 without Hasbro's approval.  (Dkt. 31, Am. C. ¶¶ 176-180, *see also* ¶¶ 67-120)

- Count IV alleges that Atari breached the License Agreement by misusing D&D Intellectual Property by authorizing third parties, namely, Namco Bandai

---

[1] Citations herein to the Amended Complaint appear as "Am. C." followed by the paragraph number(s) therein.

Distribution Partners, to engage in supposedly licensed activities, *i.e.*, customer service for D&D games.  (*Id.* ¶¶ 181-83, *see also* ¶¶ 67-120)

- Count V alleges that Atari breached the License Agreement by not using commercially reasonable efforts to promote D&D digital games and undertake licensed activities in a diligent manner.  Count V specifically cites as the bases for this claim that Atari ceased to support D&D digital games through websites, permitted customer support contacts to be disconnected or non-responsive, and allowed Namco Bandai to provide customer service support and operate localized marketing websites featuring D&D Digital Games, all starting in Fall 2009.  (*Id.* ¶¶ 184-187, *see also* ¶¶ 67-120)

- Count VI alleges that Atari breached the implied covenant of good faith and fair dealing by the purported failures and misdeeds set forth in Counts I through V.  (*Id.* ¶¶ 188-98)

- Count VII alleges that Atari defrauded Hasbro by the following:  (a) an October 29, 2009 letter from James Wilson of Atari, Inc. supposedly falsely stated to Hasbro that Namco Bandai Distribution Partners was not granted any sublicense to rights in D&D games under the Distribution Agreement and Atari terminated the wholesaling relationship with Namco Bandai Distribution Partners at least by September 11, 2009; (b) on December 4, 2009, Kristen Keller of Atari, Inc. falsely stated orally that Namco Bandai Distribution Partners had no relationship with Atari with respect to D&D property; (c) James Wilson's December 11, 2009 letter falsely stated that Atari was managing customer service through local market websites; and that Hasbro justifiably relied on the foregoing allegedly false representations.  (Dkt. 31, Am. C. ¶¶ 199-209)

- Count VIII alleges that Atari's made false representations in connection with Hasbro's requests in Fall 2009 for information and assurances concerning Atari's provision of customer service support in Europe "for local marketing websites."  (*Id.* ¶¶ 210-215)

- Count IX asks for a declaration that Hasbro is entitled to terminate the License Agreement based on the purported failures and misdeeds alleged in the prior counts.  (*Id.* ¶¶ 216-218)

- Based on those purported failures and misdeeds, Count X requests an injunction enjoining Atari from using non-approved sublicensees, distributors or wholesalers to promote and service or act as if Atari is the publisher of D&D products.  (*Id.* ¶¶ 219-221)

- Count XI requests an accounting from Atari of (a) all sales of each D&D Game product from execution of the D&D License Agreement to the present in each territory where Namco Bandai or any other non-approved entity acted as sublicensee, and (b) funds received by Atari from Namco Bandai.  Count XI

4

alleges no specific facts to support either of the elements of the requested accounting. (*Id.* ¶¶ 222-223)

As set forth above, all of the factual allegations of misdeeds or contractual failures in the Amended Complaint concern matters that Hasbro alleges occurred *after* July 1, 2009.  Yet Hasbro seeks information for the time pried June 3, 2005 to the present in the discovery demands in issue.

On November 21, 2010, Hasbro forwarded a proposed Second Amended Complaint to Atari, seeking consent to its filing.  By motion filed December 7, 2010 (Dkt. 50), Hasbro moved for leave to file a Second Amended Complaint.  That motion is *sub judice*.  In its motion, Hasbro stated that it seeks to file a Second Amended Complaint to broaden its pleading to support the requests in issue on this motion and other discovery demands served by Hasbro.  (Dkt. 50, at 1, 8, and 9 of 12)

Hasbro, Inc.'s First Request for
Production of Documents to Atari, S.A. ("First Request")

Hasbro only briefly mentions its First Request in its motion papers.  It important to understand how the discovery requests in issue on this motion continue Hasbro's strategy to bury Atari in overly burdensome discovery by quickly describing Hasbro's First Request which was served on September 15, 2010.  Again, Hasbro's First Request contains a massive one hundred thirty-two (132) numbered requests for documents, many of them in extremely broad terms and covering a long, almost entirely irrelevant period of time (*i.e.*, documents created since June 3, 2005 (Dkt. 58-1, p. 10 of 29, Instruction No. 2)).  Atari agreed to produce documents in response to 87 of the numbered requests, some subject to a limitation as to time period (Dkt. 59, pp. 6-42 of 43).  By letter dated November 30, 2010 from its counsel, Atari proposed compromises in the form of revised versions of twenty-two (22) of the requests to which Atari had objected to producing anything or limited its agreement to produce, *i.e.*, Request Nos. 5-7, 26, 33, 34, 39-41,

5

43, 50-69, 70, 72, 74, 80, and 82. (Dkt. 61-1, pp. 2-8 of 8) Three weeks later, by letter dated December 20, 2010, Hasbro's counsel agreed only to six out of the twenty-two (22) compromised, revised versions proposed by counsel for Atari. (Dkt. 61-2, pp. 2-4 of 4) Except for suggesting a shorter time period for a few, Hasbro never proposed any compromise as to the requests in dispute.

<u>Hasbro's False or Misleading Assertions</u>

To aid its current motion, Hasbro makes the following false assertions:

1.      Hasbro accuses Atari of "near wholesale refusal to respond to tailored discovery." (Hasbro Mem. at 1) This accusation is demonstrably false. For example, Atari agreed to produce documents in response to 70 of the 132 numbered requests in Hasbro's First Request, offered compromises on another twenty-two (22) of the 132 individual requests in the First Request, most of which Hasbro rejected without making any counterproposal, agreed to produce a witness to testify on three out of the four subject matters in Hasbro's Rule 30(b)(6) notice of depositions, and answered or denied five of the eleven requests for admission served by Hasbro, and offered compromises on 11 of the 12 interrogatories in issue on this motion, all of which Hasbro flatly rejected without making any counterproposal. Second, the vast majority of the discovery demands served by Hasbro have not been "tailored." (*See* argument below and Dkt. 70) In fact, Hasbro bizarrely contends that it is entitled to massive discovery on its *proposed* Second Amended Complaint even before the Court has decided whether or not to grant leave to serve and file it. As set forth below, even if Hasbro were permitted discovery as to the proposed Second Amended Complaint, the discovery demands in issue are overbroad and seek matter irrelevant to the claims in that proposed pleading.

2.      Hasbro falsely asserts that "Atari has refused to provide discovery relating to core allegations." (*Id.* at 2) Hasbro identifies them as follows:

6

(a)      "Atari's unauthorized sublicensing."  The Amended Complaint (Dkt. 31, Am. C. ¶¶ 38-40, 44, 48, 67-120) identifies that sublicensing as made to Namco Bandai in July 2009.   However, Atari has agreed to produce in response to numbered requests in Hasbro's First Request documents concerning this allegation.  (Dkt. 59, Responses to Request Nos. 30, 35, and 37)  Additionally, Hasbro rejected Atari's compromise, revised language for other requests in the First Request, which if accepted, also addressed this allegation.  (Dkt. 61-1, pp. 2-8 of 8; Dkt. 61-2, pp. 2-4 of 4)

(b)      "Atari's failure to provide customer service."  The Amended Complaint alleges that this failure occurred in and after November 2009.  (Dkt. 31, Am. C. ¶¶ 67-68)  Atari has agreed to produce documents post-dating July 2009 in response to numbered requests concerning this allegation.  (Dkt. 59, Responses to Request Nos. 51-53)  Additionally, Hasbro rejected Atari's compromise, revised language for other requests in the First Request, which if accepted, also addressed this allegation.

(c)      "Atari's failure to adequately promote D&D."  The Amended Complaint bases this legal conclusion on the allegations that Atari ceased to support D&D Digital Games through websites, permitted customer support contacts to be disconnected or non-responsive, and allowed Namco Bandai Distribution Partners to provide customer service support and operate local marketing websites featuring D&D Digital Games, all in and after November 2009.  (Dkt. 31, Am. C. ¶¶ 67-120, 184-187)  Atari agreed to produce non-privileged, post-July 2009 documents in response to numbered requests in Hasbro's First Request, concerning these allegations.  (Dkt. 59, Responses to Request Nos. 51-53) Additionally, Hasbro rejected Atari's compromise, revised language for other requests in

the First Request, which if accepted, also addressed this allegation.  (Dkt. 61-1, pp. 2-8 of 8; Dkt. 61-2 pp. 2-4 of 4)

(d)      "Atari's inability to perform because of its grim balance sheet."  This supposed allegation is not in the Amended Complaint.  Accordingly, Hasbro's assertion that it is a "core allegation" is false.  This allegation only appears in Hasbro's proposed Second Amended Complaint which was not shown to Atari until November 22, 2010 (Dkt. 51, ¶ 2), over two months after Hasbro served the First Request and over a month after Hasbro served the discovery demands in issue on this motion.  (Hasbro Mem. at 4)  Most importantly, the proposed Second Amended Complaint is not an operative document in this action.

As the above identified assertions of Hasbro are false, the Court should disregard them.

Hasbro also misleadingly asserts that it has agreed to produce "every category of documents sought by Atari without exception" (Hasbro Mem. at 3) but fails to advise the Court that Atari's First Request for Production of Documents contained only twenty six (26) numbered requests, over 100 less than the 132 numbered requests in Hasbro's First Request.

<u>Argument</u>

I

HASBRO'S COMPLAINT ABOUT FAILURE TO ADHERE TO RULE 33(d)  ARE MOOT AND ITS DISPUTED REQUESTS ARE BLATANTLY IMPROPER

<u>The Standards</u>

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets the boundaries of discoverable matter ("Unless otherwise limited by court order, the scope of discovery is as follows").  Rule 26(b)(1) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Hasbro erroneously asserts that discovery may be had of matter that is only

reasonably calculated to lead to the discovery of admissible evidence, and suggests that the First Circuit's decision in *Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 52 (1st Cir. 2009) supports that proposition. (Hasbro Mem. at 6) This is untrue. The Court in *Remexcel Managerial Consultants, Inc.* only stated that "to be discoverable, information need only appear to be reasonably calculated to lead to the discovery of admissible evidence" after finding that the matter sought by the discovery demand in issue was also relevant. (Hasbro Mem. at 3-4)

In fact, Rule 26(b)(1) requires that the information "reasonably calculated to lead to the discovery of admissible evidence" must itself be "relevant information." *Walker v. A.T. Wall*, C.A. No. 10-178 S, 2010 WL 4137331 at *1 (D.R.I. Oct. 20, 2010) (Hagopian, Sr. U.S.M.J.) ("*Relevant information* does not need to be admissible at trial so long as it appears reasonably calculated to lead to the discovery of admissible evidence.") (italics added). A leading treatise explains that "the limitation on discoverability of inadmissible matter to information that relates to the claims or defenses of a party is designed to prevent the 'reasonably calculated to lead to the discovery of admissible evidence' standard from swallowing the normal limitation of 'relevance' for discovery purposes to information relating to the claims or defenses of party." 6 *Moore's Federal Practice* §26.41[5], at 26-159 - 26-150 (Matthew Bender 3d ed. 2010).

Rule 26(b)(1) limits the matter sought in discovery to that which is "relevant to any party's claim or defense." Rule 401 of the Federal Rules of Evidence defines "'Relevant evidence' [as] evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

"The party seeking information in discovery over an adversary's objection has the burden of showing its relevance." *Daniels v. American Power Conversion Corp.*, C.A. No. 05-459ML, 2007 WL 539643 at *1 (D.R.I. Feb. 15 2007).

Based on these governing standards, as set forth below, Hasbro fails to carry—and cannot carry—its burden. Hasbro asserts that the disputed discovery requests seek only information and documents relevant to Hasbro's claims in this action. Aside from one instance discussed below, Hasbro does not assert that any of the requests in issue are relevant to the defenses or counterclaims in the action. In fact, the requests in issue principally seek vast quantities of matter that is not relevant to Hasbro's claims. In fact, in order to advocate that they seek only relevant matter, Hasbro improperly cites allegations and paragraphs in the proposed Second Amended Complaint (abbreviated as SAC in Hasbro's citations to it). (Hasbro Mem. at 10, 12-14) But the proposed Second Amended Complaint is not an operative pleading in this action. The claims or defenses to which Rule 26(b)(1) refers are not *potential* claims or defenses; they must be *actual* claims or defenses in the action.

In 2000, Rule 26(b)(1) was amended to permit discovery relevant to the claims or defenses rather than, as previously, discovery relevant to the subject of the action. This "rule change is meant to alert the federal courts that they 'have the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses' that are outside the scope of those already pleaded." *Padilla v. Bristol Myers Squibb Holding Ltd. Liability Co.*, C.A. No. 04 Civ. 1003, 2005 WL 783076 at *1 (D.P.R. April 4, 2005), *quoting Advisory Committee Notes* (2000 Amendments) (Emphasis added).[2] Thus, Rule 26(b)(1) does not permit Hasbro any

---

[2] Now a party must secure leave to seek discovery that is only relevant to the subject matter of the action. *See* F.R.C.P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter

1208708-3

"entitlement to discovery to develop new claims or defenses [such as those in its proposed Second Amended Complaint] that are outside the scope of those already pleaded." *Id*.

A.    Hasbro's Criticism That Interrogatory Responses
      <u>Do Not Comport With Rule 33(d) Is Moot</u>

Hasbro spends nearly three pages arguing that it was improper for Atari to respond to Interrogatory Nos. 1 through 11 by stating that it would provide documents from which Hasbro could ascertain the answers to Interrogatory Nos. 1 though 11 to the extent that they sought information matter relevant to the parties' claims or defenses in this action. (Hasbro Mem. at 6-8) Hasbro argues that in doing so, Atari did not comply with the dictates of Rule 33(d)(1) of the Federal Rules of Civil Procedure. (*Id.*) However, this criticism was mooted by Atari's offer to provide, for the time period of January 1, 2009 to May 10, 2010, the date of filling of the Amended Complaint, written answers to these Interrogatories rather than refer to unspecified documents. Again, the Amended Complaint complains only about purported events alleged to have occurred on or after July 1, 2009. Atari's offer also properly addressed Hasbro's other criticism, *i.e.*, that Atari initially limited its response to unspecified documents concerning matter that Atari deems relevant. Atari's proposal offered to provide answers for the time period January 1, 2009 to the date of the filing of the Amended Complaint without regard to whether responsive matter for that period is relevant.

B.    The Interrogatories and Second Request Are
      <u>Overbroad and Unduly Burdensome, and Seek Irrelevant Matter</u>

<u>Interrogatory No. 1</u>

This interrogatory asks that Atari "IDENTIFY each D&D GAME YOU CONSIDERED FOR DEVELOPMENT at any time from June 3, 2005 to the present." (Dkt. 77-3, p. 5 of 8)

---

involved in the action."). While Hasbro refers to this provision, Hasbro provides no argument for grant of any such leave.

1208708-3

The Amended Complaint alleges no failure on the part of Atari to develop any D&D games. Hasbro cites only a legal conclusion in paragraph 186 of the Amended Complaint that Atari has materially breached the License Agreement "by failing to use commercially reasonable efforts to promote the D&D Digital Games and undertake the licensed activities in a diligent manner." (Hasbro Mem. at 10) The Amended Complaint contains no factual allegation of a failure by Atari to develop any games to support this legal conclusion, and no factual allegation as to how any such failure constitutes a failure "to use commercially reasonable efforts to promote and undertake the license activities in a diligent manner."

Lacking any factual allegations in the Amended Compacted to support this Interrogatory, Hasbro resorts yet again to a legal conclusion that it alleges in its  proposed Second Amended Complaint:

> Atari has directly and materially breached the License by failing to use commercially reasonable efforts to promote the D&D Digital Games and undertake the licensed activities in a diligent manner, including without limitation, … by failing to spend the time, energy, or money to develop, manufacture, and promote as many high quality games as the D&D brand deserves under the License Agreement, and by failing to follow through with planned and proposed game developments.

(Hasbro Mem. at 10; Dkt. 50-1, ¶ 116) But this allegation is again a mere legal conclusion. There is no factual allegation in this proposed pleading to support this legal conclusion. For example, this legal conclusion asserts matters as to which, if true, Hasbro should know relevant factual details, *e.g.*, that Atari "failed to follow through with planned and proposed game developments." But Hasbro fails to allege any planned and proposed game developments that Atari supposedly failed to "follow through."

Obviously, Hasbro is hoping that this Court will compel Atari to answer Interrogatory No. 1 as written and Interrogatory Nos. 2 through 11 which stem from it to provide Hasbro with

1208708-3

some instance where Atari at some point failed to carry through with a plan to develop a D&D game in order to support the legal conclusion alleged in paragraph 116 of the proposed Second Amended Complaint. But this is not how pleading and discovery are intended to function under the Federal Rules of Civil Procedure. To state a claim for relief, a plaintiff is required to allege facts which state a claim. Mere legal conclusions in the absence of supporting factual allegations, as in Hasbro's proposed Second Amended Complaint, do not state a claim for relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) demands that a plaintiff, even Hasbro, plead "factual content that then allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" rather than rely, as does Hasbro, on legal conclusions. The Federal Rules of Civil Procedure do not provide that plaintiff can merely allege legal conclusions and then find the factual bases for them through discovery.

Hasbro attempts to save itself by asserting that Interrogatory No. 1 and the others that stem from it are relevant to Atari's cross-claim for damages arising out of Hasbro's failure to approve potential sublicenses that Atari presented to Hasbro for approval. But this claim concerns Hasbro's failures to approve sublicense opportunities that Atari had proposed since early Fall 2009, as alleged in the counterclaim, and not "each D&D GAME [Atari] CONSIDERED FOR DEVELOPMENT at any time from June 3, 2005 to the present." (Dkt. 33, pp. 30 - 40 of 53, ¶ 75) This interrogatory is therefore wildly overbroad and seeks irrelevancies.

Finally, it is impossible for Atari to answer accurately and fully each game that it merely "considered" developing over a nearly a six year period from June 3, 2005 to the present as demanded by Hasbro. Yet this is the exercise demanded by Hasbro.

In light of the time period in issue in Hasbro's Amended Complaint, Atari proposed a more than reasonable compromise to this Interrogatory No. 1: Atari would identify "any

13

potential, new Dungeons & Dragons game that was subject to substantial internal discussion at Atari at any time during the period January 1, 2009 to the date of filing of the Amended Complaint, May 3, 2010."  (Dkt. 77-11, p. 2 of 3)  This is longer than the time period in issue in the Amended Complaint and avoids the impossible task of identifying each game "considered." Hasbro rejected this offer without any counterproposal.  Atari remains willing to answer pursuant to the above proposal it made.  But for all of the above reasons, the Court should not issue an order compelling Atari to answer Interrogatory No. 1 as written.

<u>Interrogatory Nos. 2 through 11, and Requests Nos. 1 and 2 in Second Request</u>

Each of these discovery demands is based on an answer to the improper Interrogatory No. 1 and ask for a vast array of irrelevant information for the nearly six-year period from June 3, 2005 through the present.  As a result they are all improper for the reasons set forth above as to Interrogatory No. 1.

Interrogatory Nos. 2, 3, and 5 - [11 ask, as to "each D&D game identified in response to Interrogatory No. 1," in 21 subparts, for 21 categories of information, all to be broken down by each game and some of which demand the information be broken down into further subsets. (Dkt. 77-3, pp. 5-7 of 8)  Interrogatory No. 4 asks a broad question as to each game identified in response to Interrogatory No. 3.  (*Id*., p. 5 of 8)  Interrogatory Nos. 2 through 11 demand:

> (a)     "state whether YOU submitted [each game identified in response to Interrogatory No. 1] to HASBRO for approval pursuant to the LICENSE AGREEMENT (Interrogatory No. 2);

> (b)     "if submitted, the date(s) of submission" (*Id*.);

> (c)     "the person at HASBRO to whom YOU submitted it" (*Id*.);

> (d)     "state whether it was developed" (Interrogatory No. 3);

> (e)     "a description of the level of its development" (*Id.*);

> (f)     "if and when it was commercially released" (*Id.*);

14

(g)  "if it was sublicensed to a third-party or published by Atari" (*Id.*);

(h)  for each such game "that was not either developed or commercially released, state all reasons why" (Interrogatory No. 4);

(i)  "state, by each territory, how much money YOU spent to develop the D&D GAME" (Interrogatory No. 5);

(j)  for each game "that has been commercially released, state, by territory, how much money YOU spent to advertise, promote, and market the D&D GAME" (Interrogatory No. 6);

(k)  "[s]tate, by territory, the dollar amount of all profit, net income, or comparable financial metric" (Interrogatory No. 7);

(l)  "all LICENSEE REVENUE projections or estimates YOU made for each D&D GAME" (Id.);

(m)  "the date on which YOU made each such projection or estimate" (Id.);

(n)  for each game "that has been commercially released, state, by territory, the dollar amount of all profit, net income, or comparable financial metric YOU actually received" (Interrogatory No. 8);

(o)  for each such game, state "any LICENSEE REVENUE actually generated by each D&D GAME" (*Id.*);

(p)  for each such game "that has been commercially released, state, by territory, the dollar amount YOU spent providing technical support or customer service through the date hereof" (Interrogatory No. 9);

(q)  for each such game "that has been commercially released, IDENTIFY, separately for each such D&D GAME . . . ., all PERSONS, including any third-parties, who provided technical support or customer service" (Interrogatory No. 10);

(r)  for each such game "that has been commercially released, IDENTIFY, . . . by territory, all PERSONS, including any third-parties, who provided technical support or customer service" (*Id.*);

(s)  for each such game "that has been commercially released, IDENTIFY, separately for each such D&D GAME and by territory,

       (i)  the technical support or customer service information;

       (ii)  including, without limitation, the identity of the party providing such technical support or customer service; and

15

(iii)     the complete contact information for such party

included in the game packaging, on websites, or in any other materials included or made available when the D&D GAME is purchased through any distribution method or channel (Interrogatory No. 11).

In addition to the fact that Atari cannot break down much of the information by territory or breakdown customer support by game, the mass of minutiae demanded is over-the-top and obviously aimed at over burdening Atari into surrendering to Hasbro' ultimate demands to terminate the License Agreement.  In any event, the Amended Complaint nowhere alleges that Atari failed to develop any D&D games.  Accordingly, this blizzard of questions about each D&D game that Atari ever "considered" developing from June 3, 2005 to the present is irrelevant.

Even were the Court to grant leave to Hasbro to file its proposed Second Amended Complaint in this action, these interrogatories would still seek irrelevant information.  Again, the proposed Second Amended Complaint makes no factual allegation of any failure by Atari to develop any specific D&D game.  While Hasbro alleges as a legal conclusion that Atari breached the License Agreement by "failing to follow through with planned and proposed game developments" (Dkt. 50-1, ¶116), Hasbro nowhere factually alleges what any of those proposed game developments were.

Additionally, as counsel for Atari advised counsel for Hasbro on January 26, 2011, Atari does not break down the amounts spent on customer service and designate persons assigned to customer service by game, and therefore Atari cannot answer Interrogatory  Nos. 9 and 10 even if they were appropriate.  (Dkt. 77-11, p. 3 of 3)

Finally, in addition to offering a compromise proposal as to Interrogatory No. 1, Atari offered on January 26, 2011, a more than reasonable proposal to provide answers to revised versions of Interrogatory Nos. 2 through 8 and 11.   (Dkt. 77-11, p. 2 of 3)   As to each

16

Interrogatory Nos. 2, 3, 4, and 5, Atari offered to provide an answer, with respect to any potential, new D&D game that was subject to substantial internal discussion at Atari at any time during the period January 1, 2009 to May 3, 2010 and that was not otherwise submitted to Hasbro through its proprietary License Approval System. (Dkt. 77-11, p. 2 of 3) Atari submits and has submitted its proposals for new D&D games through that system. As it makes no sense for Atari to be put to the time and expense of describing in writing any written proposal it had already provided to Hasbro, the offer excluded proposals that Atari had submitted to Hasbro through Hasbro's License Approval System.

As to Interrogatory Nos. 6 through 8 and 11, Atari offered to provide an answer as to any new D&D game identified in response to Interrogatory No. 1 that was commercially launched after January 1, 2009. (*Id.*)

Hasbro rejected all of these reasonable proposals that covered the period January 1, 2009 to May 3, 2010, a period broader than the period in issue in the Amended Complaint, July 1, 2009 to May 3, 2010. Hasbro made no counterprospal. (Dkt. 77-12, pp. 2-4 of 4)

Hasbro's Second Request

Hasbro's "Second Request for the Production of Documents to Atari, SA" compounds the over burdensome and irrelevant nature of the Interrogatories by asking in its two individual requests for:

> "[a]ll DOCUMENTS that constitute, memorialize, or refer to any of the projections or estimates stated in Atari's written response to Interrogatory Number 7," and
>
> [all] DOCUMENTS that constitute, memorialize, or reflect any of the technical support or customer service information stated in Atari's written response to Interrogatory Number 11…, including, without limitation, sufficient DOCUMENTS to identify the PERSONS providing such technical support or customer service and the complete contact information for such PERSONS."

17

(Dkt. 77-5, p. 8 of 9)

For the same reasons that Interrogatory Nos. 7 and 11 are improper, these requests based on those interrogatories are also improper.

<u>Interrogatory No. 12</u>

Likewise, Interrogatory No. 12 is unduly burdensome and seeks irrelevant information.

> Interrogatory No. 12. IDENTIFY each PERSON to whom YOU granted any right to act as a sublicensee, distributor, and/or wholesaler of any D&D GAME (including YOUR subsidiaries and affiliated companies), including: (a) the date on which you granted such right(s), (b) the territory for which you granted such right(s), (c) a description of such right(s) as it pertains to the development, production, distribution, and/or sale of any D&D GAME and the specific D&D GAME titles, by language, included in such grant of rights, (d) any change to the grant of such right(s) (*e.g.*, from sublicensee to distributor) made after the date of the initial grant of such right(s), and (e) the date on which such change was made.

The only improper sublicense allegedly granted by Atari, identified in the Amended Complaint, is the supposed sublicense granted by Atari to Namco Bandai on or about July 1, 2009. This purported event in July 2009 does not justify the massive and broad-ranging information sought by Interrogatory No. 12 for the period from June 3, 2005 to present.

Hasbro's argument that this interrogatory seeks information relevant to the allegation in the Amended Complaint that Atari farmed out customer and technical support to Namco Bandai and perhaps others does not justify the extraordinarily broad and lengthy sweep of this interrogatory that seeks information from June 3, 2005 to the present. As set forth above, the Amended Complaint alleges failures in customer and technical support in the Fall of 2009 and early 2010. It alleges no such failures before Fall 2009. Accordingly, this Interrogatory is wildly overbroad and seeks irrelevancies.

Furthermore, Interrogatory No. 12 actually consists of five separate interrogatories, subparts (a) through (e). Adding this total to Interrogatory Nos. 1, 4, and 13, and 21 subparts in

18

Interrogatory Nos. 2, 3, and 5 through 11 results in a total of 29 interrogatories propounded by Hasbro, which exceeds the limitation of "25 written interrogatories, including all discrete subparts." Rule 33(a)(1) of the Federal Rules of Civil Procedure. On that basis alone, the motion to compel answers to the interrogatories and production of documents in response to the Second Request, which is based on Interrogatory Nos. 7 and 11, should be denied.

C.       Atari Properly Objected to Hasbro's Requests For Admission Nos. 6 Through 11

Hasbro complains only about Atari's objection to admitting or denying Hasbro's Requests for Admission Nos. 6 through 11. Each of these requests asks Atari to admit that certain statements attributed by an August 2010 *Los Angeles Times* article to a then officer and a director of Atari are true. (Dkt. 77-1, p. 5 of 7) None of the purported statements are relevant to any of the existing claims or defenses in this action.

One of the purported statements (referenced in Request for Admission No. 6) relates to changes in management personnel. Hasbro cites to a throwaway allegation in its Amended Complaint that Hasbro had four CEOs in the last three years. (Hasbro Mem. at 15) But this allegation is not even relevant to any of the claims for breach of the License Agreement and fraud in that pleading. It was undoubtedly inserted in the Amended Complaint as an attempt to embarrass Atari just as this request for admission on the same topic is obviously intended to embarrass rather than procure information relevant to the claims or defenses in the action.

Requests for Admission Nos. 7 and 8 relate to financial condition but Atari's financial condition is not alleged as part of any claim or defense in this action. Hasbro seeks to remedy the irrelevancy of these requests by asserting that management changes and financial condition are in issue in the proposed Second Amended Complaint but the Court has not granted Hasbro leave to file that document. In any event, this allegation is not even relevant to any of the claims for breach of the License Agreement and fraud in that pleading.

19

Request for Admission Nos. 9, 10, and 11 not only ask about matter that is not relevant to the claims or defenses in this action, they ask about purported statements that are ambiguous and not capable of being admitted.

## Conclusion

On the basis of the foregoing, Atari respectfully requests that the Court deny Hasbro's motion for an order compelling Atari to (a) produce documents in response to the Second Request, (b) provide answers to Interrogatory Nos. 1 through 12 in Hasbro's first set of interrogatories, and (c) admit or deny Hasbro's Requests for Admission Nos. 6 through 11.

20

Dated:  Providence, Rhode Island
       Febraury 17, 2011

                              PIERCE ATWOOD LLP


                              By:    /s/ Brooks R. Magratten
                                     Brooks R. Magratten
                                     Michael J. Daly
                                     10 Weybosset Street
                                     Suite 400
                                     Providence, Rhode Island 02903
                                     (t) (401) 588-5113
                                     (f) (401) 588-5166
                                     bmagratten@pierceatwood.com
                                     mdaly@pierceatwood.com


                                           -and-

                              OLSHAN GRUNDMAN FROME
                              ROSENZWEIG & WOLOSKY LLP


                                     Kyle C. Bisceglie, *admitted pro hac vice*
                                     Herbert C. Ross, *admitted pro hac vice*
                                     Peter M. Sartorius, *admitted pro hac vice*
                                     Park Avenue Tower
                                     65 East 55th Street
                                     New York, New York 10022
                                     (t) (212) 451-2300
                                     (f) (212) 451-2222
                                     kbisceglie@olshanlaw.com
                                     hross@olshanlaw.com
                                     psartorius@olshanlaw.com


                              *Attorneys for Defendant*
                              *and Counterclaim-Plaintiff Atari, S.A.*

21

## CERTIFICATE OF SERVICE

This document was electronically filed with the Clerk of the Court on February 17, 2011, and is available for viewing and downloading from the Court's ECF system.  Service on all counsel of record has been effectuated by electronic means.


/s/ Brooks R. Magratten
BROOKS R. MAGRATTEN

22